NAME Anthony Morrison

PRISON NUMBER C-60307

CURRENT ADDRESS OR PLACE OF CONFINEMENT   Correctional Training Facility
Y Wing, Cell#120

CITY, STATE, ZIP CODE  Soledad, CA 93960

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ANTHONY MORRISON,

(FULL NAME OF PETITIONER)

**PETITIONER**

v.

BEN CURRY, Warden, et al.,

(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**

and

The Attorney General of the State of
California, Additional Respondent.

Civil No. **'08 CV 0999 WQH JMA**

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack:
   Superior Court of the State of California, County of San Bernardino

2. Date of judgment of conviction: January 4, 1983

3. Trial court case number of the judgment of conviction being challenged: SBD CR 8103

4. Length of sentence: Two terms of 7 years-to-life with possibility of parole;
   to run consecutively: plus 4-year enhancement

CIV 68 (Rev. Dec. 1998)

::ODMA\PCDOCS\WORDPERFECT\22833\1

5. Sentence start date and projected release date: January 26, 1983

6. Offense(s) for which you were convicted or pleaded guilty (all counts): kidnap for robbery, firearm, rape, oral copulation, and sodomy in concert

7. What was your plea? (CHECK ONE)

    (a) Not guilty  XXX

    (b) Guilty

    (c) Nolo contendere

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
    (a) Jury  XXX
    (b) Judge only

9. Did you testify at the trial?
    Yes

### DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    Yes

11. If you appealed in the **California Court of Appeal**, answer the following:

    (a) Result:  affirmed

    (b) Date of result, case number and citation, if known:

    (c) Grounds raised on direct appeal:

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:

    (a) Result:

    (b) Date of result, case number and citation, if known:

    (c) Grounds raised:

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

   (a) Result:

   (b) Date of result, case number and citation, if known:

   (c) Grounds raised:

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?

   Yes   No

15. If your answer to #14 was "Yes," give the following information:

   (a) **California Superior Court** Case Number: SWHSS700203

   (b) Nature of proceeding: habeas corpus proceeding

   (c) Grounds raised: (1) Due Process; (2) Cruel and Unusual Punishment; (3) Equal Protection; (4) Abuse of Discretion; (5) Arbitrary and Capricious [determination]; (6) Ineffective Assistance of Counsel; and (7) Errors made by Lower Courts

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
       No

   (e) Result: petition denied

   (f) Date of result: August 13, 2007

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?

   Yes

17. If your answer to #16 was "Yes," give the following information:

(a) **California Court of Appeal** Case Number: E044148

(b) Nature of proceeding: habeas corpus proceeding

(c) Grounds raised:

(1) Due Process; (2) Cruel and Unusual Punishment; (3) Equal Protection; (4) Abuse of Discretion; (5) Arbitrary and Capricious [determination]; (6) IAC; and (7) Errors made by Lower Courts

(d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

(e) Result: petition denied

(f) Date of result: October 3, 2007

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?

No

19. If your answer to #18 was "Yes," give the following information:

(a) **California Supreme Court** Case Number: S157597

(b) Nature of proceeding: habeas corpus proceeding

(c) Grounds raised: (1) Denial of Due Process (no evidence to support decision denying parole); (2) Cruel and Unusual Punishment (for failure to set primary term proportionate and uniform to individual culpability); (3) Denial of Equal Protection (disparate treatment from those similarly situated); (4) Abuse of Discretion; (5) Arbitrary and Capricious findings at Parole Consideration hearing; (6) IAC at Parole Consideration hearing; (7) Superior Court Erred in ints Findings of Fact and Law

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☒ No

(e) Result: petition denied

(f) Date of result: April 23, 2008

20.  If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

## COLLATERAL REVIEW IN FEDERAL COURT

21.  Is this your **first** federal petition for writ of habeas corpus challenging this conviction?

Yes _____  (IF "YES" SKIP TO #22)

(a)  If no, in what federal court was the prior action filed?

(i)  What was the prior case number? _____

(ii)  Was the prior action (CHECK ONE):
   ☐ Denied on the merits?
   ☐ Dismissed for procedural reasons?

(iii)  Date of decision: _____

(b)  Were any of the issues in this current petition also raised in the prior federal petition?
   ☐ Yes ☐ No

(c)  If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
   ☐ Yes ☐ No

---

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

20. If you did **not** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
    Yes   No    (IF "YES" SKIP TO #22)
    (a) If no, in what federal court was the prior action filed?
      (i) What was the prior case number? _____
      (ii) Was the prior action (CHECK ONE):
          ☐ Denied on the merits?
          ☐ Dismissed for procedural reasons?
      (iii) Date of decision: _____
    (b) Were any of the issues in this current petition also raised in the prior federal petition?
      ☐ Yes ☐ No

    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
      ☐ Yes ☐ No

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present **all** other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: V AND XIV AMENDMENT VIOLATION: THE BOARD OF PAROLE HEARINGS DENIED PETITIONER OF DUE PROCESS OF LAW AT A PAROLE CONSIDERATION HEARING WHEN THE BOARD PANEL FOUND PETITIONER UNSUITABLE FOR PAROLE RELEASE WITHOUT SOME EVIDENCE TO SUPPORT THAT DECISION; FAILED TO SET HIS PRIMARY TERM CONSTITUTIONALLY PROPORTIONATE AND UNIFORM TO HIS INDIVIDUAL CULPABILITY IN THE COMMITMENT OFFENSES, AND IN SETTING-OFF HIS HEARING FOR TWO YEARS

**Supporting FACTS** (state *briefly* without citing cases or law)

The Board denied Petitioner a parole release date at the 2006 parole consideration hearing based on unchanging factors such as the commitment offenses; Petitioner's minor juvenile arrest record, institutional behavior; parole plans; information from the District Attorney and victim; responsibility for the offenses, and recent gains.

There was no evidence that Petitioner has a record of previous violence. Petitioner has only a minor juvenile arrest record of two arrests: one was theft related and the other was for indecent exposure--when Petitioner was a child. Petitioner has no prior record of violence or prior convictions or juvenile commitments. The Board's reliance on Petitioner's institutional behavior was not evidence that Petitioner is unsuitable for parole.

There was no evidence that Petitioner did not present employment plans. There is, however, evidence that Petitioner is a welder. And there is evidence that the Board acknowledged this fact. The opposition by the DA and a letter from the victim does not constitute evidence that Petitioner is unsuitable for parole. Unlike the Board's assertion--there is evidence that Petitioner accepted responsibiltiy and understands the nature and magnitude of the offenses.

**Did you raise GROUND ONE in the California Supreme Court?**
Yes.

**(b) GROUND TWO**: VIII AMENDMENT VIOLATION: THE BOARD OF PAROLE HEARINGS IMPOSED A CRUEL AND UNUSUAL PUNISHMENT WHEN THE BOARD PANEL FAILED TO SET PETITIONER'S PRIMARY TERM CONSTITUTIONALLY PROPORTIONATE AND UNIFORM TO HIS INDIVIDUAL CULPABILITY IN THE COMMITMENT OFFENSES

**Supporting FACTS** (state *briefly* without citing cases or law):

Petitioner presented the Eight Amendment precept to the California Supreme Court to support this ground: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." He further asserted that the 27 years of imprisonment served are excessive and disproportionate punishment by application of the In re Lynch; In re Foss and In re Rodriguez analysis.

The particular characteristics of Petitioner were detailed before the California Supreme Court. And that the particular characteristics of Petitioner at the time of the offenses does not justify 27 years of imprisonment. When he goes before the parole board in 2008, it will be 28 years he would have accumulated--without considering the fact that he is entitled to a reduction of sentence work-time/good-time credits. As aforementioned, Petitioner was only 17 years old at the time of the offenses. His conduct was explained in part, by his limited intelligence. Thus, it appears that neither the circumstances of his offense, nor his personal characteristics establish a danger to society to justify such a prolonged period of imprisonment.

Petitioner was sentenced to two 7-years-to-life sentences: other life prisoners sentenced to greater terms (i.e., 15-years-to-life and 25-years-to-life), with even more egregious offenses/circumstances, have been granted paroles: with some of the paroles being granted by the court. Petitioner has stated/presented a prima facie claim, that, when measured by the Lynch test, he is suffering cruel and unusual punishment by his continued period of confinement (considering he has exceeded his maximum 12-year primary term). Petitioner has already served a term which, by any of the Lynch criteria, is disproportionate to his offense.

**Did you raise GROUND TWO in the California Supreme Court?**
Yes

**(c)** GROUND THREE: XIV AMENDMENT VIOLATION: THE BOARD OF PAROLE HEARINGS DENIED PETITIONER OF THE EQUAL PROTECTION OF THE LAWS WHEN THE BOARD PANEL TREATED PETITIONER DIFFERENTLY FROM SIMILARLY SITUATED PRISONERS WITH THE SAME OFFENSES

**Supporting FACTS** (state *briefly* without citing cases or law):

Petitioner presented the Fourteenth Amendment precept the the California Supreme Court to support this ground: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws."

The parole board did in fact, treat Petitioner differently from similarly situated prisoners when it failed to consider substantial evidence supporting Petitioner's suitability for parole release; failed to set a parole release date constitutionally proportionate to his individual culpability in the commitment offense; failed to release Petitioner on his primary term of 12 years; and on three separate occasions--failed to set-off Petitioner's next parole consideration hearing for only 1-year; and treated Petitioner differently from other similarly situated prisoners. Basically, Petitioner experienced denial of equal protection of the laws.

These errors made by the parole board resulted in prejudices to Petitioner. These errors infected Petitioner's entire hearing: and the errors were of constitutional dimension. Petitioner did not experience a fair hearing. The result would have been different absent the errors and if Petitioner was heard by a fair and impartial tribunal. The errors also manifest a fundamental miscarriage of justice.

**Did you raise GROUND THREE in the California Supreme Court?**

Yes

**(d) GROUND FOUR**: VI AMENDMENT VIOLATION: APPOINTED COUNSEL DENIED PETITIONER OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PAROLE CONSIDERATION HEARING

**Supporting FACTS** (state *briefly* without citing cases or law):

Appointed counsel failed to conduct any form of an investigation in respect to legal research to familiarize herself with the applicable parole laws governing life prisoner's parole consideration hearings and parole release.  She was ineffective by failing to investigate and present any mitigating evidence.

In addition, appointed counsel failed to object to the District Attorney's and victim's comments as evidence showing unsuitability.  She failed to argue any legal principles at closing.  She failed to raise any crucial assignments of error that arguably might have resulted in reversal.

**Did you raise GROUND FOUR in the California Supreme Court?**

Yes

CIV 68 (Rev. Dec. 1998)

::ODMA\PCDOCS\WORDPERFECT\22833\1

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?

　　　No

24. If your answer to #23 is "Yes," give the following information:

    (a)  Name of Court: _____

    (b)  Case Number: _____

    (c)  Date action filed: _____

    (d)  Nature of proceeding: _____

    _____

    (e)  Grounds raised:

    _____

    _____

    _____

    _____

    (f)  Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes  ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a)  At preliminary hearing:  Patricia Flores, Deputy Public Defender

    (b)  At arraignment and plea:  (same)

    (c)  At trial:  (same)

    (d)  At sentencing:  (same)

    (e)  On appeal:

    (f)  In any post-conviction proceeding:

    (g)  On appeal from any adverse ruling in a post-conviction proceeding:

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
      Yes      No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
      Yes      No
      (a)  If so, give name and location of court that imposed sentence to be served in the future:
      _____

      (b)  Give date and length of the future sentence: _____
      _____

      (c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
      ☐ Yes   ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court:
      *May 18, 2008*

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____
                    SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

May 16, 2008                          _____
    (DATE)                                     SIGNATURE OF PETITIONER

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Anthony Morrison_, declare:

I am over 18 years of age and a party to this action. I am a resident of _Correctional Training Facility_ Prison,

in the county of _Monterey_,

State of California. My prison address is: _Y Wing, 120, P.O. Box 689,_

_Soledad, CA 93960_.

On _May 18, 2008_,
        **(DATE)**

I served the attached: _Petition for Writ of Habeas Corpus_

_____

**(DESCRIBE DOCUMENT)**

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _May 18, 2008_         _Anthony M. Morrison_
           **(DATE)**                                 **(DECLARANT'S SIGNATURE)**

MEMORANDUM

S157597

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re ANTHONY MORRISON on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

George, C. J., was absent and did not participate.

SUPREME COURT
**FILED**

APR 2 3 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____
**WERDEGAR**
Acting Chief Justice

COPY

Case # (if applicable): _____     October 18, _____, 2007

To:     **CLERK OF THE COURT**
        [ ] SUPERIOR COURT                      [ ] FEDERAL DISTRICT COURT
        [ ] COURT OF APPEAL                     [ ] FEDERAL COURT OF APPEAL
        [x] CALIFORNIA SUPREMEM COURT           [ ] U.S. SUPREME COURT

FROM: Anthony Morrison                          CDC#:  C-60307
        California State Prison CTF-Soledad
        Housing: (YW-120-Up)
        P.O. Box 689
        Soledad, California 93960-0689

Re:     [x] PETITION FOR WRIT OF HABEAS CORPUS
        [ ] PETITION FOR REHEARING/RECONSIDERATION
        [ ] PETITION FOR REVIEW
        [ ] BRIEF ON APPEAL
        [ ] MOTION TO COURT

Case:   [ ] IN RE  Anthony Morrison
        [ ] PEOPLE V.
        [ ] OTHER:

Dear Clerk:

        I am presently incarcerated at the California State Prison – Correctional Training Facility (CTF), in Soledad. Due to my incarceration, indigence or minimal funds, and the current policy of the California Department of Corrections as stated in Director Memorandum 15/04, I cannot provide the required number of copies as required by the Rules of Court.

        Therefore, I must respectfully request that the court make the required additional copies and to serve any required copies on other parties as necessary.

        Further, please send a conformed copy of the documents back to me as a receipt of filing. I apologize for any inconvenience that this may have caused.

                                        Respectfully submitted,

                                        Anthony Morrison

Copy

MC–275

Name    Anthony Morrison

Address    P. O. Box 689

Soledad, California.

Zip.    93960–0689

CDC or ID Number    C–60307

## SUPREME COURT OF THE STATE OF CALIFORNIA

_____
(Court)

| |
|---|
| In re Anthony Morrison |
| Petitioner |
| vs. |
| Ben Curry, (Warden) (A) et.al |
| Respondent |

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____
*(To be supplied by the Clerk of the Court)*
Superior Ct., San Bernardino, Case No.
(SWHSS700203 & CR8103)
Court of Appeal, 4th District, #: (E044148).

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

This petition concerns:

[  ] A conviction      [XX] Parole

[  ] A sentence       [  ] Credits

[  ] Jail or prison conditions      [  ] Prison discipline

[XX] Other (specify):  Subsequent Lifer Parole Consideration Hearing, held on (08/09/2006).

1. Your name:  Anthony Morrison

2. Where are you incarcerated?  The Correctional Training Facility - Central, Soledad, California.

3. Why are you in custody?  [XX] Criminal Conviction  [  ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Kidnap for Robbery, Firearm, Rape, Oral Copulation and Sodomy in concert.

b. Penal or other code sections:  Penal Code Sections: 209, 211, 12022.5, 264.1, 288a(d), 286(d).

c. Name and location of sentencing or committing court:  Superior Court of the state of California, in and for the County of San Bernardino.

d. Case number:  SBD CR 8103

e. Date convicted or committed:  January 4th, 1983.

f. Date sentenced:  January 26th, 1983.

g. Length of sentence:  Two term of (7-Year-To-Life-"With"-The-Possibility-Of-Parole-Release); to run consecutively; plus (4-Year) enhancement.

h. When do you expect to be released?  Unknown, No Parole Release Date set yet.

i. Were you represented by counsel in the trial court?  [XX] Yes.  [  ] No.  If yes, state the attorney's name and address:

   Ms. Patricia Flore, (Deputy Public Defender).

4. What was the LAST plea you entered? *(check one)*

[XX] Not guilty  [  ] Guilty  [  ] Nolo Contendere  [  ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[XX] Jury  [  ] Judge without a jury  [  ] Submitted on transcript  [  ] Awaiting trial

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

THE BOARD OF PAROLE HEARINGS (BPH) DENIED PETITIONER OF THE DUE PROCESS OF THE LAWS AT

A PAROLE CONSIDERATION HEARING WHEN THE BOARD PANEL FOUND PETITIONER UNSUITABLE FOR

PAROLE RELEASE WITHOUT SOME EVIDENCE TO SUPPORT THEIR DECISION, FAILED TO SET HIS PRIMARY

TERM CONSTITUTIONALLY PROPORTIONATE TO HIS INDIVIDUAL CULPABILITY IN THE COMMITMENT

OFFENSES, AND IN SETTING-OFF HIS NEXT HEARING FOR TWO YEARS.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

See attached Memorandum of Points and Authorities: Statement of Facts p. 4 thru 5 .

b. Supporting cases, rules, or other authority (optional):

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

See attached Memorandum of Points and Authorities: Ground "1", p. 6 thru 30 .

7.      Ground ___2___

THE BOARD OF PAROLE HEARINGS (BPH) IMPOSED A CRUEL AND UNUSUAL PUNISHMENT UPON

PETITIONER WHEN THE BOARD PANEL FAILED TO SET PETITIONER'S PRIMARY TERM CONSTITUTIONALLY

PROPORTIONATE AND UNIFORM TO HIS INDIVIDUAL CULPABILITY IN THE COMMITMENT OFFENSES.


a.  Supporting facts:
See attached Memorandum of Points and Authorities: Statement of Facts p. 4  thru 5  .


b.  Supporting cases, rules, or other authority:
See attached Memorandum of Points and Authorities: Ground "2", p. 30  thru 34  .

7.         Ground    3

THE BOARD OF PAROLE HEARINGS (BPH) DENIED PETITIONER OF THE EQUAL PROTECTIONS OF

THE LAWS WHEN THE BOARD PANEL TREATED PETITIONER DIFFERENTLY FROM SIMILARLY SITUATED

PRISONER's WITH THE SAME OFFENSES.

a. Supporting facts:
See attached Memorandum of Point and Authorities: Statement of Facts p. 4   thru 5  .

b. Supporting cases, rules, or other authority:
See attached Memorandum of Points and Authorities:  Ground "3", p.   34 thru 37   .

MC-275 [Rev. January 1, 1999]          PETITION FOR WRIT OF HABEAS CORPUS          Page four of six

7.        Ground    4

THE BOARD OF PAROLE HEARING (BPH) ABUSED ITS DISCRETION WHEN THE BOARD PANEL FAILED TO

ACT WITHIN ITS DISCRETION TO CONSIDER SUBSTANTIAL EVIDENCE SUPPORTING PETITIONER'S

SUITABILITY FOR PAROLE RELEASE AND EXCEEDED ITS DISCRETION IN ACTING BEYOND ITS AUTHORITY.

a. Supporting facts:
See attached Memorandum of Points and Authorities:  Statement of facts p.  4    thru    5 .

b. Supporting cases, rules, or other authority:
See attached Memorandum of Points and Authorities: Ground "4", p.  37    thru    38  .

7.        Ground ___5___

THE BOARD OF PAROLE HEARING (BPH) RENDERED ARBITRARY AND CAPRICIOUS FINDINGS AND

DECISIONS AT PETITIONER'S PAROLE CONSIDERATION HEARING.

a.  Supporting facts:
    See attached Memorandum of Points and Authoritie: Statement of Facts p.    4    thru   5 .

b.  Supporting cases, rules, or other authority:
    See attached Memorandum of Points and Authorities: Ground "5", p. 38 thru  42  .

7.          Ground    6

APPOINTED COUNSEL DENIED PETITIONER OF THE EFFECTIVE ASSITANCE OF COUNSEL AT THE

PAROLE CONSIDERATION HEARING.


a. Supporting facts:
   See attached Memorandum of Points ad Authorities: Statement of Facts p.    4   thru 5   .


b. Supporting cases, rules, or other authority:
   See attached Memorandum of Points and Authorities; Ground "6", p.   42   thru 45   .

7. Ground 2 or Ground ___7___ (if applicable):                                    —MC–275

THE SUPERIOR COURT ERRED IN ITS ACTUAL FINDINGS, ERRED IN ITS APPLICATION OF THE

LAW, ERRED IN DECIDING ONLY PART OF THE CASE, MISMANAGED THIS CASE AND ABUSED ITS

DISCRETION, ITS DECISION WAS CONTRARY TO, OR UNREASONABLE APPLICATION OF, CLEARLY

ESTABLIHED FEDERAL LAW.

a. Supporting facts:

See attached Memorandum of Points and Authorities; Statement of Facts pp. 4 thru 5.

b. Supporting cases, rules, or other authority:

See attached Memorandum of Points and Authorities; Ground "7", pp. 46 thru 57.

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No.    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

N/A

b. Result: N/A                                          c. Date of decision: N/A

d. Case number or citation of opinion, if known: N/A

e. Issues raised: (1) N/A

(2) N/A

(3) N/A

f. Were you represented by counsel on appeal? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

N/A

9. Did you seek review in the California Supreme Court? ☐ Yes. ☐ No. If yes, give the following information:

a. Result: N/A                                          b. Date of decision: N/A

c. Case number or citation of opinion, if known: N/A

d. Issues raised: (1) N/A

(2) N/A

(3) N/A

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

N/A

N/A

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

There is no available Administrative Review for the findings and decisions of

the Board of Parole Hearings. See also attached Memorandum of Points and

Authorities: Jurisdiction p. 3 .

b. Did you seek the highest level of administrative review available? ☐ Yes. ☒ No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☒ Yes. If yes, continue with number 13.  ☒ No. If no, skip to number 15.

MC–275

13. a. (1) Name of court: Superior Court of California , County of San Bernadino

(2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus

(3) Issues raised: (a) Due Process, Cruel and Unusual Punishment, Equal Protection,

(b) Abuse of Discretion, Arbitrary and Capricious, Ineffective Assistance of Counsel, Error's of the lower court's.

(4) Result (Attach order or explain why unavailable): Denied , see Exhibit "B ".

(5) Date of decision: August 13, 2007

b. (1) Name of court: Court of Appeal, Fourth Appellate District

(2) Nature of proceeding: Habeas Corpus

(3) Issues raised: (a) Due Proces, Cruel and Unusual Punishment, Equal Protection, Abuse

(b) of Discretion, Arbitrary and Capricious, Ineffective Assistance of Counsel, Error's o the lower court's.

(4) Result (Attach order or explain why unavailable): Denied, see Exhibit "D".

(5) Date of decision: October 3, 2007

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

N/A

N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

N/A

N/A

16. Are you presently represented by counsel? ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

N/A

N/A

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes.  ☒ No. If yes, explain:

N/A

N/A

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

N/A

N/A

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: October 18, 2007

(SIGNATURE OF PETITIONER)

1  Anthony Morrison C-60307
   P. O. Box 689
2  Soledad, California.
   Zip.   93960-0689

3

4  IN  PRO  PER

5

6            SUPREME COURT OF THE STATE OF CALIFORNIA

7

8  In re Anthony Morrison,          )  Case No. _____
           (Petitioner)            )
9                                   )  PETITION FOR WRIT OF HABEAS CORPUS
         vs.                        )  AND MEMORANDUM OF POINTS AND
10                                  )  AUTHORITIES IN SUPPORT THEREOF.
   Ben Curry, (Warden) (A) et.al    )
11         (Respondant)             )  Superior Court, County of
   _____)  San Beranardino, Case No.
12                                     (SWHSS700203 & CR8103)

13                                     Court of Appeal, 4th Appellate
                                       District, Case No. (E044148).
14

15  DATE:  October 18, 2007

16  ///

17  ///

18  ///

19

20

21

22

23

24

25

26

27

28

                                    i.

# T A B L E   O F   C O N T E N T S

Cover Page ............................................................ i.
Table of Contens ..................................................... ii.
Grounds of Action .................................................... iii.
Table of Authorities ........................................ iv thru viii.
Memorandum of Points and Authorities ......................... 1 thru 61.
   I.] Introduction ............................................ 1 thru 2.
  II.] Parties ................................................... 3.
 III.] Jurisdiction .............................................. 3.
  IV.] Statement of Facts .................................... 4 thru 5.
   V.] Arguments ..................................................
    (Ground)
      1 ............................................... 6 thru 30.
        a ........................................... 10 thru 24.
        b ........................................... 24 thru 28.
        c ........................................... 28 thru 30.
      2 ............................................... 30 thru 34.
      3 ............................................... 34 thru 37.
      4 ............................................... 37 thru 38.
      5 ............................................... 38 thru 42.
      6 ............................................... 42 thru 45.
      7 ............................................... 46 thru 54.
  VI.] Conclusion ............................................ 54 thru 57.
Prayer For Relief .................................................... 58.
Verification ......................................................... 59.
Request for Appointment of Counsel ................................... 60.
Order to Show Cause and Notice to file return ........................ 61.

<u>EXHIBITS:</u>

(A)  Transcript, (BPH) (2006) Subsequent Parole Consideration Hearing
    .................... 4, 5, 6, 7, 11, 13, 124, 19, 20, 21, 22, 23, 28.
(B)  Superior Court Minute Order, dated (8/13/2007) .......... 46, 51, 56.
(C)  Transcript, partial of eariler Parole Hearing (8/2/2004) ........ 46.
(D)  Court of Appeal, Minute Order, dated (10/3/2007)

<u>Abriviations:</u>

(A)    Acting ....................................................... 1,3.
(BPH) Board of Parole Hearings ................... 1,2,5,6,30,34,37,38.
(OSC) Order-To-Show-Cause ............................................ 2.
(MEPD) Minimum Eligible Parole Date ............................. 4, 27.
(15 CCR) California Code of Regulations, Title 15 ....................
    ............... 9,10,12,13,14,15,16,20,21,24,26,37,28,41,49.
(SRV) Serious Rule Violation ....................................... 16.
(LWOP) Life without the possibility of parole ...................... 18.
(ISL) Indeterminate Sentencing Law ............................ 24, 25.

# G R O U N D S    O F    A C T I O N

### 1.

THE BOARD OF PAROLE HEARINGS (BPH) DENIED PETITIONER OF THE DUE PROCESS OF THE LAWS AT A PAROLE CONSIDERATION HEARING WHEN THE BOARD PANEL FOUND PETITIONER UNSUITABLE FOR PAROLE RELEASE WITHOUT SOME EVIDENCE TO SUPPORT THAT DECISION  , FAILED TO SET HIS PRIMARY TERM CONSTITUTIONALLY PROPORTIONATE AND UNIFORM TO HIS INDIVIDUAL CULPABILITY IN THE COMMITMENT OFFENSES, AND IN SETTING-OFF HIS NEXT HEARING FOR TWO YEARS.

### 2.

THE BOARD OF PAROLE HEARINGS (BPH) IMPOSED A CRUEL AND UNUSUAL PUNISHMENT WHEN THE BOARD PANEL FAILED TO SET PETITIONER'S PRIMARY TERM CONSTITUTIONALLY PROPORTIONATE AND UNIFORM TO HIS INDIVIDUAL CULPABILITY IN THE COMMITMENT OFFENSES.

### 3.

THE BOARD OF PAROLE HEARINGS (BPH) DENIED PETITIONER OF THE EQUAL PROTECTIONS OF THE LAWS WHEN THE BOARD PANEL TREATED  PETITIONER DIFFERENTLY FROM SIMILARLY SITUATED PRISONER'S WITH THE SAME OFFENSES.

### 4.

THE BOARD OF PAROLE HEARINGS (BPH) ABUSED ITS DISCRETION WHEN THE BOARD PANEL FAILED TO ACT WITHIN ITS DISCRETION TO CONSIDER SUBSTANTIAL EVIDENCE SUPPORTING PETITIONER'S SUITABILITY FOR PAROLE RELEASE AND EXCEEDED ITS DISCRETION IN ACTING BEYOND  ITS AUTHORITY.

### 5.

THE BOARD OF PAROLE HEARINGS (BPH) RENDERED ARBITRARY AND CAPRICIOUS FINDINGS AND DECISIONS AT PETITIONER'S PAROLE CONSIDERATION HEARING.

### 6.

APPOINTED COUNSEL DENIED PETITIONER OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PAROLE CONSIDERATION HEARING.

### 7.

THE SUPERIOR COURT ERRED IN ITS FACTUAL FINDINGS, ERRED IN ITS APPLICATION OF THE LAWS, ERRED IN DECIDING ONLY PART OF THE CASE, MISMANAGED THIS CASE AND ABUSED ITS DISCRETION, ITS DECISION WAS CONTRARY TO, OR UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW.

# TABLE OF AUTHORITIES

**California Constitution:**

    (Article)

| | | | |
|---|---|---|---|
| I | § 1 | ...................................................... | 30. |
| I | § 7 | ...................................................... | 7, 11, 35. |
| I | § 15 | ...................................................... | 42. |
| I | § 17 | ...................................................... | 31, 32, 33. |
| VI | § 10 | ...................................................... | 3. |

**California Statutes:**

    (Stats.)

(1982), Ch. 1435, § 1, p. 5474 ...................... 29.

(Penal Code)

| | | |
|---|---|---|
| § 209 | ...................................................... | 4. |
| § 211 | ...................................................... | 4. |
| § 264.1 | ...................................................... | 4. |
| § 286(d) | ...................................................... | 4. |
| § 288a(d) | ...................................................... | 4. |
| § 1170.2 | ...................................................... | 16. |
| § 1240.1.(a) | ...................................................... | 44. |
| § 1473 | ...................................................... | 3. |
| § 1508 | ...................................................... | 3. |
| § 2931 | ...................................................... | 15. |
| § 2932 | ...................................................... | 14, 15. |
| former § 3000 | ...................................................... | 24, 28. |
| former § 3020 | ...................................................... | 31. |
| § 3041 | ...................................................... | 8, 12, 19, 26, 28, 29, 37, 50. |
| § 3041.5 | ...................................................... | 8, 12, 19, 26, 29, 38. |
| § 3042 | ...................................................... | 2, 5, 20. |
| § 3060 | ...................................................... | 31. |
| § 5011 | ...................................................... | 22. |
| § 12022.5 | ...................................................... | 4. |

**California Administrative Rules and Regulations:**

(Adult Authority and Women's Board of Terms and Parole, Title 15: [Register 76, No. 21-5-22-1978])

§ 2100 ...................................................... 26.

(California Code of Regulations, Title 15 [15 CCR]) [Division 2.]

| | | |
|---|---|---|
| § 2030 | ...................................................... | 20. |
| § 2236 | ...................................................... | 21. |
| § 2280 | ...................................................... | 8, 19. |
| § 2281 | ...................................................... | 9, 10, 12, 13, 14. |
| § 2282 | ...................................................... | 24, 26, 27. |
| § 2283 | ...................................................... | 26. |
| § 2284 | ...................................................... | 26. |
| § 2286(d) | ...................................................... | 15. |
| § 2290 | ...................................................... | 26. |
| § 2291 | ...................................................... | 15. |
| § 2402 | ...................................................... | 22. |
| § 2410-2411 | ...................................................... | 26. |

T A B L E   O F   A U T H O R I T I E S   (CON.T)

§  2451  ........................................... 15.
§  2452  ........................................... 15.
§  2429  ........................................... 26.
§  2439  ........................................... 26.
§  2515  ........................................ 24, 28.
§  4978  ........................................... 41.

[Division 3.]
§  3000  ........................................... 16.
§  3315  ........................................... 14.
§  3324  ........................................... 15.

**State Cases:**

Bair v. Folsom State Prison, (2005) Case No. (WL 2219220) * 12 n.3 ...12.
California Welfare Rights Organization v. Brian, (1974) 11 Cal.3d 237,
    113 Cal.Rptr. 154, 520 P.2d 970 ................................ 38.
Hollon v. Pierce, (1967) 257 Cal.App.2d 468, 64 Cal.Rptr. 808 ....... 40.
In re Barker, (2007 DJDAR 7548) ............................. 21, 27,  47,48,49,50,5
In re Coronado, (1979) 151 Cal.Rptr. 433, 87 Cal.App.3d 788 ......... 15.
In re Cowen, (1946) 27 Cal.2d 637, 166 P.2d 279 ..................... 31.
In re Dannenberg, (2005) 34 CAL.4th n+p. 10 05 ──────────────22,  47, 50, 51.
In re DeLuna, (2005) 24 Cal.Rptr.3d 643 ......................... 7, 15.
In re Elkins, (2006) Court of Appeals, 1st. Appellate District P. 18..22,  47, 49, 50, 51
In re Finley, (1905) 1 Cal.App. 198, 81 P. 1041. ................... 32.
In re Foss, (1974) 10 Cal.3d 910, 112 Cal.Rptr. 649, 519 P.2d 1073 ...32.
In re Harris, 80 Cal.App.2d 173, 181 P.2d 433 ..................... 15.
In re Jackson,  216 Cal.Rptr. 760 ............................... 29, 38.
In re Jackson, (1985) 39 Cal.3d 464 ............................... 30.
In re Lee, (2006) DJDAR 13961 ................................... 22,  48, 50, 51.
In re Lynch, (1972) 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 912.32, 33.
In re McLain, (1960) 55 Cal.2d 78, 9 Cal.Rptr. 824, 357 P.2d 1080 ......
    ................................................ 16, 31, 37.
In re Minnis, (1972) 7 Cal.3d 639, 102 Cal.Rptr. 749, 498 P.2d 997.37,40.
In re Mora, (2007) Superior Court, Case No. (SWHSS 8785)............. 23.
In re Powell, (1986) 232 Cal.Rptr. 553 ............................ 37.
In re Prewitt, (1973) 8 Cal.3d 470 ............................. 7, 31.
In re Rodriguez, (1975) 122 Cal.Rptr. 552, 14 Cal.3d 639, 537 P.2d 384 ..
    ................................ 17, 24, 25, 31, 32, 33.
In re Rosenkrantz, (2002) 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174
    ............................................... 7,  47, 53.
In re Rosenkrantz, (2006) Superior Court, Case No. (BH003529) .......13,  48,49, 50,51.
Inre Schoengarth,  66 Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200 .... 31.
In re Scott, (2005) 133 Cal.App.4th 595, 34 Cal.Rptr.3d 905..12,19,29,23,  48, 51.
In re Scott,  5 Cal.rptr.3d 887 ................................. 14.
In re Shaputis, (2005) 37 Cal.Rptr.3d 324, 135 Cal.App.4th 217 .......19.
In re Smith, (1970) 3 Cal.3d 192, 90 Cal.Rptr. 1, 474 P.2d 969.
In re Smith, (2003) 114 Cal.App.4th 343 ............................ 19,  51.
In re Stanley, (1976) 45 Cal.App.3d 1030, 126 Cal.Rptr. 524 ......15, 38.
In re Stanworth, (1982) 33 Cal.3d 176 ............................ 27.
In re Sturm, (1974) 11 Cal.3d 268 ............................... 40.
Masoner v. State, (2004) Case No. (WL 1080177) at * 1-2 ..... 18, 19, 20,  48.

T A B L E   O F   A U T H O R I T I E S (CON.T)

Morris v. Williams, (1976) 67 Cal.2d 733, 63 Cal.Rptr. 689, 433 P.2d 697
..................................................... 38.
People v. Cluff, (2001) 87 Cal.App.4th 991 ..................... 40.
People v. Crone, (1997) 62 Cal.Rptr.2d 607, 54 Cal.App.4th 71 ........ 41.
People v. Denne, 297 P.2d 451 ................................. 15.
People v. Modesto, 59 Cal.2d 722 ....................... 23, 27.
People v. Morse, (1964) 60 Cal.2d 631, 36 Cal.Rptr. 201, 388 P.2d 33 ....
..................................................... 24, 27, 31.
People v. Superior Court (Perez), (1999) 75 Cal.App.4th 394, 89 Cal.Rptr.
2d 326 ....................................................... 35.
People v. Walker, (1948) 88 Cal.App.2d 265, 198 P.2d 534 ........... 42.
People v. Wingo, (1975) 14 Cal.3d 169, 121 Cal.Rptr. 97, 534 P.2d 1001 ..
...................................................24, 25, 30, 31, 32.
Roberts v. Duffy, 167 Cal. 629, 140 P. 260 ...................... 15.
Terhune v. Superior Court, (1998)     Cal.App.4th 873 .............. 40.

United States Constitution:
(Amendments)
1st .................................................... 35.
5th ........................................... 7, 11, 39, 41.
6th .................................................... 42.
8th ............................................... 30, 31.
14th ........................................ 7, 11, 35, 39, 41.

Federal Cases:

Austin v. Bell, 126 F.3d 843 (6th Cir. 1997) ..................... 43.
Baumann v. Arizona Dep't of Corrections, 754 F.2d 841 (1985) ......... 36.
Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003)..7,8,10,12,13,14,17,18,20, s1.
Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2414, 96 L.Ed.2d 303
(1987) ................................................ 7, 8.
Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971
(9th Cir. 1998) ............................................. 8.
Burger v. Kemp, 483 U.S. 776, 987 L.Ed.2d 638, 107 S.Ct. 3114 (1987)..43.
California Department of Corrections v. Morales, 115 S.Ct. 1597, 514 U.S.
499, 131 L.Ed.2d 588 (1995) ........................... 29, 38.
Canty v. Board of Ed. City of New York, 312 F.Supp. 254 (1970) ....... 39.
Caswell v. Calderon, 363 F.3d 832 (9th Cir. 2004) ........... 10, 13, 14.
Chapman v. California, 386 U.S. 18 (1967) ................... 23, 27.
Cuyler v. Sullivan, 466 U.S. 335 (1980)........................ 42.
Dalch v. Director Navada Dept. of Prisons, 10 F.3d 684 (9th Cir. 1993).8.
Dorsey v. Sulomon, 435 F.Supp. 725 (D.C. Md.) .................. 35.
Eastern Central Motor Carries Ass'n. v. U.S., 239 F.Supp. 591 (1965)..39.
Eggleston v. U.S. , 798 F.2d 374 (9th Cir. 1986) ................ 43.
Ferguson v. Sikraipa, 372 U.S. 726, 83 S.Ct. 1028 (1963).............35.
Finney v. Mabry, 445 F.Supp. 756 ............................. 17.
Gadsden v. U.S., 78 F.Supp. 126 (1948) ......................... 39.
Greenholtz v. Inmates of Nebraska Penal Complex, 442 U.S. 1, 99 S.Ct. 2100
60 L.Ed.2d 668 (1979) ................................... 7, 8.
Groseclose v. Bell, 130 F.3d 1161 (6th Cir. 1997)................. 43.
Hall v. Washington, 106 F.3d 742, (7th Cir.) ................... 43.
Harris v. Nelson, 394 U.S. 236, 22 L.Ed.2d 281 (1969) ........... 23, 27.

T A B L E   O F   A U T H O R I T I E S   (CON.T)

Harris v. Wood, 64 F.3d 1432 (9th Cir. 1995

Hewitt v. Helms, 74 L.Ed.2d 675 (1983) ........................ 35, 36.

Hill v. Hutto, 537 F.Supp. 1185 (1982) ........................... 36.

Hosna v. Groose, 80 F.3d 298 (8th Cir.) ......................... 36.

In re Cunningham, 127 S.Ct. 856 (2007) .......................... 26.

Irons v. Warden, 358 F.Supp.2d 936 (2005) ........... 12, 13, 18, 19, 20, 48, 49, 51.

Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389 (9th Cir. 1987)..10,13,14.

Kimmelman v. Morrison, 477 U.S. 365 (1986) ........................ 43.

Landrum v. Warden Federal Correctional Institution Seagoville Texas,
    623 F.2d 416 (5th Cir. 1980) .................................. 15.

Lee v. Washington, 390 U.S. 333 (1968) ........................... 35.

Mak v. Blodgett, 970 F.2d 614 (9th Cir. 1992)

Martin v. Marshall, 431 F.Supp.2d 1038 (N.D. Cal. 2006) ........ 17, 50.

McMann v. Richardson, 397 U.S. 759 (1970) ........................ 42.

McQuillion v. Duncan, 342 F.3d 1012 (9th Cir. 2003) ............. 28.

McQuillion v. Duncan, 306 F.3d 901 (9th Cir. 2002) ... 7, 8, 10, 13, 14, 51,

Navajo Frieght Lines, Inc. v. U.S., 320 F.Supp. 318 (1970) ........ 40.

O'Boyle v. Coe, D.C., 155 F.Supp. 581 (1957) ..................... 39.

Page v. U.S. Parole Commission  651 F.2d 1087 ................... 15.

Powell v. Gomez, 33 F.3d 39 (9th Cir. 1994) ............... 10, 13, 14.

Rosenkrantz v. Marshall, U.S. Central Dist. Court, Case No.
    (CV 05-3836 GAF [AJW]) .................................... 12, 48,49, 50.

Shahid v. Cramford, 599 F.2d 666 (5th Cir. 1979) ................ 15.

Stewart v. Rhodes, 473 F.SuPp. 1185 (1979) ...................... 35.

Strickland v. Washington, 466 U.S. 690 (1984) ............... 42, 43.

Stroud v. U.S. Parole Commission, 668 F.2d 843 (1982) ........... 15.

Superintendent v. Hill, 472 U.S. 445 (1985).......... 10, 13, 14, 19, 20.

Tropnell v. United States, 725 F.2d 151 ......................... 42.

U.S. v. Carmack, 67 S.Ct. 252, 329 U.S. 230 (1946) .............. 39.

United States v. Lotempio, 58 F.2d 358 (D.C.N.Y.) ............... 40.

U.S. Dist. Court Report and Recommendations, adopted Case No.
    (WL 3081634) (E.D. Cal. 2005) ............................... 12.

Weygandt v. Ducharine, 774 F.2d 1491 (9th Cir. 1985)

### Text and Other:

Administrative Procedure Act, § 10, 5 U.S.A. § 1009 ............. 39.

California Criminal Procedure and Practive,
    (6th Ed.) (2002) § 57.19, P. 1695 .......................... 26.
    (6th Ed.) (2002) § 57.19, p. 1696 .......................... 26.
    Former  § 47.41, P. 1459 ................................... 16.

Goldfarb & Singer, After Conviction (1973) pp. 278-282 ......... 15.

Hood & Sparks, Key issues in criminology (1970) pp. 183-192 .... 15.

Morris, Op, Cit. p. 35 ......................................... 15.

### Other Jurisdictions:

Brown v. State, 117 Ariz. 476, 573 P.2d 876 ................... 36.

Huey v. Davis, 556 S.W.2d 860 (Tex. Civ. App.) ................ 40.

People ex rel. McBasyne v. Smith, 469 N.Y.S.2d 893, 122 Mic.2d 199 ...17.

TABLE OF AUTHORITIES (con.t)

CALIFORNIA RULES OF COURT:
   (Rule)
      4.551(4)-(B)-(g) ———————————— 52.

STATE CASES: (con.t)

CASPER v. City of Los Angeles, (1956) 140 Cal. App. 2d 433,
   295. P. 2d 452 ————————————— 54.
IN RE CANDELARIO, 3 CAL. 3d p. 70S ———————— 54.
IN RE GRAY, (2007) 59 CAL. Rptr. 3d 724 ————— 50.
IN RE JAMEISON (2007) Superior Court, County of Santa Clara,
   CASE No. (71194) ————————————— 51.
IN RE LAWRENCE, (2007) 59 Cal. Rptr. 3d 537 ——— 48, 49, 50, 51, 54.
IN RE RAMIREZ, (2001) 94 Cal. App. 4th 549 ————— 51.
IN RE SCOTT, (2004) 119 Cal. App. 4th At p. 899 ———— 51.
IN RE WEIDER, (2006) 52 Cal. Rptr. 3d 147 ————— 47, 51.
IN RE WRIGHT, (1978) 78 Cal. App. 3d 788, 144 Cal. Rptr. 535 — 52.
PEOPLE v. SCHULTZ, (1965) 23 Cal. App. 2d 804 ———— 54.
PEOPLE v. SIMMONS, (2006) 48 Cal. Rptr. 3d 357, 143 Cal. App. 4th
   256 ——————————————————— 54.
POTOMAC OIL Co. v. DYE, (1909) 10 Cal. App. 534, 102 P. 677 — 52.
ROSE v. SUPERIOR COURT, 96 Cal. Rptr. 2d 843 ————— 52.

FEDERAL STATUTES: (con.t)
   28 U.S.C. 2254(d) ——————————————— 53, 54.

FEDERAL CASES: (Con.t)

HINES v. THOMPSON, 336 F.3d 848 (9th Cir. 2003) ———— 53.
IN RE WILLIS (2007) 485 F. Supp. 2d 1126 ————— 51, 54.
SASS v. CALIFORNIA BOARD of PRISON TERMS, 461 F.3d 1123, (9th Cir.
   2006.) ——————————————————— 54.
WILLIAMS (Terry) v. TAYLOR  529 U.S. 362, 120 S. Ct. 1495,
   146 L. Ed. 2d 389 (2000) ——————————— 54.

Anthony Morrison C-60307
P. O. Box 689
Soledad, California
Zip. 93960-0689

IN PRO PER

# SUPREME COURT OF THE STATE OF CALIFORNIA

In re Anthony Morrion,     )    Case No. _____
      (Petitioner)      )
                 )    PETITION FOR WRIT OF HABEAS CORPUS
      vs.           )    AND MEMORANDUM OF POINTS AND
                 )    AUTHORITIES IN SUPPORT THEREOF.
Ben Curry, (Warden) (A) et.al   )
      (Respondent)      )    Superior Ct., San Bernardino County,
_____ )    Case No. (SWHSS700203 & CR8103)

                          Court of Appeal, 4th District,
                          Case No. (E044148).

## I.

## I N T R O D U C T I O N

Petitioner, Anthony Morrison, presents this state Petition for Writ of Habeas Corpus for the State Court to establish whether his current and continued incarceration is lawful and constitutional under State and Federal laws.

This Petition is based on the rules of:

1.) Substantial and Procedural Due Process of Law from several angels;

2.) Cruel and Unusual Punishment Clause;

3.) The Equal Protection of the Laws;

4.) An Abuse of Discretion;

5.) An Arbitrary and Capricious finding and decision; and

6.) A denial of the Effective Assistance of Counsel;

at petitioner's Subsequent Parole Consideration Hearing held on August 9th, 2006; whereat the Board of Parole Hearings (BPH), determined petitioner to

be unsuitable for Parole Release, and set-off his future hearing for (2-Years); because,

    1.) The Commitment Offenses;

    2.) Minor Juvenile Arrest Record;

    3.) Institutional Behavior;

    4.) Parole Plans;

    5.) Penal Code § 3042 Responses.

The California Board of Parole Hearings (BPH) has violated and deprived petitioner of his Fundamental Rights, causing prejudice to petitioner, and resulting in a Fundamental Miscarriage of Justice.

1. Petitioner, Anthony Morrison, is serving a (Two-Term-of-7-Years-To-Life- "With"-The-Possibility-Of-Parole-Release); plus (4-Years), sentence for Kidnap for Robbery, Firearm, Rape, Oral Copulation and Sodomy in concert, and occurred in (1981); while petitioner was (17-Years-Old). He has been incarcerated within the California Department of Corrections and Rehabilitation for (26-Years) thus far. He is presently housed at the Correctional Training Facility - Central, a Medium security, Low Level Custody Facility, in Soledad, California.

2. Petitioner now seeks and prays for an immediate and unconditional release from state custody to discharge without a Parole Period; because, petitioner is well overdue for parole release, and over the Statutory (5-Year) Parole Period, to grant an Order-To-Show-Cause (OSC), Declare petitioner's Right's, and grant any and all relief deemed proper.

3. This Court must correct the California Board of Parole Hearings (BPH) violations of petitioner's Fundamental Right's, and grant the State Petition for Writ of Habeas Corpus in the interest of justice.

1

## II.

2

## P A R T I E S

3   4. Petitioner, Anthony Morrison, is a prisoner within the California

4   Department of Corrections and Rehabilitation, and is presently

5   incarcerated at the Correctional Training Facility - Central, in Soledad,

6   California.

7   5. Respondent, Ben Curry, is the Acting (A) (Warden) at the Correctional

8   Training Facility, and is the legal custodian of petitioner.

9   6. Respondent, James Tilton, (Secretary) of the California Department of

10   Corrections and Rehabilitation, and he is responsible for the management

11   and operations of the Department of Corrections.

12   7. Respondent, James Davis          , is the (Chairman) of the California

13   Board of Parole Hearings, and he is responsible for the management and

14   operations of the Parole Board.

15

## III.

16

## J U R I S D I C T I O N

17   8. The California Board of Parole Hearings does not provide any available

18   Administrative Review or remedy for its' findings and decisions after

19   a Lifer Parole Consideration Hearings.

20   9. Moreover, the Parole Board lacks any further jurisdiction in this case

21   over petitioner; wherefore, petitioner is well overdue for his Parole

22   Release.

23   10. And this Court, has original jurisdiction in Habeas Corpus pursuant to

24   the California Constitution Article VI, § 10; and Penal Code §§ 1473,

25   1508. Petitioner were convicted and sentenced at the Superior Court of

26   California, in the County of San Bernardino.

27

28

3.

# I V.

## S T A T E M E N T   O F   F A C T S

11. Petitioner's Criminal History consist of a minor juvenile arrest record of petty theft and indecent exposure. Nonetheless, he has "No!" prior violence, "No!" prior convictions, and "No!" juvenile confinements. See Exhibit "A", Transcript, (2006) Subsequent No. (2), Parole Consideration Hearing, p. 70: lines 18-20; and p. 22 thru 31.

12. The Commitment Offenses, occurred on December 25th, 1981; while petitioner was (17-Years-Old). He had spontaneously involved himself in a Kidnap for Robbery, that resulted in other offenses as firearm, rape, oral copulation and sodomy in concert. Petitioner was the second youngest among the group and were influenced by the elders; whom were in their twenties. See Exhibit A", p. 10 thru 22.

13. On January 4th, 1983, the Superior Court of California, for the County of San Bernardino, convicted petitioner of Kidnap for Robbery, Firearm, Rape, Oral Copulation and Sodomy in concert, in violation of Penal Codes, §§ 209, 211, 12022.5, 264.1, 288a(d),and 286(d). That court has also sentenced petitioner on January 26th, 1983, to: Two terms of (7-Years-To-Life-"With"-The-Possibility-Of-Parole-Release), to run consecutively; plus a (4-Year) enhancement. See Exhibit "A", p. 1: lines 11-27; p. 2: lines 1-2.

14. The Board of Prison Terms (BPT) had establised petitioner's Minimum Eligible Parole Date (MEPD) at September 25th, 1995. See Exhibit"A", p. 1: lines 10-11; p. 2: lines 4-6.

15. Next, the Board of Prison Terms held petitioner's Initial Parole Consideration Hearing on June 2nd, 1997    . The Board Panel found petitioner unsuitable for parole release, and set-off his next hearing for ( 2 -Years).

4.

16. Then, on August 2nd, 2004 the Board of Prison Terms held a Subsequent #: (1) Parole Consideration Hearing. There the Board Panel again found petitioner unsuitable for parole release, and set-off his next hearing for( 2-Years).

17. Now, on August 9th, 2006, the Board of Parole Hearings (BPH) held Subsequent #: (2) Parole Consideration Hearing. Whereby the Board Panel a third time found petitioner unsuitable for parole release, and would pose a threat to public safety if released on parole; because, of the:

a.) The Commitment Offense, see Exhibit "A", p. 69: lines 14-26; P. 70: lines 5-6, 13-14;

b.) Minor Juvenile Arrest Record, see Exhibit "A", p. 70: lines 18-20;

c.) Institutional Behavior, see Exhibit "A", p. 70: lines 22-25; p. 71: lines 1-4;

d.) Parole Plans, see Exhibit "A", p. 72: lines 11-12;

e.) Penal Code § 3042, Responses, see Exhibit "A", p. 73: lines 2-6;

f.) Not taking full responsibility for the offenses, see Exhibit "A", p. 73: lines 13-14;

g.) Gains not recent, see Exhibit "A", p. 74: lines 11-12.

And they set-off his next Parole Consideration Hearing for (2-Years), for the same reasons (unchanging factor's) mentioned above. See Exhibit "A", pp. 69 thru 70.

V.

A R G U M E N T S

G r o u n d

1.

THE BOARD OF PAROLE HEARINGS (BPH) DENIED PETITIONER OF THE
DUE PROCESS OF THE LAWS AT A PAROLE CONSIDERATION HEARING
WHEN THE BOARD PANEL FOUND PETITIONER UNSUITABLE FOR PAROLE
RELEASE WITHOUT SOME EVIDENCE TO SUPPORT THAT DECISION,
FAILED TO SET HIS PRIMARY TERM CONSTITUTIONALLY PROPORTIONATE
AND UNIFORM TO HIS INDIVIDUAL CULPABILITY IN THE COMMITMENT
OFFENSES, AND IN SETTING-OFF HIS NEXT HEARING FOR TWO YEARS.

18.  The Board of Parole Hearings (BPH) held petitioner's Parole

Consideration Hearing, Subsequent #:(2); on August 9th, 2006. At

that hearing the Board Panel found petitioner unsuitable for parole

release, and that he would pose an unreasonable risk of danger to

society or a threat to public safety if released from prison based on:

a.) The Commitment Offenses, see **Exhibit "A"**, Transcript, (2006) Parole

   Consideration Hearing, Subsequent #: (2), p. 69: lines 14-26;

   p.70: lines 5-6, 13-14;

b.) Petitioner's minor juvenile arrest record, see **Exhibit "A"**, p. 70:

   lines 18-20;

c.) Institutional Behavior, see **Exhibit "A"**, p. 70: lines 22-25; p. 71:

   lines 1-4;

d.) Parole Plans, see **Exhibit "A"**, p. 72: lines 11-12;

e.) Information from  District Attorney and the Victim, see **Exhibit "A"**,

   p. 73: lines 2-6;

f.) Not taking full responsibility for the offenses, see **Exhibit "A"**,

   p.73: lines 13-14;

g.) Positive gains not being recent, see **Exhibit "A"**, p. 74: lines

   11-12.

In addition, they set-off the next parole consideration hearing for two-years, based upon the same factor's mentioned here above, see Exhibit "A", pp. 69-70.

19. Petitioner has a right to the Due Process of law at his parole consideration hearing. The 5th and 14th Amendments of the United States Constitution, and the California Constitution, Article I, § 7; guarantees its citizens the due process of the laws. Those constitutions prohibit the parole board from depriving a prisoner of life, liberty, or property without the due process of law.

20. Accordingly, the court must first address whether petitioner has a constitutionally protected liberty interest in parole.

21. While there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence, a state's statutory scheme, if it uses mandatory language, creates a presumption that parole release will be granted when or unless certain designated findings are made, an thereby gives rise to a constitutional liberty interest. McQuillion v. Duncan, 306 F.3d at 901 (9th Cir. 2002); Board of Pardons v. Allen, 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); Greenholtz v. Inmates of Nebraska Penal Complex, 442 U.S. 1, 7, 11-12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

22. The California Supreme Court has repeatedly held that the state parole scheme creates a protected liberty interest for prisoners. See e.g., In re DeLuna, (2005) 24 Cal.Rptr.3d 643, 648; In re Rosenkrantz, (2002) 29 Cal.4th 616, 656-657, 661, 128 Cal.Rptr.2d 104, 59 P.3d 174; In re Prewitt, (1973) 8 Cal.3d 470; Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003): McQuillion v. Duncan, 306 F.3d 895, 901-902 (9th Cir. 2002).

23. The California parole scheme uses mandatory language and is largely

7.

parellel to the schemes found in <u>Allen</u> and <u>Greenholtz</u>. Therefore, a

liberty interest was created. <u>Biggs v. Terhune</u>, 334 F.3d 910, 914

(9th Cir. 2003); <u>McQuillion v. Duncan</u>, 306 F.3d at 101 (2002);

<u>Dalch v. Director Navada Dept. of Prisons</u>, 10 F.3d 684, 688 (9th Cir.

1993).

24. In analyzing the procedural safeguards owed to an inmate under the due

process clause, the court must look at two distinct elements:

   a.) A deprivation of a constitutionally protected liberty or property

     interest, and

   b.) A denial of adequate procedural protection.

<u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002); <u>Brewster v.</u>

<u>Bd. of Educ. of Lynwood Unified Sch. Dist.</u>, 149 F.3d 971, 982 (9th Cir.

1998).

25. The California statutes <u>Penal Code</u>, §§ 3041, 3041.5; requires that the

parole board shall normally set a release date that will provide uniform

terms for offenses of similar gravity and magnitude in respect to their

threat to the public, and that will comply with the sentencing rules

that the judicial council may issue and any sentencing information

relevant to the setting of parole release dates.

26. In addition, the parole board established criterion to determine whether

a prisoner under its jurisdiction is a current danger or threat to the

public. See the <u>California Code of Regulations, Title 15</u>, (15 CCR) §§

2280 et seq.

27. Those regulations list "<u>Circumstances Tending to show unsuitability</u>",

(<u>current danger to the community</u>) are:

(1) <u>Commitment Offense</u>:

     Was "especially heinous atrocious and cruel manner." The factors
     to be considered include:

(A) Multiple Victims,
(B) Was carried out in a dispassionate or calculated manner, such
    as an execution-style murder,
(C) The victim was abused, defiled or mutilated,
(D) Showed an "exceptionally callous disregard for human suffering,"
(E) Involved an "inexplicable or very trivial motive;

(2) Previous record of violence:
    Showing that the prisoner has on previous occasions inflicted
    or attempted to inflict serious injury;

(3) Unstable Social History:
    Showing that the prisoner has a history of tumultuous
    relationships with others;

(4) Sadistic Sexual Offenses:
    Have been committed by the prisoner;

(5) Psychological Factors:
    Shows a lengthy history of severe mental problems related to
    the offense; and

(6) Institutional Behavior:
    Shows that the prisoner has engaged in serious misconduct
    in prison.

See (15 CCR) § 2281(c).

28. Moreover, those regulations also list "Circumstances Tending to show

suitability, (no current danger to the community) are:

(1) No juvenile record:
    Of assaulting others or commiting offenses with a potential
    of personal harm to the victim;

(2) Stable social history:
    Showing reasonably stable relationships with others;

(3) Signs of remorse:
    Showing that the prisoner is remorseful, such as attempting
    to repair damage or indicating understanding of the nature and
    magnitude of the offense;

(4) Motivation for the crime:
    Was the result of significant stress, especially if the stress
    had built over a long period of time;

(5) Battered women syndrone:
    Indicating the offense was the result of this type of
    victimization;

(6) Lack of criminal history:
    Showing that the prisoner lacks "any significant history
    of violent crime";

1  (7) Age:
       Such that prisoner's probability of recidivism is reduced;

2

3  (8) Plans for the Future:
       That are realistic or depend on marketable skills; and

4  (9) Institutional activities:
       That show an enhanced ability to function within the law upon
5  release. See (15 CCR) § 2281(d).

6                                a.

7       The Parole Board Panel found petitioner unsuitable for
        Parole Release "Without Some Evidence" to support that
8       decision.

9  29. The Due Process requires that some evidence support the parole board's

10     determination, and that the evidence must have some indicia of

11     reliability. Caswell v. Calderon, 363 F.3d 832, 839 (9th Cir. 2004);

12     Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003); McQuillion v.

13     Duncan, 306 F.3d at 904 (2002); Jancsek v. Oregon Bd. of Parole, 833

14     F.2d 1389, 1390 (9th Cir. 1987); Superintendant v. Hill, 472 U.S. 445,

15     457 (1985).

16 30. The some evidence standard is satisfied if there is any reliable evidence

17     in the record that could support the conclusion reached. Powell v. Gomez,

18     33 F.3d 39, 40 (9th Cir. 1994).

19 31. In the parole hearing setting, the due process analysis is not whether

20     the crime alone can make a prisoner a threat; rather, it is when all the

21     evidence is considered, does that totality of evidence support a finding

22     that the prisoner is a current threat. See also (15 CCR) § 2281(b).

23 32. There is no evidence to support the parole board's determination that

24     petitioner would be a risk to public safety if released. The parole

25     board panel denied petitioner a parole release date at the (2006) parole

26     consideration hearing, subsequent #: (2); based on unchanging factor's

27     such as the commitment offenses, petitioner's minor juvenile arrest

28     record, institutional behavior, parole plans, information from the D.A.

                                10.

1    and victim, responsibility for the offenses, and recent positive gains.

2  33. The focus of the parole board's panel assessment is required to be the

3    prisoner's current dangerousness. Because, with the passage of time,

4    the crime becomes less and less significant when there is more and more

5    evidence of change, maturation, and rehabilitation in the prisoner,

6    as in this case.

7  34. The parole board panel's continued determinations that petitioner

8    continues to pose an unreasonable risk of danger to society if released

9    to parole; after twenty-six-years of incarceration, rehabilitation, and

10   five parole denials; deprive petitioner of his liberty interest in

11   parole release violating his right's to the due process as afforded him

12   by the 5th and 14th Amendments of the United States Constitution and

13   California Constitution, Article I, § 7.

14 35. The (2006) parole board panel First Reason for determining petitioner

15   unsuitable for parole release was the (commitment offenses). The panel

16   stated that "the commitment offenses was carried out in a calculated,

17   cold, cruel and callous manner ... all of the offenses were carried out

18   in a manner which demonstrate an exceptionally callous disregard for

19   human suffering." See Exhibit "A", p. 69: lines 14-26. And that "the

20   motive for the crime was very trivial, ...." See Exhibit "A", P. 70:

21   lines 5-6, 13-14.

22 36. The finding of continued threat to society was not supported by any

23   evidence; the finding was based upon unchanging factor's (such as the

24   commitment offenses, petitioner's minor juvenile arrest record,

25   institutional behavior, parole plans, information from the D.A., and

26   victim, not taking responsibility for the offenses, and recent gains; are

27   all of which lacked a reasonable predictive value relevant to the question

28   of petitioner's current dangerousness, and had been used to deny parole

11.

1  on two prior occassions; the findings were not based upon evidence

2  relevant to petitioner's current risk to the community if released; and

3  the denial was not a proper application of the California Penal Code,

4  §§ 3041 et seq., 3041.5 and the parole board's regulations (15 CCR)

5  § 2281 et seq. See also Rosenkrantz v. Marshall, U.S. Central District

6  Ct. Case No. (CV 05-3836 GAF (AJW).

7  37. Reliance on petitioner's commitment offenses violated due process.

8  Continued reliance on an unchanging factor such as the circumstances of

9  the offenses could result in a due process violation. The parole board's

10  sole supportable reliance on the gravity of the offense and conduct

11  prior to imprisonment to justify denial of parole can be initially

12  justified as fulfilling the requirements set forth by state law. Over

13  time, however, should petitioner, continue to demonstrate exemplary

14  behavior and evidence of rehabilitation, denying him a parole date

15  simply because of the nature of his offense would raise serious questions

16  involving his liberty interest. Biggs v. Terhune, 334 F.3d at 916.

17  38. The facts of the unchanged circumstance must indicate a present danger

18  to the community if released, and this can only be assessed not in a

19  vacuum, after five eligibility hearings, but counterpoised against the

20  backdrop of prison events. Bair v. Folsom State Prison, Case No.

21  (WL 2219220), *12 n. 3 (E.D. Cal. 2005); U.S. Dist. Ct. Report and

22  Recomendations, adopted Case No. (WL 3081634), (E.D. Cal. 2005). Please

23  take judicial notice.

24  39. After twenty years of rehabilitation, the ability to predict a prisoner's

25  future dangerousness based simply on the circumstances of the crime and

26  petitioner's prior criminal history is nil. See Irons v. Warden, 358

27  F.Supp.2d at 947 n.2. See also In re Scott, 133 Cal.App.4th at 595

28  (2005).

40. The parole board panel continued sole reliance on the commitment offense

will essentially convert petitioner's original sentence of life with the

possibility of parole into a sentence of life without the possibility of

parole. Petitioner has no chance of obtaining parole unless the board

holds that his crime was not serious enough to warrant a denial of

parole. Please take judicial notice of In re Rosenkrantz, Superior Court

County of Los Angeles, Case No. (BH003529) p. 3. (2006); Irons v. Warden,

358 F.Supp.2d 936, 947 (2005).

41. The parole board continued reliance on petitioner's commitment offenses

deprives petitioner of the due process of the laws. That factor does not

constitute some evidence with some indicia of reliability of an current

dangerousness assessment. See Caswell v. Calderon, 363 F.3d 832, 839

(9th Cir. 2004); Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003);

McQuillion v. Duncan, 306 F.3d at 904 (2002); Jancsek v. Oregon Bd. of

Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Superintendent v. Hill,

472 U.S. 445, 457 (1985); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994).

42. The Second Reason for determining petitioner unsuitable for parole

release was the (minor juvenile arrest record). The panel stated:

"The panel also noted that you had a petty theft charge ... and you

also had two counts of indecent exposure ...." See Exhibit "A", p. 70:

lines 18-20.

43. The parole board's regulations (15 CCR) § 2281(c)-(2), sets forth:

> "Previous Record of violence. The prisoner on
> previous occations inflicted or attempted to
> inflict serious injury on a victim,
> particularly if the prisoner demonstrated
> serious assaultive behavior at an early age."

44. There is no evidence that petitioner has a record of previous violence.

Petitioner has only a minor juvenile arrest record of two arrests; one

was theft related the other was for indecent exposure; when petitioner

13.

1   was a child. Petitioner has "No!", prior record of violence, "No!",

2   prior convictions, and "No!", juvenile commitments. See herein Statement

3   of Facts p. 4: ¶ 11.

4   45. The parole board continued reliance on petitioner's minor juvenile arrest

5   record deprives petitioner of the due process of the laws. That factor

6   does not constitute some evidence with some indicia of reliability of

7   an current dangerousness assessment. See Caswell v. Calderon, 363 F.3d

8   832, 839 (9th Cir. 2004); Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir.

9   2003); McQuillion v. Duncan, 306 F.3d at 904 (2002); Jancsek v. Oregan

10  Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Superintendent v.

11  Hill, 472 U.S. 445, 457 (1985); Powell v. Gomez, 33 F.3d 39, 40

12  (9th Cir. 1994).

13  46. The (2006) parole board panel Third Reason for determining petitioner

14  unsuitable for parole release was the (Institutional Behavior). The

15  panel stated: "... your programing, ...has been a disaster prior to the

16  last few years. You were a management problem for 20 years in this

17  institution ...." See Exhibit "A", p. 70: lines 22-25. "...you had 17

18  115's, of those 17 115's, the last one was in (2004). But since --

19  within the last five years you've had five 115's primarily for either

20  stealing food or manufacturing pruno." See Exhibit "A", p. 71: lines

21  1-4.

22  47. The parole board regulations (15 CCR) § 2281(c)-(6), sets forth:

23          "Institutional Behavior. The prisoner has engaged
            in serious misconduct in prison or jail."
24

25  48. Serious misconduct is defined in Penal Code, § 2932(a)-(4); (15 CCR)

26  § 3315(a)-(1)-(2)-(A) thru (E)-(3)-(A). See also In re Scott, (2003 )

27  5 Cal.Rptr.3d 887, 891.

28  49. Moreover, only specific acts of misconduct is reportable to the parole

1    board (15 CCR) §§ 2452(a), 3324(a). Those specific acts (mainly

2    violence and escapes) are enumerated in (15 CCR) § 2451(a).

3    50.  Accordingly, the parole board has the discretion to impose an

4        additional term specific enhancement for violation of any of the

5        specific acts specified in 2451(a). See (15 CCR) §§ 2291, 2286(d).

6        See also Penal code, §§ 2931, 2932; In re coronado, (1979) 151 Cal.Rptr.

7        433, 436 fn. 4, 87 Cal.App.3d 788, 793.

8    51.  However, nor must the Commission consider institutional conduct as a

9        major factor in its determination for parole. Page v. U.S. Parole

10       Commission, 651 F.2d at 1087; Landrum v. Warden Federal Correctional

11       Institution Seagoville Texas, 623 F.2d 416, 418 (5th Cir. 1980);

12       Shahid v. Cramford, 599 F.2d 666, 670 (5th Cir. 1979). See also

13       Stroud v. U.S. Parole Commission, 668 F.2d 843, at 846 (1982);

14       In re DeLuna, 24 Cal.Rptr.3d at 652.

15   52.  Because, in prison behavior is frequently an unreliable indicator of

16       post release behavior; that predictions of post release danger gain

17       little certainty with the passage of confinement time. (Goldfarb &

18       Singer, After Conviction (1973) pp. 278-282; Hood & Sparks, key issues

19       in criminology (1970) pp. 183-192; Morris op. Cit., p. 35.); In re

20       Stanley, (1976) 54 Cal.app.3d 1030, at 1039, 126 Cal.Rptr. 524.

21   53.  Moreover, in determining whether the privilege of parole shall be

22       granted a prisoner, that authority is not guided solely by the good

23       conduct of the prisoner while incarcerated .... Roberts v. Duffy,

24       167 cal. 629, 640, 140 P. 260; In re Harris, 80 Cal.App.2d 173, 178,

25       181 p.2d 433. See also People v. Denne, 297 P.2d 451, at 456.

26   54.  Furthermore, a program failure means any inmate who generates a

27       significant disciplinary history within (180-days) of the date of

28                                    15.

1     discovery for the most current rule violation report. A guilty

2     finding for two serious rules violation reports or one serious and

3     two administrative rules violations reports within (180-days) is

4     reasonable evidence of a significant disciplinary history and may be

5     considered a program failure. (15 CCR) § 3000.

6  55.  The question should be whether the Serious Rule Violation (SRV) is

7     of such magnitude that it reasonably supports a conclusion that a

8     prisoner therefore poses an unreasonable threat to public safety. If

9     the controlling statute specifies only the gravity of a past or present

10     convicted offense, and the regulations provide sanctions for (SRV),

11     petitioner submits that denial of parole for any (SRV) is insufficient

12     and it does not show petitioner, presents a current threat to public

13     safety if released from prison after serving (26-Years) in prison.

14  56.  And the parole board must find an extraordinary factor i.e., one or

15     more of those factors listed that allows the board to set a sentence

16     longer than that which could be imposed under Penal Code, § 1170.2(a).

17     See also In re McLain, (1960) 55 Cal.2d 78, 9 Cal.Rptr. 824, 357 P.2d

18     1080.

19  57.  At the very minimum, the prisoner must be discipline - free for

20     at least the previous (5-Years) before the suitability hearing ....

21     Criminal Law Procedure and Practice former § 47.41, p. 1459. In the

22     instant case, petitioner has demonstrated exemplary behavior far longer

23     than the (5-year) minimum required.

24  58.  And the number of past infractions is insufficient to support a

25     determination that petitioner is a danger or threat to public safety;

26     for example: in one case, a court held "... his conduct in prison was

27     exemplary for a period of many years, (... he has been charge with only

28

1    a dozen rules infractions' ...." <u>In re Rodriguez</u>, (1975) 122 Cal.Rptr.

2    552, at 556 fn. 7, 14 Cal.3d 639, 537 P.2d 384. And in another case,

3    the court held "... petitioner has <u>received twenty disciplinary</u>

4    <u>violations</u> while in prison ... with respect to petitioner's

5    disciplinary violations, there is significant evidence in the record

6    of petitioner's positive institutional behavior, which reasonably

7    mitigates the effect that petitioner's past violations have on his

8    suitability for parole ... petitioner has not had a significant

9    disciplinary violation since 1995 ...." <u>Martin v. Marshall</u>, 431

10   F.Supp.2d 1038, 1042 (N.D. Cal. 2006). In the instant case, petitioner

11   has not had a significant disciplinary violation for many years.

12   59.  And Officials cannot rely in prison proceedings exclusively upon

13        conclusory statements by prison employees. <u>Finney v. Mabry</u>, 445 F.Supp.

14        756, or upon accusatory instrument. <u>People ex rel. McBasyne v. Smith</u>,

15        469 N.Y.S.2d 893, 122 Mic.2d 199.

16   60.  A continued reliance in the future on an unchanging factor, ... runs

17        contrary to the rehabilitative goals esposed by the prison system and

18        could result in a due process violation. <u>Biggs v. Terhune</u>, 334 F.3d

19        910, at 917 (9th cir. 2003).

20   61.  There is no current evidence that petitioner had engaged in serious

21        misconduct in prison or jail. The parole board must base its decisions

22        on an objective and defined criterion; such as defined serious

23        misconduct, specific acts of violence and escapes, institutional conduct

24        not a major factor in determining parole and is frequently an unreliable

25        indicator of post release behavior, the board authority is not guided

26        solely by the good conduct of the prisoner while incarcerated, being

27        that a program failure is one who generates a significant disciplinary

28        history within (180-days), parole board must find an extraordinary

factor, plus the number of past infractions is insufficient to support a determination petitioner is a danger or threat to public safety, officials cannot rely in prison proceedings exclusively upon conclusory statements by prison employees or upon accusatory instrument, and continued reliance in the future on an unchanging factor runs contrary to rehabilitative goals.

62. continued reliance upon the unchanging factor of petitioner's minor to less serious disciplinary history; which occurred more than (5-years) ago is unfair, unreasonale and violate the due process clause.

63. Petitioner has demonstrated exemplary behavior and evidence of rehabilitation, as required by the Biggs Court, for a significant period of time. Therefore, the sole reliance on petitioner' past minor to less serious disciplinary history in denying him parole impinges on petitioner's constitutional liberty interest in parole.

64. If the parole board is permitted to continue to deny parole based on the immutable and static factors of petitioner's minor to less serious disciplinary history itself, then the board could continue to deny parole forever as those circumstances will never change. This would in effect, convert petitioner's sentence to LWOP, a sentence not prescribed by the Legislature for petitioner's offense.

65. The parole board has apparantly relied on these unchanging factors at least two prior times in finding petitioner unsuitable for parole. Under these circumstances, the continued reliance on these factors violates due process. Irons v. Warden, 358 f.Supp.2d 936 at 947.

66. The board's refusal to grant a parole date and repeated failure to provide post commitment support for the decisions [had] violated petitioner's liberty interest and due process rights. Masoner v. State, 2004 wl 1080177 at * 1-2 (C.D. Cal. 2004).

18.

67. The factor of petitioner's past minor to less serious disciplinary offenses do not constitute some evidence with some indicia of reliability of petitioner's current dangerousness. See *In re Scott*, 133 Cal.App.4th at 573 (2005); *Masoner v. state*, (2004) WL 1080177 1-2 (C.D. Cal. 2004); *Irons*, 358 F.Supp.2d at 947; *Hill*, 472 U.S. at 455.

68. The (2006) parole board panel **Fourth reason** for determining petitioner unsuitable for parole release was the (**Parole Plans**). The panel stated: "... but you need to get some employment plans." See **Exhibit "A"**, p. 72: lines 11-12.

69. California Statutes nor the parole board's Regulations provides no authority for a finding of unsuitability based on **parole plans**. See Penal Code, §§ 3041, 3041.5; (15 CCR) §§ 2280 thru 2292.

70. And there is no evidence petitioner lack realistic plans for release or failed to develop marketable skills that can be put to use upon release. Even the parole board said as much when it stated: "... your **Parole Plans**, you do have viable residential plans, ....' See **Exhibit "A"**, p. 72: lines 11-12, "... you do have a marketable skill, that you are a Welder." **Exhibit "A"**, p. 73: lines 1-2. Petitioner have made significant achievements throughout his twenty-six-years of incarceration in personal growth and marketable work skills that will be put to good use upon release making his smooth transition back into the community. All of these things illustrate petitioner's marketable skills and viable parole plans for his release to the community.

71. The parole board's evidence must show that a prisoner currently would pose an unreasonable risk of danger if released at this time. *In re Smith*, 114 cal.App.4th 343, 370, 372 9(2003); *In re Shaputis*, 37 Cal.Rptr. 3d 324, 334-335, 135 Cal.app.4th 217 (2005 )

19.

72. The board's continued reliance on petitioner's realistic and viable parole plans should be considered a due process violation; because, it amounts to an arbitrary decision and because that factor do not constitute some evidence with some indicia of reliability of a current dangerousness. See In re Scott, 133 Cal.App.4th at 573 (2005); Masoner v. State, (2004) WL 1080177 * 1-2 (C. C. Cal. 2004) Please take judicial notice; Irons v. Warden, 358 F.Supp.2d at 947; Biggs v. Terhune, 334 F.3d at 917; and Hill, 472 U.S. at 455.

73. The (2006) parole board panel Fifth reason for determining petitioner unsuitable for parole release was the (District Attorney (DA) opposition and a letter from the victim). The panel stated: "... 3042 responses, we note the DA of ... indicate an opposition of finding of parole suitability as well as the victim in her letter ...." See Exhibit "A", p. 73: lines 2-6.

74. Penal Code, § 3042 provides in part:

> "... The parole board shall review and consider all information received from the judge or any other person and shall consider adjusting the terms or conditions of parole to reflect the comments or concerns raised by this information, as appropriate ...." Penal Code, § 3042(f)-(3).

75. The role of the prosecutor is to comment on the facts of the case and present an opinion about the appropriate disposition. In making comments, supporting documentation in the file should be cited. The prosecutor may be permitted to ask clarifying questions of the hearing panel, but may not render legal advise. (15 CCR) (1995) § 2030(d)-(2).

76. Penal Code, § 3042 responses, at basically all lifer parole consideration hearings, the District Attorney's take the position of opposing parole release whether they personally believe a lifer should be paroled. As well, so does the victim in the case. However, their opinions are based

20.

1    on the past acts of the lifer that (occurred many, many years ago), that

2    does not constitute some evidene that petitioner would pose a current

3    danger or threat to public safety. See <u>In re Barker</u>, (2007 DJDAR 7548,

4    at 7555).

5  77.  The District Attorney's statement added absolutely nothing of material

6    or relevant evidentiary value in the inquiry of petitioner's

7    "suitability" for parole.

8  78. The board panel erred in finding that opposition by the District Attorney

9    constituted a basis for denial of parole, where the D.A. submitted no

10   evidence whatsoever that petitioner was "unsuitable" for parole.

11 79.  Therefore, it was improper for the panel to use this opposition as

12   cause for parole denial.

13 80.  Likewise, a letter from the victim opposing parole is insufficient as

14   cause for denial of parole. The letter added nothing of evidentiary

15   value in the inquiry of petitioner's "suitability" for parole. It was

16   also improper for the panel to use this opposition as cause for parole

17   denial.

18 81.  Next, the (2006) parole board panel <u>Sixth reason</u> for determining

19   petitioner unsuitable for parole release was that petitioner (<u>Did not</u>

20   <u>take full responsibility for the crime</u>). The panel stated: "... whereas

21   you were not taking full responsibility for the crime ...." See

22   <u>Exhibit "A"</u>, p. 73: lines 13-14.

23 82.  The parole board regulations (<u>15 CCR</u>) (1995) § 2236 provides in part:

24       "The facts of the crime shall be discussed with the
          prisoner to assist in determining the extent of
25       <u>personal culpability</u>. The board shall not require
          an admission of guilt to any crime for which the
26       prisoner was committed ...."

27

28
                                    21.

1  83.  Another pertinent regulation states:

2       "Signs of remorse. The prisoner performed acts which
         tend to indicate the presence of remorse such as
3        attempting to repair the damage, seeking help for
         or relieving suffering of the victims, or indicating
4        that he understands the nature and magnitude of the
         offense." (15 CCR) § 2402(d)-(3).

5  The issue here is whether petitioner showed that he "understands the

6  nature and magnitude of the offense. See In re Elkins, (2006) Court of

7  Appeals , 1st Appellate Dist. p. 18.

8  84.  Petitioner did accept responsibility at the (2006) parole board hearing

9  and showed signs of remorse. This is certainly progress. See Exhibit "A",

10 pp. 10 thru 21. Petitioner never denied participating in the offenses,

11 he had necessarily acknowledged his guilt; and acknowledged his

12 individual culpability in any event, by the time of his last parole

13 hearing, his acceptance of responsibility for his crimes was complete.

14 See In re Wen Lee, (2006 DJDAR 13961, 13965).

15 85.  To deny parole, the reason must relate to a defendant's continued

16 unreasonable risk to public safety. So long as petitioner continually

17 accepts responsibitlity, it does not matter how long standing or recent

18 it is. Petitioner's assumming full responsibility is no evidence that

19 he continues to pose an unreasonable risk to public safety. See

20 In re Wen Lee, (2006 DJDAR 13961 at 13965).

21 86.  The parole board's reliance on a prisoner's failure to accept full

22 responsibility for his crime violate Penal Code, § 5011(b). See

23 In re Dannenberg,

24 87.  There is nothing rationally supporting a conclusion that petitioner's

25 acceptance of full responsibility, weigh in favor of his parole. And

26 beside, the record shows over a decade of fully accepted responsibility.

27 See also In re Elkin, (2006) Court of Appeals, 1st Appellate District,

28 p. 20.

                                    22.

88. The (2006) parole board panel <u>Seventh reason</u> for determining petitioner unsuitable for parole release was that petitioner (<u>Gains are recent</u>). The panel stated: "... The panel also notes that your gains are recent, ..." See <u>Exhibit "A"</u>, p. 74: lines 11-12. "... However, those positive aspects of your behavior do not outweigh the factors of unsuitability." See <u>Exhibit "A"</u>, P. 74: lines 18-19.

89. There are no parole statutes nor regulations authorizing a board panel to deny parole release to a prisoner based on recent gains.

90. Moreover, in one case the court found no evidence in the record to support the panel's recitations that the gains achieved by petitioner, who has been imprisoned longer than the prison terms prescribed for most murder's, were too "recent", ... that his recent prison record was poor. <u>In re Mora</u>, (2007) Superior Court, Case No. (SWHSS 8785). Plase take judicial notice.

91. In addition, the overarching consideration in determing whether to grant parole is public safety. <u>In re Scott</u>, (2005) 133 Cal.App.4th 573, 591, 34 Cal.Rptr.3d 905.

92. The parole board had no evidence to support their decision that petitioner is unsuitable for parole. That action caused prejudice to petitioner where they worked toward petitioner's actual and substantial disadvantage, infecting his entire hearing with error's of constitutional dimension. See <u>People v. Modesto</u>, (1963) 59 Cal.2d 722; <u>Chapman v. California</u>, (1967) 386 U.S. 18. Moreover, it is a Fundamental Miscarriage of Justice. See <u>Harris v. Nelson</u>, (1969) 394 U.S. 286, 291, 22 L.Ed.2d 281, 286.

93. A remand back to the parole board would be futile. As petitioner's (26-Actual-Years-In-Custody) <u>thus far</u> is beyond the (12-years) Primary Term the parole board should have established for his individual

23.

culpability in the commitment offenses. See also <u>People v. Morse</u>,

(1964) 60 Cal.2d 631, 648, 36 Cal.Rptr. 201, 388 P.2d 33; and beyond

the (14-Years) aggravated term of the parole board's matrix (<u>15 CCR</u>)

§ 2282(c)-(B)-(II), Category [10-12-14] years. In addition,

petitioner is also beyond the (5-year) Parole Period after a release,

effective at the time of his offense <u>Penal Code</u>, former § 3000;

(<u>15 CCR</u>) § 2515. There's nothing that the parole board can do shorter

than an immediate and unconditional release to the community.

94.  Therefore, this court must find that the parole board had no evidence

supported by the record that petitioner was unsuitable for parole

release.

                                   b.

        The parole board panel failed to set a primary term
        constitutionally proportionate and uniform to
        petitioner's individual culpability in the commitment
        offenses.

95.  Petitioner questions whether in the parole board's administation in

considering petitioner's application for parole release it has imposed

a constitutionally disproportionate punishment. <u>People v. Wingo</u>, (1975)

14 Cal.3d p. 169, 121 Cal.Rptr. 97, 534 P.2d 1001.

96.  The Indeterminate Sentencing Law (ISL) is not now being administered in

a manner which offers assurance that persons subject  thereto will have

their terms fixed at a number of years proportionate to their

individual culpability. <u>People v. Wingo</u>, supra, ante, p. 169, 121

Cal.Rptr. 97, 534 P.2d 1001, or, that their terms will be fixed with

sufficient promptness to permit any request review of their

proportionality to be accomplished before the affected individual have

been imprisoned beyond the constitutionally permitted term. See

<u>In re Rodriquez</u>, (1975) 122 Cal.Rptr. 552, 560.

97. The parole board must fix terms within the statutory range that are not disproportionate to the culpability of the individual offender. In re Rodriquez, (1975) 122 Cal.Rptr. 552, 561.

98. A prisoner committed under a statute having a maximum term which may be disproportionate to his individual culpability has a right to have his term fixed at a number of years that is proportionate to his offense. People v. Wingo, supra, ante p. 169 . See also In re Rodriquez, (1975) 122 Cal.Rptr. 552, 561.

99. The basic term-fixing responsibility of the parole board is independent of the parole board's power to grant parole and of its discretionary power to alter reduce the term thus fixed, which fixed, constitutionally proportionate term we shall hereafter refer to as the primary term. In re Rodriquez, (1975) Id. at 561.

100. The parole board has not distinguished its responsibility to fix the primary term of the prisoners subject to the (ISL) from its parole-granting function, and because it has determined that petitioner is not ready for parole, it has either failed to fulfill its obligation to fix petitioner's term at a number of years proportionate to his offense, or, having impliedly fixed it at life (People v. Wingo, supra, ante, pp. 169, 183, 121 Cal.Rptr. 97, 534 P.2d 1001). See also In re Rodriquez, supra, at 562.

101. The primary term must reflect the circumstances existing at the time of the offense ... the rule that the measure of the constitutionality of punishment for crime is individual culpability is well established in the law of this state. In re Rodriquez, (1975) 122 Cal.Rptr. 552, 562.

102. The primary term is the maximum period of time which is constitutionally proportionate to the individual's culpability for the crime. Primary terms are not fixed for crimes punished by determinate sentences. See

25.

the former parole board's regulations: Adult Authority and Women's Board of Terms and Parole, Title 15, (Register 76, No. 21-5-22-1978), § 2100.

103. A secondary term is any term fixed by the parole board shorter than the primary term.

104. From the term set the hearing panel will deduct any credits it awards to the prisoner for time served in prison on the life crime. See (15 CCR) §§ 2290, 2410-2411, 2429, and 2439; California Criminal Law Procedure and Practice, (6th ed.) (2002) p. 1696, § 57.19.

105. The parole board matrixes establish three tiers of terms for the various types of offenses, based on how the crime was committed, the injury inflicted and the relationship between the victim and the prisoner ... The regulations also set out particular factors in mitigation (15 CCR) § 2284, and aggravation (15 CCR) § 2283.

106. The parole board regulation provides matrixes for Kidnap for Robbery. Petitioner's offense fits within the matrix     of [10-12-14] years, see (15 CCR) § 2282 (c)-(B)-(II).

107. And the parole board is required to set the primary term at the Mid-Term of (12-years): unless additional facts are found in mitigation or aggravation. See In re Cunningham, 127 S.Ct. 856 (2007).

108. In addition, the parole statutes also mandates proportionate and uniform prison-terms in setting parole release dates; in light of individual culpability for the commitment offense. Penal Code, § 3041, 3041.5. See also the California Criminal Law Procedure and Practice, (6th ed.) (2002) p. 1695, § 57.19.

109. There are many examples of offenses more egregious including 1st degree murder's whom have been given parole release dates or released. For example: in a case a prisoner in 1966, was sentenced to death for two

26.

counts of first degree murder, with several other special circumstances. He came off death row - to life with the possibility of parole. And in 1979, after serving (13-years) he was found to be parole - ready. Board stats., show he served (17-years). **In re Stanworth**, (1982) 33 Cal.3d 176. And in another case, in 1977, a 16-year-old tried as an adult, was convicted of two counts of second degree murder and one count of first degree murder. He was sentenced to three concurrent sentences five years to life for each of the second degree murder convictions, and life for the first degree murder conviction. His minimum eligible parole date (MEPD) was set at August 25, 1983. See **In re Barker**, DAR 2007 DJDAR 7548.

110. Thus, in the instant case, the parole board's failure to set a primary term constitutionally proportionate and uniform to petitioner's individual culpability in the commitment offenses; caused prejudice to petitioner where they worked toward petitioner's actual and substantial disadvantage, infecting his entire hearing with error's of constitutional dimension. See **People v. Modesto**, (1963) 59 Cal.2d 722; **Chapman v. California**, (1967) 386 U.S. 18. Moreover, it is a Fundamental Miscarriage of Justice. See **Harris v. Nelson**, (1969) 394 U.S. 286, 291, 22 L.Ed.2d 281, 286.

111. Again, a remand back to the parole board would be futile; because, petitioner's (26-Actual-years-in-custody) **thus far** is beyond the (12-years) primary term the parole board should have set for his individual culpability in the commitment offenses. See also **People v. Morse**, (1964) 60 Cal.2d 631, 648, 36 Cal.Rptr. 201, 388 P.2d 33; as well, beyond the (14-years) aggravated term within the parole board's matrix (**15 CCR**) § 2282 (c)-(B)-(II), Category [10-12-14] years, and beyond the (5-years) Parole Period after a release, effective at

27.

1     the time of his offense **Penal Code**, former § 3000; (15 CCR) § 2515.

2     There's nothing that the board can do shorter than an immediate and

3     unconditional release to the community.

4 112. Therefore, this court must order petitioner's immediate and unconditional

5     release from custody to the community. See **McQuillion v. Duncan**, 342

6     F.3d 1012, 1015 (9th Cir. 2003).

7                            c.

8         The parole board's set-off (intervals) between parole
         consideration hearings at two years is an application

9         of parole statutes, regulations more onerous than
         those in place at the time of petitioner's commitment

10        offense violates his due process rights.

11 113. The (2006) parole board panel reasosn for determining that petitioner

12     would not be suitable for parole release within the next two years was

13     based on two of the same factor's as their reasoning for finding

14     petitioner unsuitable. The commitment offense, see **Exhibit "A"**, p. 74:

15     lines 19-26, p. 75: lines 1-19: institutional behavior, see **Exhibit "A"**,

16     p. 75: lines 21-23, p. 76: lines 1-6.

17 114. In (1981) however, the California Legislature had authorized the parole

18     board to defer subsequent suitability hearings for up to three years

19     if the prisoner had been convicted of "more than one offense which

20     involves the taking of a life" and if the Board "finds that it is not

21     reasoanble to expect that parole would be granted at a hearing during

22     the following years and states the basis for the findings." **Penal Code**,

23     § 3041(b)-(2).

24 115. And in (1982), the Legislature amended section 3041.5, to provide an

25     exception to the annual parole suitability hearing requirement. The

26     amendment permits the Board of Prison Terms (Board) to "schedule the

27     next hearing no later than ... two years after any hearing at which

28     parole is denied if the board finds that it is not reasonable to

1    expect that parole would be granted at a hearing during the following

2    year and states the basis for the finding ...." (Penal Code, § 3041.5,

3    subd. (b)-(2)-(A), as amended by Stats..(1982), Ch. 1435, § 1, p. 5474.)

4    See also In re Jackson, 216 Cal.Rptr. 760, at 761.

5  116.  First, the amendment applies only to a class of prisoner's for whom the

6    likelihood of release on parole is quite remote. The amendment enable

7    the parole board to extend the time between suitability hearings only

8    for those prisoner's who have been convicted of "more than one offense

9    which involves the taking of a life." Penal Code, § 3041.5.(b)-(2);

10   California Department of Corections v. Morales, (1995) 115 S. Ct. 1597,

11   1603.

12  117.  In the instant case, at the time of petitioner's offenses, the

13    statutory law required Annual parole consideration hearings after a

14    prisoner is denied parole release. See Penal Code former §§ 3041, 3041.5,

15   etc.

16  118.  Thereafter, the series of amendments to § 3041.5: increasing the

17    set-off (intervals) from (1-year) to (5-years) between a prisoner's

18    parole consideration hearings is intended for a certain category of

19    prisoner's whom offenses are more egregious, more than one offense

20    involving the taking of a life, and more than one murder.

21  119.  The parole board's application of the amended statute to petitioner

22    setting-off (intervals) between parole consideration hearings on three

23    separate occations is an Ex Post Facto application of the law to

24    petitioner's commitment offenses.

25  120.  Moreover, the parole board violated the rules of evidence (to supply

26    a difficiency of legal proof) by using the same reasoning that denied

27    parole suitability to also set-off increase the intervals between

28    hearings, when the existing law requires a separate decision and

reasoning. See also <u>In re Jackson</u>, (1985) 39 Cal.3d 464, at 474.

121. Furthermore, the parole board's (2-year) denial was not supported by the record. A multi-year denial is based upon a finding that it is not reasonable to expect that a sutability finding will be possible during the interval period. The panel did not make this requisite finding based on any evidence. <u>In re Jackson</u>, (1985) 39 Cal.3d 464, at 474.

122. The parole board's actions in setting-off petitioner's next parole consideration hearing is prejudicial affecting petitioner adversely, and is a fundamental miscarriage of justice. Absent the error's and prejudice; petitioner would have been release many years ago.

123. This court must grant the Petition for a Writ of Habeas Corpus, and reverse the parole board's decsion in setting-off petitioner's next parole consideration hearing for (2-years), and order petitioner's immediate and unconditional release from custody to the community.

### Ground

### 2.

THE BOARD OF PAROLE HEARINGS (BPH) IMPOSED A CRUEL AND UNUSUAL PUNISHMENT WHEN THE BOARD PANEL FAILED TO SET PETITIONER'S PRIMARY TERM CONSTITUTIONALLY PROPORTIONATE AND UNIFORM TO HIS INDIVIDUAL CULPABILITY IN THE COMMITMENT OFFENSES.

124. The <u>California Constitution</u>, Article I, § 1 sets forth:

> "Cruel or unusual punishment may not be inflicted or excessive fines imposed."

And the <u>8TH</u> Amendment to the <u>United States Constitution</u>, sets forth:

> "Excessive bail shall not be required, nor excessive fines imposed, Nor cruel and unusual punishments inflicted."

125. A prisoner committed under a statute having a maximum term which may be disproportionate to his <u>individual culpability</u> has a right to have his term fixed at a number of years that is proportionate to his offense. <u>People v. Wingo</u>, (1975) 14 Cal.3d 169, 121 Cal.Rptr. 97, 534 P.2d 1001;

30.

In re Rodriguez, (1975) 122 Cal.Rptr. 552, at 561, 14 Cal.3d at 652.
The language of the Indeterminate Sentence Law does not require a
contrary conclusion. The oft-stated rule that a prisoner has no right
to a term fixed at less than maximum (In re Schoengarth, supra, 66
Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200; In re Cowen, (1946) 27
Cal.2d 637, 641, 166 P.2d 279) is therefore subject to the overriding
constitutionally compelled qualification that the maximum may not be
disproportionate to the individual prisoner's offense. (People v. Wingo,
supra, ante, pp. 169, 182, 121 Cal.Rptr. 97, 534 P.2d 1001.)

126. This basic term-fixing responsibility of the parole board is independent
of the Board's power to grant parole and of its discretionary power to
later reduce the term thus fixed, which fixed, constitutionally
proportionate, term we shall here-after refer to as the "Primary Term."
The parole board's discretionary power also permits the Board to retain
a prisoner for the full primary term if his release might pose a danger
to society (People v. Morse, (1964) 60 Cal.2d 631, 648, 36 Cal.Rptr. 201,
388 P.2d 33) and to revoke parole, rescind an unexecuted grant of parole
and refix a reduced term at a greater number of years up to the
primary term if the prisoner or parolee engages in counduct which
affords cause to believe he cannot or will not conform to the conditions
of parole, or would pose a danger to society if free. Penal Code, former
(§§ 3020, 3060; In re McLain, (1960) 55 Cal.2d 78, 9 Cal.Rptr. 824,
357 P.2d 1080. See also In re Prewit, supra, 8 Cal.3d 470, 105 Cal.Rptr.
318, 503 P.2d 1326.) These considerations, however, are based in large
measure on occurrences subsequent to the commission of the offense.
In re Rodriguez, (1975) 122 Cal.Rpt.r 552, at 562.

127. Conversely, the primary term must reflect the circumstances existing at
the time of the offense. Both the 8TH Amendment and Article I, Section

31.

17, proscribe punishment which is disproportionate to the particular

offense. A penalty violates the cruel or unusual punishment clause if

it is "an extraordinary penalty for a crime of ordinary gravity,

committed under ordinary circumstances." See In re Finley, (1905)

1 Cal.App. 198, 201, 81 P. 1041. Thus the rule that the measure of the

constitutionality of punishment for crime is individual culpability

is well established in the law of this state.

128. In the instant case, the parole board appears not to have recognized

this distinction. Because it has not distinguished its responsibility

to fix the primary term of prisoners subject to the indeterminate

sentence law from its parole-granting function, and because it has

determined that petitioner is not ready for parole, it has either

failed to fulfill its obligation to fix petitioner's term at a number

of years porportionate to his offense, or, having impliedly fixed it at

life (People v. Wingo, supra, ante, pp. 169, 183, 121 Cal.Rptr. 97,

534 P.2d 1001), has imposed excessive punishment on him.

129. The (26-Years) of imprisonment served by petitioner are excessive and

disproportionate punishment by application of the In re Lynch, (1972)

8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 912; In re Foss, (1974) 10 Cal.3d 910,

112 Cal.Rptr. 649, 519 P.2d 1073; and In re Rodriguez, (1975) 14 Cal.3d

639, 122 Cal.Rptr. 552, analysis briefly refered to above. Since the

question posed involves "proportionality" as measured by constitutional

standards of cruel or unusual punishment under Article I, Section 17,

of the California Constitution, these techniques are appropriate not

only to the examination of statutes challenged on their face, but also

to terms as fixed by the parole board in individual cases.

130. Further, the particular characteristics of this offender at the time of

the offense does not justify (26-Years) thus far of imprisonment. When

32.

1    he go before the parole board in (2009) it will be (28-years) he

2    served, without considering  the fact that he is entitled to a reduction

3    of sentence work time / good time credits. As mentioned above he was

4    only (17-years-old) at the time of the offense. His conduct was

5    explained in part by his limited intelligence. Thus, it appears that

6    neither the circumstances of his offense nor his personal characteristics

7    establish a danger to society sufficient to justify such a prolonged

8    period of imprisonment. See <u>In re Rodriguez</u>, 122 Cal.Rptr. 552, at 564.

9    131. In the instant case, petitioner was sentenced to two (<u>7-years-to-life</u>

10   <u>"with"-the-possibility-of-parole</u>); other life prisoner's sentenced to

11   greater terms: (15-years-to-life), (25-years-to-life), and more

12   egregious offenses have been granted parole release, released, and

13   some released from the courts, this is sufficient to establish that

14   measured by this <u>Lynch</u>, technique, the term already served by petitioner

15   is disproportionate to his offense, since he would have already served

16   the maximum (12-years) primary-term. Petitioner was sentenced to

17   (7-years-to-Life-"with"-the-possibility-of-parole); the legislature's

18   intent for a real possibility, not an empty promise, nor Life-<u>without-</u>

19   <u>the-possibility-of-parole</u>, nor the <u>death penalty</u>. Considering

20   substantial amount of life prisoner's has gotten older, and their health

21   has deteriorated, and are dying here in prison in an alaming rate without

22   being given a real possibility at parole release; converting there

23   sentence to life without or the death penalty.

24   132. Petitioner has already served a term which by any of the <u>Lynch</u>

25   criteria is disproportionate to his offense. His continued imprisonment

26   thus constitutes both cruel and unusual punishment within the meaning

27   of Article I, Section 17, of the <u>California Constitution</u>. He is

28   therefore entitled to be discharged from the term under which he is

33.

1    imprisoned.

2    133. These error's made by the parole board in their failure to consider

3    substantial evidence that petitioner is suitable for parole release,

4    failing to set a parole release date constitutionally proportionate to

5    his individual culpability in the commitment offense, failure to release

6    petitioner at his primary-term of (12-years), failure to set-off his

7    next parole consideration hearing for only (1-year); resulted in

8    prejudice to petitioner the error's worked toward petitioner's actual

9    and sustantial disadvantage, infecting his entire hearing with error's

10   of constitutional demention; denying petitioner of a fair parole

11   consideration hearing. Absent these error's the result of the hearing

12   would have been substantially different from that which was actually

13   reached by the parole baord; because, petitioner would have been

14   immediately and unconditionally released from custody to the community.

15   The error's and prejudice by the parole board also constitutes  a

16   Fundamental Miscarriage of Justice.

17   134. This court must grant the Petition for writ of Habeas Corpus, reverse

18   the decisions made by the parole board, and the court should order

19   petitioner's immediate and unconditional release of petitioner from

20   custody to the community.

21                              Ground

22                                3

23           THE BOARD OF PAROLE HEARINGS (BPH) DENIED PETITIONER
             OF THE EQUAL PROTECTIONS OF THE LAWS WHEN THE BOARD
24           PANEL TREATED PETITIONER DIFFERENTLY FROM SIMILARLY
             SITUATED PRISONER'S WITH THE SAME OFFENSES.
25

26   135. Petitioner is entitled to the right to the Equal Protection of the law.

27   Similar situated prisoners' must receive similar treatment under the

28   law. A denial of equal protection is prohibited under the California

                                  34.

1 **Constitution**, Article I, § 7(a), **1ST** and **14TH** Amendments of the **United**

2 **States Constitution**.

3 136. And, the **United States Constitution**, **14TH**, Amendment sets forth:

4     "No state shall ... deny to any person within
    its jurisdiction to equal protection of the

5     laws."

6 137. The principle of equal protection forbids discrimination or

7 classification that is unjustified or "invidious." **Ferguson v. Skraipa**,

8 372 U.S. 726, 732, 83 S.Ct. 1028 (1963).

9 138. Thus, equal protection of the laws means that no person or class of

10 persons shall be denied the same protection of the laws which is

11 enjoyed by other persons or other classes in like circumstances in their

12 lives, liberty, property, and in their pursuit of happiness.

13 **People v. Superior Court (Perez)** (1999) 75 CAl.App.4th 394, 89 Cal.Rptr.

14 2d 326.

15 139. Therefore, the **14TH** Amendment of the **United States Constitution**

16 doctrine simply means that similarly situated person must receive

17 similar treatment under the law. **Dorsey v. Sulomon**, 435 F.Supp. 725,

18 (D. C. Md.).

19 140. Prisoner's have a right to equal protection of the law. **Stewart v.**

20 **Rhodes**, 473 F.Supp. 1185, (1979).

21 141. And do not forfeit all equal protection rights upon incarceration

22 **Lee v. Washington**, 390 U.S. 333-334 (1968).

23 142. If a prisoner is singled out for disparate treatment and if the

24 disparity is sufficiently severe, his liberty is at stake. **Hewitt v.**

25 **Helms**, 74 L.Ed.2d 675, at 698, (1983).

26 143. When the state singles out one person for adverse treatment

27 significantly different from that imposed on the community at large.

28 For an essential attribute of the liberty protected by the constitution

35.

1   is the right to the same kind of treatment as the state provides to

2   other similarly situated persons. **Hewitt v. Helms**, 74 L.Ed.2d 675, 697,

3   (1983).

4  144. Thus, privileges granted to some inmates may not be arbitrarily denied

5   to other similarly situated inmates. **Baumann v. Arizona Dep't. of**

6   **Corrections**, 754 F.2d 841, (1985); **Brown v. State**, 117 Ariz. 476, 573

7   P.2d 876.

8  145. There are no rational basis for the dissimilar treatment. **Hosna v.**

9   **Groose**, 80 F.3d 298, 304, (8th Cir.)

10  146. And are thereby entitled to protection from uneven or discriminatory

11   treatment. **Hill v. Hutto**, 537 F.Supp. 1185, (1982).

12  147. In the instant case, the parole board treated petitioner differently

13   from similarly situated prisoner's when it failed to consider

14   substantial evidence supporting petitioner's suitability for parole

15   release, failed to set a parole release date constitutionally

16   proportionate to his individual culpability in the commitment offense,

17   failed to release petitioner on his primary-term of (12-years), and on

18   three separate occations failed to set-off petitioner's next parole

19   consideration hearing for only (1-year); treated petitioner differently

20   from other similarly situated prisoner's; denied petitioner of the

21   Equal Protections of the laws.

22  148. These error's made by the parole board resulted in prejudices to

23   petitioner. They worked toward actual and substantial disadvantage,

24   infecting his entire hearing with error's of constitutional demention;

25   deny petitioner of a fair parole consideration hearing. Absent these

26   error's the result of the hearing would have been substantially

27   different from that which was actually reached by the parole board;

28   because, petitioner would have been released unconditionally from

1    custody to the community. These error's and prejudices also constitute

2    a Fundamental Miscarrage of Justice.

3    149. This court must grant the Petition for Writ of Habeas Corpus, reverse

4    the decisions of the parole board, and order the immediate and

5    unconditional release of petitioner from custody to the community.

6                                    Ground

7                                       4

8    THE BOARD OF PAROLE HEARINGS (BPH) ABUSED ITS DISCRETION
     WHEN THE BOARD PANEL FAILED TO ACT WITHIN ITS DISCRETION
9    TO CONSIDER SUBSTANTIAL EVIDENCE SUPPORTING PETITIONER'S
     SUITABILITY FOR PAROLE RELEASE AND EXCEEDED ITS
10   DISCRETION IN ACTING BEYOND ITS AUTHORITY.

11   150. The parole board has the legal discretion to determine and redetermine

12   prison-terms in setting parole release dates.

13   151. Although, that discretion is broad, but it is not absolute. Statutory

14   and parole board's regulations  limits that discretion in providing

15   procedural protections to protect a life prisoner's rights and liberty

16   interest in release. See also In re Minnis, (1972) 7 Cal.3d 639, 645,

17   102 Cal.Rptr. 749, 498 P.2d 997; In re McLain, (1960) 55 Cal.2d 78, 87,

18   9 Cal.Rptr. 824, 357 P.2d 1080; In re Powell, (1986) 232 Cal.Rptr. 553,

19   at 559.

20   152. In the instant case, the parole board has violated those limits of it s

21   legal discretion, failing to find petitioner suitable for parole

22   release, failing to set a parole release date constitutionally

23   proportionate and uniform to his individual culpability in the

24   commitment offense, and in setting-off petitioner's next parole

25   consideration hearing for (2-years) on three different occations.

26   153. Next, the parole board has the discretion to set-off petitioner's next

27   parole consideration hearings only for (1-year), in light of the time

28   of petitioner's commitment offense (1981). Penal Code, former §§ 3041,

                                      37.

3041.5; <u>California Department of Corections v. Morales</u>, (1995) 514 U.S.

499, fn. 1, 131 L.Ed.2d 588, 115 S.Ct. 1597; <u>In re Jackson</u>, 216 Cal.Rptr.

760. See also <u>California Welfare Rights Organization v. Brian</u>, (1974)

11 Cal.3d 237, 242, 113 Cal.Rptr. 154, 520 P.2d 970; <u>Morris v. Williams</u>,

(1976) 67 Cal.2d 733, 738, 63 Cal.Rptr. 689, 433 P.2d 697; <u>In re</u>

<u>Stanley</u>, (1976) 54 Cal.App.3d 1030, at 1036.

154. In the instant case, the parole board has abused it's legal discretion

in failing to find petitioner suitable for parole release, failing to

set a primary term for petitioner, and in setting-off petitioner's

next parole consideration hearing for more than (1-year).

155. Those are prejudicial error's, and a Fundamental Miscarriage of Justice.

Absent the excessive and illegal intervals between parole consideration

hearings petitioner would have been released several years ago.

156. This court must grant the Petition for Writ of Habeas Corpus, reverse

the actions of the parole board, and order the immediate and

unconditional release of petitioner from custody to the community.

Ground

5

THE BOARD OF PAROLE HEARINGS (BPH) RENDERED
ARBITRARY AND CAPRICIOUS FINDINGS AND
DECISIONS AT PETITIONER'S PAROLE CONSIDERATION
HEARING.

157. The parole board unreasonably and without evidence found petitioner

unsuitable for parole release, decided not to set his primary term

for his individual culpability in the commitment offenses, and further

decided to set-off his next parole consideration hearing for two years

instead of one year is arbitrary and capricious.

158. An unreasonable decision without cause based upon the principles of law

for parole consideration hearings lacks any support in evidence, when

38.

the facts do not reasonably justify the conclusion. Without an adequate

determination of the principles of law; resulting in parole denial,

failing to fix a primary term, setting-off his next hearing for two

years, and continuously retaining petitioner in custody excessively are

arbitrary and capricious decisions and actions.

159. The term 'arbitray and capricious' has been defined to mean an act done

without adequate determining principle; not found in the nature of

things; not done or acting according to reason or judgment; an

unnecessary act. U. S. v. Carmack, (1946) 67 S.Ct. 252, 329 U.S. 230.

See also O'Boyle v. Coe, D.C., 155 F.Supp. 581, 584 (1957).

160. The terms 'arbitrary' and 'capricious' embraces a concept which emerges

from the Due Process Clause of the 5TH and 14TH Amendments of the

United States Constitution and operates to guarantee that the acts of

government will be guaranteed on established legal principles and have

a rational factual basis. A decision is arbitray and capricious when

it is not supported by evidence or when there is no reasonable

jurisdiction for the decision. Canty v. Board of Ed. City of New York,

(1970) 312 F.Supp. 254.

161. Arbitrary and capricious within section of Administrative Procedure Act

effect that order of commission may be invalidated if it is arbitrary

and capricious mean without reasonable basis. Administrative Procedure

Act, § 10, 5 U.S.A. § 1009. Eastern Central Motor Carries Ass'n. v.

U.S., (1965) 239 F.Supp. 591.

162. Where discretion is conferred on an administrative officer it must be

honestly exercised and if the administrative decision is arbitrary or

capricious or in bad faith the courts have power to review it and set

it aside. Gadsden v. U.S., (1948) 78 F.Supp. 126. And is also subject

to review when it is arbitrary or capricious or where it (the

39.

1   commission) has acted without authority of law or has committed an

2   error of law. <u>Navajo Frieght Lines, Inc. v. U.S.</u>, (1970) 320 F.Supp.

3   318.

4   163. Moreover, an arbitrary act would be one performed without adequate

5   determination of principle an one not founded in the nature of things.

6   <u>Huey v. Davis</u>, 556 S.W.2d 860, 865 (Tex. Civ. App.)

7   164. And without fair, solid, and substantial cause; that is, without

8   cause based upon the law is arbitrary. <u>United States v. Lotempio</u>,

9   58 F.2d 358, 359. (D.C.N.Y.)

10  165. Furthermore, an action is arbitrary not only when it is capricious,

11  but when it lacks substantial support in evidence, when facts do not

12  reasonably justify conclusion. <u>Hollon v. Pierce</u>, (1967) 257 Cal.App.2d

13  468, 64 Cal.Rptr. 808. A decision made without any supporting evidence

14  would be arbitrary and capricious. See <u>People v. Cluff</u>, (2001) 87

15  Cal.App.4th 991, 998.

16  166. Therefore, the final responsibility for interpreting the law rest with

17  the courts. <u>Terhune v. Superior Court</u>, (1998) Cal.App.4th at p. 873.

18  167. In addition, the court's may properly determine whether the parole

19  board's handling of parole application is consistent with the parole

20  policies established by the legislature. <u>In re Minnis</u>, (1972) 7 Cal.3d

21  at pp. 646-647.

22  168. The judicial oversight must be extensive enough to protect the limited

23  right of parole applicant's to be free from an arbitrary parole

24  decision ... and to something more than mere pro forma consideration.

25  <u>In re Sturm</u>, (1974) 11 Cal.3d at p. 268.

26  169. In the instant case, the parole board panel decisions and actions are

27  arbitrary and capricious. Whereby the board panel finding of petitioner

28

40.

unsuitable for parole release is not supported by evidence and the facts do not support the conclusion. Moreover, the panels failure to set petitioner's primary term is without adequate determination of the principles of law. Furthermore, the parole board's panel action in setting petitioner's next parole consideration hearing for two years instead of one year and continuously retaining petitioner in custody excessively is unreasonable and violating petitioner's due process rights under the 5TH and 14TH Amendments of the United States Constitution.

170. The parole board panel errored in not considering substantial evidence showing petitioner is suitable for parole release, and setting of a primary term. As well, if a denial they errored in denying him (2-years) instead of (1-year). These error's has caused petitioner to suffer a significant hardship. He had already suffered overdue for release in addition to continuously doing excessive imprisonment is prejudicial. Had not the error's of the parole board panel occurred petitioner would have been found suitable for parole release, a setting of his primary term in accord with the constitutional proportionate and uniform to his individual culpability in the commitment offenees.

171. Substantial prejudice is a handicap suffered by the parolee and caused by a delay which could reasonably influence the outcome of the hearing. (15 CCR) § 4978.

172. And the test for whether error was prejudicial is whether it is reasonably probable that, in the absence of the error, result would have been more favorable to the defendant. People v. Crone, (1997) 62 Cal.Rptr. 2d 607, 54 Cal.App.4th 71.

173. A judgment may be reversed because of error only when it appears from record that error was prejudicial, caused substantial injury, and

41.

1    that a different result would have been probable if error had not

2    occurred. People v. Walker, (1948) 198 P.2d 534, 88 Cal.App.2d 265.

3  174.  Petitioner has also suffered a Fundamental Miscarriage of Justice.

4  175.  This Honorable Court must grant the relief sought. The court should

5    grant the Petition for Writ of Habeas Corpus, and reverse and set

6    aside the parole board decisions and actions, and the court should

7    order the immediate and unconditional release of petitioner from

8    custody to the community; wherefore, petitioner is well overdue

9    for release; beyond the (12-Years) Primary Term, and beyond the

10    (5-Years) Parole Period after release.

11                          Ground

12                           6

13        APPOINTED COUNSEL DENIED PETITIONER OF THE EFFECTIVE
           ASSISTANCE OF COUNSEL AT THE PAROLE CONSIDERATION

14        HEARING.

15  176.  The parole board appointed counsel to represent petitioner at his

16    (2006) Parole Consideration Hearing.

17  177.  The 6TH Amendment of the United States Constitution guarantees the

18    right to the effective assistance of counsel in criminal prosecutions.

19    McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). See also the

20    California Constitution , Article I, § 15.

21  178.  The right to effective assistance applies to the appointed counsel.

22    Cuyler v. Sullivan, 446 U.S. 335, 344-45, (1980).

23  179.  And the proper standard for attorney performance is that of reasonably

24    effective assistance. See Trapnell v. United States, 725 F.2d at 151-

25    152.

26  180.  In deciding whether a counsel's performance was ineffective, a court

27    must consider the totality of the circumstances. Strickland v.

28    Washington, 466 U.S. at 690, (1984).

181.  A two-prong test was established by the court to evaluate ineffective
      assistance claims: (1) that counsel's performance fell below an
      objective standard of reasonableness Stricklan, Id. at 697-88; and
      (2) that counsel's deficient performance prejudiced the defendant
      resulting in an unreliable or fundamentally unfair outcome of the
      proceeding, Id. at 687.

182.  In the instant case, Appointed Counsel failed to provide an adequate,
      reasonable and meaningful legal representation, resulting in prejudice
      to the petitioner in an unreliable and fundamentally unfair outcome
      of the proceeding.

183.  Appointed Counsel failed to conduct any form of an investigation in
      respect to legal research to familiarize herself with the applicable
      parole laws governing life prisoner's Parole Consideration Hearings
      and parole release. Appointed Counsel ineffective when failed to
      engage in reasonable investigation. Hall v. Washington, 106 F.3d
      742, 749 (7th Cir.) See also Eggleston v. U.S., 798 F.2d 374
      (9th Cir. 1986); Burger v. Kemp, 483 U.S. 776, 987 L.Ed.2d 638,
      107 S.Ct. 3114 (1987). When Appointed Counsel failed to conduct any
      legal research. Groseclose v. Bell, 130 F.3d 1161, 1170 (6th Cir.
      1997). In addition, Appointed Counsel ineffective when  failed to
      investigate and present any mitigating evidence during the sentencing
      phase ... conduct not reasonable strategic decision but abdication of
      advocacy. Austin v. Bell, 126 F.3d 843, 848-49 (6th Cir. 1997).

      Moreover, when counsel failed to conduct any pre-hearing discovery ...
      because unreasonable and below prevailing professional norms. Kimmelman
      v. Morrison, 477 U.S. 365, 385 (1986).

184.  Appointed Counsel failed to object to the District Attorney's comments.

43.

1    See Exhibit "A", p. 62-65; Weygandt v. Ducharine, 774 F.2d 1491

2    (9th Cir. 1985).

3    185.   Counsel failed to argue any legal principals and precedents at closing.

4    See Exhibit "A", p. 62-65. Compare Harris v. Wood, 64 F.3d 1432, 1438

5    (9th Cir. 1995).

6    186.   Appointed Counsel is required to advise an indigent petitioner on

7    whether arguably meritorious grounds exist for reversal, or

8    modification of the judgement on appeal. California Penal Code,

9    § 1240.1.(a).

10   187.   And ineffective assistance when counsel failed to file a direct appeal

11   notwithstanding likelihood of success on appeal. U. S. v. Peak, 992

12   F.2d 39, 41 (4th Cir. 1993).

13   188.   Appointed Counsel failed to raise any crucial assignments of error

14   that arguably might have resulted in reversal. In re Smith, (1970)

15   3 Cal.3d 192, 203, 90 Cal.Rptr. 1, 474 P.2d 969.

16   189.   Furthermore, the cumulative error's included counsel's failure to

17   present mitigating evidence in the penalty phase. Mak v. Blodgott,

18   970 F.2d 614, 622 (9th Cir. 1992).

19   190.   Moreover, a cumulative effect of a single counsel's errors, is an

20   inadequate pre-hearing interview. Harris v. Wood, 64 F.3d 1432, 1438

21   (9th Cir. 1995).

22   191.   In addition, deficiencies found were cumulatively prejudicial. See

23   Harris, 853 F.Supp. at 1274.

24   192.   Appointed Counsel's deficient performance prejudiced petitioner

25   resulting in an unreliable and fundamentally unfair outcome of the

26   proceeding. Strickland v. Washington, 466 U.S. at 687, (1984).

27   193.   Prejudice may result from the cumulative impact of multiple

28   deficiencies. Cooper v. Fitzharis, 586 F.2d 1325, 1333 (9th Cir. 1978):

44.

1    <u>Mak v. Blodgett</u>, 970 F.2d 614, (9th Cir. 1992).

2   194.  Appointed Counsel's performance falls below an objective standard of

3         reasonableness and her deficient performance caused prejudice to

4         petitioner resulting in an unreliable and fundamentally unfair outcome

5         of the parole hearing. As well, being a Fundamentally Miscarriage of

6         Justice.

7   195.  A court may conclude that a single error rendered counsel's assistance

8         ineffective. See <u>Murry v. Carrier</u>, 477 U.S. 478, 496 (1986).

9   196.  Petitioner has the right to the effective assistance of counsel at

10        parole consideration hearings. His appointed counsel failed to provide

11        an adequate and meaningful legal representation, where counsel's

12        performance fell below an objective standard of reasonableness, and

13        counsel's deficient performance prejudiced petitioner resulting in an

14        unreliable and fundamentally unfair outcome of the proceeding.

15        Petitioner has suffered a Fundamental Miscarriage of Justice in the

16        ineffective assistance of counsel violating the <u>6TH</u> Amendment of

17        the <u>United States Constitution</u>. This Honorable Court must grant the

18        relief sought. The Court must grant the Petition for Writ of Habeas

19        Corpus . And it must declare the rights of petitioner. It must order

20        the Board of Parole Hearings to vacate and set aside the (2006)

21        Subsequent Parole Consideration Hearing. Moreover, the court must

22        order the California Department of Corrections and Rehabilitations

23        to immediately  and unconditionally release petitioner from custody.

24

25

26

27

28

Ground

7.

THE SUPERIOR COURT ERRED IN ITS FACTUAL FINDINGS,
ERRED IN ITS APPLICATION OF THE LAWS, ERRED IN
DECIDING ONLY PART OF THE CASE, MISMANAGED THIS
CASE AND ABUSED ITS DISCRETION, ITS DECISION WAS
CONTRARY TO, OR UNREASONABLE APPLICATION OF,
CLEARLY ESTABLISHED FEDERAL LAW.

A.

The Superior Court erred in its factual findings.

197. The Superior Court factual allegations are not correct. The court stated that: "... At an earlier hearing he admitted sodomizing ....", see **Exhibit "B"**, Supeiro Court Minute Order, (8/13/2007) p. 2: lines 9 thru 10. In dispute: the court statement is untrue; because, petitioner did not sodomize the victim and he did not admit that at an earlier hearing. See **Exhibit "C"**, Transcript, partial of the earlier Parole Consideration Hearing in question held on (8/2/2004), p. 15: lines 11 thru 12.

B.

The Superior Court erred in its application of the laws.

198. The Court cited no law to support its decision. It only stated that: "After the courts' review, we determined that there was ample evidence presented to justify such a conclusion. The petitioner presents as an incredibly callous person who has traumatized an innocent woman and now does not believe he should receive the consequences for such a violent and heinous crime. There is no evidence that his attorney was ineffective. See **Exhibit "B"**, p. 2: lines 27 thru 28, and p. 3: lines 1 thru 2.

199. Therefore, the Superior Court denied the Petition based solely upon its personal opinion and reliaing upon the unchanging facts of the

46.

1    commitment offense that occurrred more than (26-years) ago when
2    petitioner was a juvenile.

3   200.  The Superior courts' determination and decision is without support of
4         the legal precedent's and principles of law. The Parole Board and the
5         Superior Court did not sHow some evidence to support their finding of
6         unsuitability nor denying the relief in the Petition.

7   201.  The Superior Court further erred in concluding that the parole board
8         had some evidence under the law to support its decision that petitioner
9         is unsuitable for parole release.

10  202.  That evidence must have some indicia of reliability . In re Scott, 119
11        Cal.App.4th at P. 899, and suitability determinations must have some
12        rational basis in fact. (In re Elkins, 144 Cal.App.4th at p. 489. See
13        also In re Barker, (2007 DJDAR 7548 at 7555.

14  203.  A life term offense or any other offenses underllying an indeterminate
15        sentence Must be particularly egregious to justify the denial of a
16        parole date. Rosenkrantz, 29 CAl.4th at p. 683: IN re Barker, (2007
17        DJDAR at 7558.

18  204.  Violence of viciousness ... must be more than minimually necessary to
19        convict .... In re Dannenberg, 34 Cal.4th at p. 10é5.

20  205.  Because it violates Due Process to deny parole where no circumstances
21        of the offense reasonably could be considered more aggravated or
22        violent than the minimum necessary to sustain a cOnviction for that
23        offense. In re Elkins, 144 Cal.App.4th at p. 497; see aLso In re Barker,
24        (2007 DJDAR 7558.

25  206.  The predictive value of the cOmmitment offense may be very questionalbe
26        after a long period of time. [Citation] See In re Barker, (2007 DJDAR
27        at p. 7558.

28  207.  The Parole Board Regulations, the California Code of Regulations, Title

15 (15 CCR) Division 2, shows substantial evidence taht petitioner is in fact suitable for release. The parole board has no evidence to their conclusion of unsuitability. IN re Lawrence, (2007) 59 Cal.Rptr.3d 537, at 558, 569.

208. The overarching factor determining whether parole should be granted or denied is whether the criminal poses an unreasonable risk of danger to society. In re Scott, 133 Cal.App.4th at p. 591; (15 CCR) §          ; In re Lawrence, (2007) 59 Cal.Rptr.3d 537; In re Barker, (2007) 59 Cal. Rptr.3d 746: In re Lee, 143 Cal.App.4th at P. 1400.

209. In cases involving multiple parole suitability hearings over a Long period of time in which there were repeated denials of parole based solely on unchanging factors, courts have concluded that a petitioner was denied due process and was entitled to relief. See, e.g. Rosenkrantz v. Marshall, 444 F.Supp.2d 1063, 1081-1084 (C. D. Cal. 2006) (finding a due process vioaltion in relying on the cOmmitment offense in a seventh parole hearing after petitioner had served nearly twenty years of incarceration. See also Irons v. Carey, 358 F.Supp.2d 936, 947 (D.D. Cal. 2005); Masoner v. State, 2004 WL 1080177, * 1-2 (C.D. Cal. 2004) see also In re Lawrence, (2007) 59 CAl.Rptr.3d 537.

210. And another court ruled that: "... the court concludes that the Board's decision denying Petitioner parole is not supported by 'some evidence'. In re Rosenkrantz, (2006) Superior Court, County of Los Angeles, Case No. (BH003529) p. 1.

211. Moreover, "... continual parole denials have been based mainly On the gravity of the commitment offense, the circumstances of which can never change. Therefore, the Board's continued sole reLiance on the commitment offende will essentially convert petitioner's original sentence of life with the possibility of parole into a sentence of

48.

1  life without the possibility of parole. Petitioner has no chance of

2  obtaining parole unless the Board holds that his crime was not serious

3  enough to warrant a denial of parole. (<u>Irons v. Warden</u>, (E.D. Cal. 2005)

4  358 F.Supp.2d 936, (47.) "See <u>In re Rosenkrantz</u>, (2006) Superior Corut,

5  County of Los Angeles, Case No. (BH003529) P. 3. The <u>Rosenkrantz</u>, court

6  had also stated that he "... has now served in excess of the maximum

7  term for both second degree and first degree murder. Therefore, the

8  commitment offense should no Longer function as a factor for

9  unsuitability and in that case, it should no Longer operate as some

10  evidence to support the Board's parole denial. Petitioner has reached

11  the point in which the denial of parole can no Longer be justified by

12  reliance on his commitment Offense. The Board's continaual reLiance on

13  the circumstances of the offesne runs contarry to the rehabilitative

14  goals exposed by the prison system and has violated petitioner's due

15  process .

16  Therefore, this court orders that the Petition for Writ of Habeas

17  Corpus be, and hereby is granted. "<u>In re Rosenkrantz</u>, supra at p. 3-4.

18  212.  In addition, a Fedral Court had ruled that the parole board's continued

19  relieance upon the nature of an inmate's crime of second degree murder

20  to deny the inmate parole violated due process. <u>Rosenkrantz v. Marshall</u>,

21  444 F.Supp.2d 1063 (2006).

22  213.  Furthermore, the commitment offense is also among the immunitable facts

23  of the crimes which given the lapse of 26 years and the exemplary

24  rehabilitative goas made by petitioenr over that time, continued

25  reliance on the aggravating facts of the crime no longer amounts to some

26  evidence supporting denial of parole. <u>In re Elkins</u>, (2006) 144 Cal.App.

27  4th at p. 498. See also <u>In re Barker</u>, (2007) 59 CAl.Rptr.3d 746;

28  <u>IN re Lawrence</u>, (2007) 59 Cal.Rptr.3d 537.

49.

214. And the parole board and Superior Court failed to consider petitoner's age at the time he committed the crime. In re Elkins, (2006) 144 Cal.App.4th 475; Rosekrantz v. Marshall, (2006) 444 F.Supp.2d 1063. The general unreliability of predicting violence is exacerbated in a case by ... petitioner's young age at the time of the offense and the passage in that case of nearly twenty years since that offense was committed .... In re Elkins, (2006) 144 Cal.App.4th at P. 500; In re Barker, (2007) 59 Cal.Rptr. 3d 746, 768.

215. Although, the Rosenkrantz, commitment offense is more flagrant than the commitment offense in the instant case. The state and federal court's had ruled in Rosenkrantz, the parole board's decision denying Rosenkrantz, parole is not supported by some evidence. Those court

    ordered Rosenkrantz, released and he was so released to the community. See also Petition herein Memorandum of Points and Authorities P. 13 -22.

216. Likewise, the parole board, had and continues to find suitable and granted parole release dates to countless prisoner's whose commitment offenses are much more flagrant than that in the instant case. See In re Rosenkrantz, (2006) Superior Court, County of Los Angeles, Case No. (BH003529) P. 3: line 12, 15, 16; In re Lawrence, (2007) 59 Cal.Rptr 3d 537; In re Gray, (2007) 59 Cal.Rptr.3d 724; In re Elkins, (2006) 144 Cal.4th 475: Rosenkrantz v. Marshall, 444 F.Supp.2d 1063 (2006); In re Lee, (2006) 49 Cal.Rptr.3d 931, 148 Cal.App.4th 1400: Martin v. Marshall, 431 F.Supp.2d 1038 (2006).

217. Under any interpretation of Penal Code, § 3041, a prisoenr is free to argue that he or she should be granted parole based on parole granted in comparable cases. In re Dannenberg, (2005) 23 Cal.Rptr.3d 417 at p. 450. And the State and Federal Court's has continued to conclude (in

50

1  cases whom commitment offenses are more flagrant than that in the

2  instant case), that the parole board's decisions denying parole is not

3  supported by "some evidence". See In re Rosenkrantz, (2006) Superior

4  Court, County of Los Angeles, Case No. (BH003529); In re Elkins, (2006)

5  144 Cal.4th 475: In re Scott, (2004) 119 Cal.App.4th 871; In re Scott,

6  133 Cal.App.4th 573: In re Smith, (2003) 114 Cal.App.4th 348: In re Lee,

7  (2006) 143 Cal.App.4th 1400: In re Dannenberg, (2005) 34 Cal.4th 1061;

8  In re Ramirez, (2001) 94 Cal.App. 4th 549: In re Weider, (2006) 52 Cal.

9  Rptr.3d 147: In re Willis, (2007) 485 F.Supp.2d 1126; Biggs v. Terhune,

10  334 F.3d 910 (9th Cir. 2003); irons v. Carey, 479 F.3d 658 (9th Cir.

11  2007); In re Barker (2007) 59 Cal.Rptr.3d 746; McQuillion v. Duncan, (

12  (9th Cir. 2002) 306 F.3d 895; In re Lawrence, (2007) 59 Cal.Rptr.3d 537.

13  218. Therefore, in this case, the factor of the commitment offense is not

14  some evidence to support the parole board's decision of unsuitability

15  and the Superior Court's wrong application of the laws to that factor.

16  IN re Lawrence, (2007) 59 Cal.Rptr.3d 537. Please take Judicial Notice

17  of In re Jameison, (2007) Superior Court, County of Santa Clara, Case

18  No. (71194).

19                                    C.

20        The Superior Court erred in deciding only part of the case.

21  219. The Superior Court erred in considering only Ground 1(a) and Ground 6

22  of the Petition for Writ of Habeas Corpus. See Exhibit "B".

23  220. Petitioner submitted Grounds 1-(a),(b),(c), 2, 3, 4, 5, and 6 in his

24  Petition to the Superior Court. See Petition herein Memorandum of

25  Points and Authorities, Table of Contents p. ii.

26  221. The Court failed to consider and decide petitioner's multiple legal

27  claims specifically Grounds 1-(b),(c), 2, 3, 4, and 5 of the Petition

28  for Writ of Habeas Corpus.

                                    51

1    222. Petitioner have a right to a full review and decision of all of his

2         legal claims. <u>Rose v. Superior Court</u>, 96 Cal.Rptr.2d 843, 847;

3         <u>California Rule of Court</u>, Rule 4.551 (4)-(B)-(g).

4                                        D.

5              The Superior Court mismanaged this case and
               abused its discretion.

6

7    223. The Superior Court erred in mismanaging this case and abusing its

8         discretion. The court erred in presenting the facts of the case, as

9         well held a misapplication of the pertinent laws for the individualized

10        consideration of the case.

11   224. The California Supreme Court has stated that "where one has a

12        substantial right to protect or enforce, and this maybe accomplished

13        by such a writ, and there is no other plain, speedy and adequate

14        remedy in the ordinary cource o law, he is entitled as a matter of

15        right to the writ, or perhaps more correctly, in other words, it would

16        be an abuse of discretion to deny it." 6 Cal.3d at 491, quoting

17        <u>Potomac Oil Co. v. Dye</u>, (1909) 10 Cal.App. 534, 537, 102 P. 677.

18   225. It further states that the appellate court will independently

19        evalulate the evidence. <u>In re Wright</u>, (1978) 78 cal.App.3d 788, 801,

20        144 Cal.Rptr. 535.

21

22

23

24

25

26

27

28

                                        52.

E.

**The Superior Court decision denying relief was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)-(1).**

226. The Superior Court's adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States.

227. Petitioenr has the right to have aLl of his federal claims adjudicated by the state courts.

228. The application of § 2254(d) in this case is affected by the fact that there is no reasoned explanation by the Superior Court for the rejection of petitioner's habeas petition on the merits. The Los Angeles Superior Court denied petitioner's habeas petition due to In re Rosenkrantz, (2002) 29 Cal.4th 616; which was a misapplicaton of state law and the court did not adjudicate all of petitioner's federal claims.

229. The Superior Court to reach the merits gave no reasoned explanation of the denial of the petition on the remainding state and federal claims in the petition where, the Superior court gives no reasoned explanation of its decision, an "independent review of the record" is the only means of decindign whether the state courts decision was objectively reasonable. Hines v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

230. The Superior Court's adjudication of the claims resulted in a decision that was based on unreasonable determination of the facts in light of the evidence rpesented In the state court proceeding. 28 U.S.C., § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13, 120

53.

1    S.Ct. 1495, 146 L.Ed.2d 389 (2000). Section 2254(d) applies to a

2    habeas petition from a state prisoner challenging the denial of

3    parole. See <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123,

4    1126-27 (9th Cir. 2006); <u>In re Willis</u>, 485 F.Supp.2d at p. 1128 (2007);

5    <u>In re Lawrence</u>, (2007) 59 Cal.Rptr.3d 537 at p. 556.

6  231.  Finally, the Superior Court's judgment is in judicial error. <u>People v.

7    Simmons</u>, (2006) 48 Cal.Rptr.3d 357d, 143 Cal.App.4th 256; <u>In re

8    Candelario</u>, 3 Cal.3d at P. 705; see also <u>People v. Schultz</u>, (1965)

9    23 Cal.App.2d 804, 008.

10 232.  The Superior Court's errors in fact and in law, including its wrongful

11   procedure that affects the rights of petitioner substantially and

12   thus in may result in the reversal of a case is Prejudicial Error.

13   And those errors committed by the judge during proceedings hearing that

14   may result in reversal in convictions against petitioner is a Reversable

15   Error.

16 233.  A reversable error is proper where the reviewing court finds that

17   reasonable minds would concur that the ultimate facts Must be contrary

18   to the findings of the trial court and that a different judgment

19   should be entered. <u>Casper v. City of Los Angeles</u>, (1956) 140 Cal.App.2d

20   433, 295 P.2d 452.

21 234.  The decision bY the Superior Court is inconsistent with the legal rights

22   of petitioner in this case. It is a Fundamental Miscarriage of Justice.

23                          VI.

24                      <u>CONCLUSION</u>

25 235.  THE CALIFORNIA BOARD OF PAROLE HEARINGS VIOLATED SEVERAL OF PETITIONER'S

26   FUNDAMENTAL RIGHTS UNDER THE LAWS OF THE CONSTITUTION AND OF THE STATE

27   OF CALIFORNIA; DURING A SUBSEQUENT PAROLE CONSIDERATION HEARING. IN

28

that, 1.) the parole board panel deprived petitioner of his due process

rights; when it found him unsuitable for parole release without some

evidence to support that decision; 2.) the parole board panel deprived

petitioner of his due process rights; when it failed to set a primary

term constitutionally proportionate and uniform to petitioner's

individual culpability in the commitment offenses: 3.) the parole

board panel deprived petitioner of his due process rights; when it

set-off (intervals) petitioner's next parole consideration hearing

for two years instead of one year: 4.) the parole board panel violated

the cruel and unusual punishment clause; when it failed to set

petitioner's primary term constitutionally proportionate and uniform

to petitioner's individual culpability in the commitment offenses; 5.)

the parole board panel deprived petitioner of his due process rights

and the equal protections of the laws; when it treated petitioner

differently from similarly situated prisoner's with the same offenses;

6.) the parole board panel violated petitioner's due process rights in

abusing its legal discretion; when it failed to act within its

discretion to consider substantial evidence supporting petitioner's

suitability for parole release and exceed its discretion in acting

beyond its authority; 7.) the parole board panel deprived petitioner

of his due process rights; when it arbitrarily and capriciously found

petitioner unsuitable for parole release, failing to fix his primary

term and in setting-off his next parole consideration hearing for two

years.

236. In addition, the parole board's appointed counsel denied petitioner of

the effective assistance of counsel at petitioner's subsequent parole

consideration hearing; in that, Appointed Counsel failed to provide

petitioner with an adequate, reasonable and meaningful legal

1    representation; resulting in prejudice to petitioner in an unreliable

2    and fundamentally unfair outcome of the parole hearing.

3    237. Petitioner has long served the primary term of (12-years) for his

4    commitment offense, and long served the five years statutory parole

5    period after release, not yet counting the work time / good time credits

6    that would be applicable to reduce any prison term set.

7    238. This Honorable court must grant the relief sought in the interest of

8    justice. The court must declare petitioner's rights. It must order the

9    California Board of Parole Hearings to vacate and set aside the (2006)

10   Subsequent Parole Consideration Hearing. It must order the California

11   Department of Corrections and Rehabilitation to immediately release

12   petitioner unconditionally. And it must grant any and all relief deemed

13   proper.

14   239. In addition, the California Superior Court has erred in its judgment.

15   The court had erred in the facts and law in this case as explained

16   herein this Petition Ground 1 See also Exhibit "B". Petitioner

17   should be given a fair opportunity to be heard on the complete merits

18   of his claims; and an appropriate judgment based on the true facts

19   of petitioner's individual culpability in the offense in accord with

20   the applications of legal principles and precedents of the laws.

21   Therefore, this Court of Appeals for the Second Appellate District;

22   must reverse the judgment of the Superior Court, independently review

23   the case, grant the relief in the Petition: grant the Petition for a

24   Writ of Habeas Corpus, Declare the Rights of petitioner, Order the

25   Board of Parole Hearings to vacate and set aside their decision at

26   the Parole Consideration Hearing; Subsequent #: (2) held on August 9,

27   2006, Order the California Department of Corrections and Rehabilitations

28   to release petitioner unconditionally from custody to the community

immediately, and grant any and all relief deemed proper.

Date: October 18, 2007

Respectfully submitted,

Anthony Morrison
(Petitioner)

IN PRO PER

57.

P R A Y E R   F O R   R E L I E F

   Petitioner is without remedy save for Writ of HabeasCorpus. Wherefore, petitioner request that the court:

  (1) Grant Petition for Writ of Habeas Corpus;

  (2) Declare the rights of petitioner;

  (3) Order the California Board of Parole Hearings to vacate and set aside the (2006) Subsequent Parole Consideration Hearing;

  (4) Order the California Department of Corrections and Rehabilitations to immediately release petitioner unconditionally;

  (5) Grant any and all relief deemed proper.

Date: October 18, 2007

Respectfully submitted,

Anthony Morrison
(Petitioner)

IN PRO PER

1

## V E R I F I C A T I O N

2

3      I, Anthony Morrison, State:

4      I am the petitioner in this action. And I have read the foregoing Petition

5  for a Writ of Habeas Corpus, and the facts stated therein are true to my

6  own knowledge, except as to matters taht are therein stated on my own

7  information and belief, and as to those matters I believe them to be true.

8      I declare under penalty of perjury that the foregoing is true and correct

9  and what this declaration was executed on October 18, 2007, at the

10 Correctional Training Facility - Central, Soledad, California.

11

12

13 Date; October 18, 2007                    Respectfully submitted,

14

15                                            Anthony Morrison
                                             (Petitioner)

16                                            IN  PRO  PER

17

18

19

20

21

22

23

24

25

26

27

28

1  Anthony Morrison C-60307
   P. O. Box 689
2  Soledad, California.
   Zip.   93960-0689

3

4  IN  PRO  PER

5

6              SUPREME COURT OF THE STATE OF CALIFORNIA

7

8  In re Anthony Morrison,        )    Case No. _____
         (Petitioner)            )
9                                 )    REQUEST FOR APPOINTMET OF COUNSEL
        vs.                       )    AND DECLARATION OF INDIGENCY.
10                                )
   Ben Curry, (Warden) (A) et.al  )
11       (Respondant)            )
   _____)
12

13     I, Anthony Morrison, declare that I am the petitioner into this action,

14 that I am incarcerated at the Correctional Training Facility - Central, in

15 Soledad, Califorrnia, and that I am indigent and unable to affored counsel.

16 My total assets are: $ 20.00 and my income is $ 20.00 per month.

17    I hereby request that counsel be appointed in this matter so that my

18 interests may be protected by the professional assistance required.

19    I declare under penalty of perjury that the foregoing is true and correct

20 and that this declaration was executed on October 18, 2007, at Soledad,

21 California.

22

23

24 Date: October 18, 2007                    Respectfully submitted,

25                                           _____

26                                           Anthony Morrison
                                             (Petitioner)
27
                                             IN  PRO  PER
28

                              60.

1  Anthoy Morrion C-60307
   P. O. Box 689
2  Soledad, California.
   Zip.   93960-0689
3
   (Petitioner)
4

5              SUPREME COURT OF THE STATE OF CALIFORNIA

6

7  In re Anthony Morrison,          )    Case No. _____
              (Petitio ner)         )
8                                    )    ORDER TO SHOW CAUSE AND NOTICE TO
        vs.                          )    FILE RETURN.
9                                    )
   Ben Curry, (Warden) (A) et.al     )
10             (Respondent)          )
   _____ ).
11

12     From the Petition and the Points and Authorities filed in support o it in the

13  above - captioned proceeding, it appears that there is reasonable cause to believe

14  that petitioner may be entitled to a Writ of habeas Corpus and that he will

15  suffer irreparable harm if this cause is not heard as soon as possibile. Accordingly,

16  lets issue an order to show cause why the relief prayed for should not be granted.

17   The Attorney General is directed to file a return to the order on

18  _____. Hearing on the matter is set for: _____.

19  a Denial and Exception to the return shall be filed on _____,

20  or before the date set for hearing.

21

22

23  Date:

24                                              _____

25                                                   JUDGE

26

27

28
                              61.



# EXHIBIT "A"

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )     CDC Number  C-60307
Hearing of: )
)
ANTHONY MORRISON )
_____)

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

AUGUST 9, 2006

PANEL PRESENT:

Mr. Archie Joe Biggers, Presiding Commissioner
Mr. Rufus Morris, Deputy Commissioner

OTHERS PRESENT:

Mr. Anthony Morrison, Inmate
Ms. Candace Christensen, Attorney for Inmate
Ms. Jennifer Dawson, Deputy District Attorney
Correctional Officer, Unidentified

INMATE
COPY

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____ No        See Review of Hearing
_____ Yes       Transcript Memorandum

Stacy Wegner, Vine, McKinnon & Hall

ii

## INDEX

| | Page |
|---|---|
| Proceedings | 1 |
| Case Factors | 10 |
| Pre-Commitment Factors | 22 |
| Post-Commitment Factors | 31 |
| Parole Plans | 52 |
| Closing Statements | 61 |
| Recess | 69 |
| Decision | 69 |
| Adjournment | 77 |
| Transcriber Certification | 78 |

--oOo--

1

# P R O C E E D I N G S

1

2       **DEPUTY COMMISSIONER MORRIS:**  We're on record.

3       **PRESIDING COMMISSIONER BIGGERS:**  This is a

4   subsequent parole consideration hearing for an Anthony

5   Morrison, M-O-R-R-I-S-O-N, CDC number C-60307.  Today's

6   date is August the 9th, 2006, and we're located at the

7   Correctional Training Facility at Soledad.  The life term

8   -- the inmate was received on February the 3rd, 1983,

9   from San Bernardino County.  The life term began on the

10  same date, and the minimum eligible parole date was

11  September the 25th, 1995.  The controlling offense for

12  which the inmate has been committed is a kidnap for

13  robbery, case number is SBDCR-8103.  One count of a Penal

14  Code violation of a 209 with enhancement of a 12022.5.

15  There was some additional charges, robbery, which was a

16  violation of 211, San Bernardino County, the same case

17  number, and that was count six and 20.  Those counts were

18  stayed.  There was a oral copulation in concert, which is

19  a violation of a 288(a), same county, same case number

20  SBDCR-8103.  Those were count three, four, five, seven,

21  eight, 10, 18, one and 19.  There was also an additional

22  charge of rape in concert, which is a violation of a

23  286(a), same county, same case number, and that was count

24  nine, 12, 13, 14, 15 and 16.  There was also a sodomy in

25  concert, which was a violation of a P.C. 286(d) with a

26  12022.5, San Bernardino County, same case number, and

27  that's count 11 and 17.  The inmate received two terms of

2

1    life, where I believe one of them is to run concurrently.

2    Is that right?

3         DEPUTY DISTRICT ATTORNEY DAWSON:   I think so.

4         PRESIDING COMMISSIONER BIGGERS:   Okay.  And with the

5    minimum eligible parole date, as I mentioned earlier, of

6    9/25/95.  Now, Mr. Morrison, this case is being --

7    hearing is being tape recorded.  For the purpose of voice

8    identification, each of us will state our first and last

9    name, spelling your last name.  When it's your turn,

10   after spelling your last name, please give us your CDC

11   number.  I will start.  My name is Archie Joe Biggers,

12   B-I-G-G-E-R-S.  I'm a Commissioner with the Board of

13   Parole Hearings.

14        DEPUTY COMMISSIONER MORRIS:  Rufus Morris,

15   M-O-R-R-I-S, Deputy Commissioner.

16        DEPUTY DISTRICT ATTORNEY DAWSON:  Jennifer Dawson,

17   D-A-W-S-O-N, Deputy District Attorney, San Bernardino

18   County.

19        ATTORNEY CHRISTENSEN:  Candace Christensen,

20   C-H-R-I-S-T-E-N-S-E-N, attorney for Mr. Morrison.

21        INMATE MORRISON:  Anthony Morrison, C-60307.

22        PRESIDING COMMISSIONER BIGGERS:  Mr. Morrison, in

23   front of you there is a ADA statement in front you.

24   Would you please read that out loud for us?

25        INMATE MORRISON:  Okay.

26        The American's with Disabilities Act, ADA, is

27        a law to help people with disabilities.

3

1      Disabilities are problems that makes it hard
2      for some people to see, hear, breathe, talk,
3      walk, learn, think, work, or take care of
4      themselves than it is for others.  Nobody can
5      be kept out of public places and activities
6      because of disabilities.  If you have a
7      disability, you have the right to ask for help
8      to get ready for your BPT hearing, get to the
9      hearing, talk, read forms and papers and
10     understand the hearing proceedings.  BPT will
11     look at what you ask for to make sure that you
12     have a disability that is covered by the ADA
13     and that to have to ask for the right kind of
14     help.  If you do not get help, or if you don't
15     think you got the kind of help you need, ask
16     for a BPT 1074 Form.  You can also get help to
17     fill it out.
18.    **PRESIDING COMMISSIONER BIGGERS:**  All right.  Mr.
19     Morrison, in your own words what does that mean to you?
20     **INMATE MORRISON:**  If you don't understand -- if you
21     don't understand what's going on, you can get some help
22     from the ADA.
23     **PRESIDING COMMISSIONER BIGGERS:**  Okay.  What kind of
24     help were we talking about here, sir?
25     **INMATE MORRISON:**  Self explanatory.
26     **PRESIDING COMMISSIONER BIGGERS:**  No, it's not self
27     explanatory, that's why I'm asking you, sir.  About

4

1    hearing, reading -- I see you have glasses on?

2        INMATE MORRISON:  Right.

3        PRESIDING COMMISSIONER BIGGERS:  Okay.  Are those

4    prescription glasses?

5        INMATE MORRISON:  Yes, they are.

6        PRESIDING COMMISSIONER BIGGERS:  Do you need those

7    to read?

8        INMATE MORRISON:  Yes, I do.

9        PRESIDING COMMISSIONER BIGGERS:  Okay.  So that's a

10   disability?

11       INMATE MORRISON:  Yes.

12       PRESIDING COMMISSIONER BIGGERS:  All right.  Do you

13   have any hearing impairments?

14       INMATE MORRISON:  No.

15       PRESIDING COMMISSIONER BIGGERS:  Okay.  Have you --

16   did you have any trouble walking over here today?

17       INMATE MORRISON:  No, I did not.

18       PRESIDING COMMISSIONER BIGGERS:  Okay.  I see that

19   you signed a 1073 on April the 7th, '06, indicating that

20   you have no disabilities.  Is that correct?

21       INMATE MORRISON:  Exactly.

22       PRESIDING COMMISSIONER BIGGERS:  Okay.  But you're

23   wearing glasses, so therefore there is a place on here

24   that says you have vision problems.

25       INMATE MORRISON:  Just for reading.

26       PRESIDING COMMISSIONER BIGGERS:  Okay.  Then you

27   should put down that I need that because the next

5

1    question I'm going to ask you is whether or not you had

2    those glasses on when you reviewed your C file?

3        INMATE MORRISON:  Yes, I did.

4        PRESIDING COMMISSIONER BIGGERS:  Okay.  Sir, the

5    information is in fact correct?  Is what you're saying?

6        INMATE MORRISON:  Yes.

7        PRESIDING COMMISSIONER BIGGERS:  Have you ever been

8    involved in CCCMS or EOP programs?

9        INMATE MORRISON:  No, I have not.

10        PRESIDING COMMISSIONER BIGGERS:  Do you know what

11    those are?

12        INMATE MORRISON:  Not really.

13        PRESIDING COMMISSIONER BIGGERS:  All right.  They

14    have to do with mental health issues.  Have you ever been

15    involved in the mental health programs here at the

16    institution?

17        INMATE MORRISON:  No.

18        PRESIDING COMMISSIONER BIGGERS:  Have you ever been

19    given any psychotropic medication, either in prison or on

20    the street?

21        INMATE MORRISON:  No.

22        PRESIDING COMMISSIONER BIGGERS:  How far did you get

23    in school on the streets?

24        INMATE MORRISON:  9th grade.

25        PRESIDING COMMISSIONER BIGGERS:  9th grade, and I

26    see you got your GED since you've been incarcerated.  Is

27    that correct?

6

1    INMATE MORRISON: Yes, I have.

2    PRESIDING COMMISSIONER BIGGERS: Do you suffer from

3    any disability that would prevent you from participating

4    in today's hearing?

5    INMATE MORRISON: No.

6    PRESIDING COMMISSIONER BIGGERS: Okay. This hearing

7    is being conducted pursuant to Penal Code Section 3041

8    and 3042 and the rules and regulations of the Board of

9    Prison Terms governing parole consideration hearings for

10   life inmates. The purpose of today's hearing is to once

11   again consider the number and nature of the crimes you

12   were committed for, your prior criminal and social

13   history, and your behavior and programming since your

14   commitment. We've had the opportunity to review your

15   Central File as well as your transcript, and you will be

16   given the opportunity to correct or clarify the record.

17   We will reach a decision today and inform you whether or

18   not we find you suitable for parole and the reasons for

19   our decision. If you are found suitable for parole, the

20   length of your confinement will be explained to you.

21   Nothing that happens here today will change the finding

22   of the Court. This Panel is not here to retry your case.

23   This Panel is here for the sole purpose of determining

24   whether or not you are suitable for parole. Do you

25   understand that?

26   INMATE MORRISON: Yes.

27   PRESIDING COMMISSIONER BIGGERS: The hearing will be

7

1    conducted in three phases. I will discuss with you the

2    crime you were committed for, your prior criminal and

3    social history. Deputy Commissioner Morris will talk to

4    you about your post-conviction factors as well as your

5    psychological evaluation. Then I will return and talk to

6    you about your parole plans and any letters of support or

7    opposition that may be in your file. Once that is

8    concluded, both Commissioners, the District Attorney and

9    your attorney will be given the opportunity to ask you

10   questions. Questions from the District Attorney shall be

11   asked through the Chair, and you will direct your answers

12   to the Panel. Next, the District Attorney, then your

13   attorney, then you will be given an opportunity to make a

14   statement regarding your parole suitability. Your

15   statement should address why you feel you are suitable

16   for parole. At this time, also, normally a victim or

17   next of kin or representative will have the opportunity

18   to give a statement regarding the crime. The victim is

19   not here, but she did send a letter to the Board, so at

20   that point I will read that letter into the record.

21   After I read the letter into the record, the Panel will

22   recess, clear the room and deliberate. Once the

23   deliberations are complete, the Panel will resume the

24   hearing and announce its decision. Now, the California

25   Code of Regulations states that regardless of time

26   served, a life inmate shall be found unsuitable for and

27   denied parole, if in the event -- or the judgment of this

8

1    Panel the inmate would pose an unreasonable risk of

2    danger to society if released from prison.  You have

3    certain rights.  Those rights include the right to a

4    timely notice of this hearing, the right to review your

5    Central File, which you indicated to me that you had read

6    your Central File, and the right to present relevant

7    documents.  So I'm going to ask your attorney does she

8    feel that your rights have been met?

9         **ATTORNEY CHRISTENSEN:**  Yes, I do.

10        **PRESIDING COMMISSIONER BIGGERS:**  Okay.  Did I ask

11   you that about the ADA as well?

12        **ATTORNEY CHRISTENSEN:**  Well, the only ADA issue he

13   has is his glasses, so since he has --

14        **PRESIDING COMMISSIONER BIGGERS:**  Okay.  Well, I'm

15   sorry I missed that, but do you feel that his ADA rights

16   have been met as well?

17        **ATTORNEY CHRISTENSEN:**  Yes, I do.

18        **PRESIDING COMMISSIONER BIGGERS:**  Okay.  You have an

19   additional right to be heard by an impartial Panel.  Do

20   you have any objection to the Panel members, sir?

21        **INMATE MORRISON:**  No.

22        **PRESIDING COMMISSIONER BIGGERS:**  Okay.  And I'm

23   going to ask your inmate -- your attorney if she has any.

24        **ATTORNEY CHRISTENSEN:**  No, I don't.

25        **PRESIDING COMMISSIONER BIGGERS:**  Okay.  I'm going to

26   ask Deputy Commissioner Morris if there's any -- will any

27   confidential material be used?

9

1      **DEPUTY COMMISSIONER MORRIS:**  There is confidential

2  materials having to do with the crime partners.  I don't

3  believe that we're going to be using any of that

4  information today.

5      **PRESIDING COMMISSIONER BIGGERS:**  Okay.  I'm going to

6  mark this as Exhibit One, the checklist, the hearing

7  checklist, and I'm going to give it to your attorney as

8  well as to the District Attorney to ensure that we are

9  all working off the same set of documents.

10     **ATTORNEY CHRISTENSEN:**  I have them all.

11     **DEPUTY DISTRICT ATTORNEY DAWSON:**  I have them all.

12     **PRESIDING COMMISSIONER BIGGERS:**  Let the record

13  reflect that both the attorneys indicated that they did

14  have the documents.  Are there any additional documents,

15  other than the ones that you provided earlier, Counselor?

16     **ATTORNEY CHRISTENSEN:**  No, that's it.

17     **PRESIDING COMMISSIONER BIGGERS:**  Are there any

18  preliminary objections?

19     **ATTORNEY CHRISTENSEN:**  No.

20     **PRESIDING COMMISSIONER BIGGERS:**  Okay.  Will the

21  inmate be speaking to the Panel today?

22     **ATTORNEY CHRISTENSEN:**  Yes, he will.

23     **PRESIDING COMMISSIONER BIGGERS:**  All right.  Mr.

24  Morrison, would you please raise your right hand?  Do you

25  solemnly swear or affirm that the testimony you are about

26  to give at this hearing will be the truth, the whole

27  truth, and nothing but the truth?

10

1    INMATE MORRISON:  Yes.

2    PRESIDING COMMISSIONER BIGGERS:  Okay.  Thank you.

3    I'm going to read into the record from the 2006 board

4    report the summary of the crime:

5         On December the 25th, Christmas Day I might

6         add, 1981, at about 10:14 hours in San

7         Bernardino, Anthony Mark Morrison kidnapped

8         for robbery by use of a handgun Ronald

9         Chappell, C-H-A-P-P-E-L-L, and Lisa Goble, G-

10        O-B-L-E.  Morrison had three other crime

11        partners.  Following the kidnapping, Lisa

12        Goble was repeatedly raped, sodomized and made

13        to orally copulate his crime partner.  She was

14        violated and feared for her life.  At one

15        point of the crime partner -- at one point one

16        of the crime partners stated let's blow this

17        bitch's head off.  She was also pistol

18        whooped.  The kidnap occurred in the city of

19        Upland, and the sexual assaults began

20        immediately in the car and continued in the

21        city of San Bernardino.  The victim and

22        Morrison were strangers.

23   In your version, Mr. Morrison, you said that you

24   were innocent and are appealing the case.

25   INMATE MORRISON:  No.

26   PRESIDING COMMISSIONER BIGGERS:  And then I got an

27   addendum.  This was what was in the initial report, so

11

1    let me --

2        INMATE MORRISON:  All right.

3        PRESIDING COMMISSIONER BIGGERS:   -- so let me

4    finish, please.

5        INMATE MORRISON:  All right.

6        PRESIDING COMMISSIONER BIGGERS:  I got an addendum

7    that was signed by CC-I Stan Martinez, and it says -- the

8    prisoner's version that Morrison stated that he was

9    present at the crime scene concerning the life crime;

10   however, he entered into the record that he did not

11   partake in a active culpable role.  Is that right?

12       INMATE MORRISON:  Exactly.

13       PRESIDING COMMISSIONER BIGGERS:  What did you mean

14   by that, sir?

15       INMATE MORRISON:  That means the role -- what

16   happened in the fields I didn't participate in none of

17   them acts.

18       PRESIDING COMMISSIONER BIGGERS:  What was your

19   involvement?

20       INMATE MORRISON:  As far as?

21       PRESIDING COMMISSIONER BIGGERS:  What was your

22   involvement in the crime?

23       INMATE MORRISON:  I kidnapped her.

24       PRESIDING COMMISSIONER BIGGERS:  You kidnapped her?

25       INMATE MORRISON:  Yeah.  I had her oral copulate him

26   on the way to the fields.

27       PRESIDING COMMISSIONER BIGGERS:  Okay.

12

1    INMATE MORRISON:  And then when I got to the fields

2    I left.

3    PRESIDING COMMISSIONER BIGGERS:  You left?

4    INMATE MORRISON:  Yes, I did.

5    PRESIDING COMMISSIONER BIGGERS:  Okay.  Did she not

6    pick you up out of the lineup?

7    INMATE MORRISON:  No.

8    PRESIDING COMMISSIONER BIGGERS:  Tell me what

9    happened when you went to the lineup with the victim.

10   What did she say that you did to her?

11   INMATE MORRISON:  She didn't pick me out.  She

12   picked Anthony Keany (phonetic) out of the lineup.

13   PRESIDING COMMISSIONER BIGGERS:  Wasn't there -- you

14   know, the last time you came up before a Board hearing

15   you had a very interesting conversation with Commissioner

16   Welch (phonetic).  Is that correct?

17   INMATE MORRISON:  Yes, I did.

18   PRESIDING COMMISSIONER BIGGERS:  Okay.  And what did

19   Commissioner Welch tell you?

20   INMATE MORRISON:  As far as?

21   PRESIDING COMMISSIONER BIGGERS:  Well, just tell me

22   in general what did he tell you about the crime and also

23   what you should do?

24   INMATE MORRISON:  He told me I should of been

25   truthful from day one instead of bringing a affidavits

26   in, he said I should of been truthful from day one.  And

27   it would be hard for him, per se to have confidence that

13

1   I would be telling him the truth now.

2     **PRESIDING COMMISSIONER BIGGERS:** Basically, what he

3   was telling you should be a historian so that you get all

4   your facts straight before you come in. Is that correct?

5     **INMATE MORRISON:** Somewhat, yes.

6     **PRESIDING COMMISSIONER BIGGERS:** Okay. So now you

7   are taking full responsibility?

8     **INMATE MORRISON:** I did last time, too.

9     **PRESIDING COMMISSIONER BIGGERS:** But that was after

10  an investigation?

11     **INMATE MORRISON:** I didn't even know that was going

12  to happen. I still stepped up. I didn't even know that

13  was happening.

14     **PRESIDING COMMISSIONER BIGGERS:** Okay. Well, why do

15  you think that they asked for an investigation?

16     **INMATE MORRISON:** Because I told them I wasn't

17  there.

18     **PRESIDING COMMISSIONER BIGGERS:** You were not there,

19  and then there was some DNA gathering. Is that --

20     **INMATE MORRISON:** I don't know nothing about no DNA.

21  I told them that I was trying to get DNA to clear my

22  name, for what I did and what I didn't do.

23     **PRESIDING COMMISSIONER BIGGERS:** Okay. Did you not

24  appeal this?

25     **INMATE MORRISON:** The case?

26     **PRESIDING COMMISSIONER BIGGERS:** Yes.

27     **INMATE MORRISON:** My appeal went to the wrong

14

1    courts, so they say I have no appeal now.

2        PRESIDING COMMISSIONER BIGGERS:  Okay.  But when you

3    were talking to -- you said that you were not aware that

4    there was an investigation?

5        INMATE MORRISON:  No, I wasn't.  He had told me he

6    was, but I didn't believe him.  He told me he it was

7    going to get investigated.

8        PRESIDING COMMISSIONER BIGGERS:  Okay.  Did you read

9    the last transcript from 2004?

10        INMATE MORRISON:  Yes.  Yes.

11        PRESIDING COMMISSIONER BIGGERS:  Remember what he

12    said on Page 13?

13        INMATE MORRISON:  I have it right here.  I don't

14    remember.

15        PRESIDING COMMISSIONER BIGGERS:  "And what -- and

16    why did at first you didn't commit the crime.  I

17    submit -- I note the last time you appeared before me I

18    requested an investigation, and I have the results of the

19    investigation."  And in that you had said that you had

20    submitted DNA and to prove that you didn't commit this

21    crime.  And then you said, "Yes, I did submit DNA."  And

22    now you just told me that you didn't.

23        INMATE MORRISON:  No, I had Berry Sheck (phonetic)

24    working on my case for DNA.  I never did -- he never did

25    find the DNA, so there was nothing to give up because

26    they said they couldn't find the DNA.

27        PRESIDING COMMISSIONER BIGGERS:  Did you, in fact,

15

1  submit DNA?

2      INMATE MORRISON:  No, it's impossible.

3      PRESIDING COMMISSIONER BIGGERS:  Okay.  Well, look

4  on Page 14.  I'm just -- top of Page 14.

5      INMATE MORRISON:  That's what it says down there,

6  yes.

7      PRESIDING COMMISSIONER BIGGERS:  Did you -- that's

8  what I'm asking you, okay.

9      INMATE MORRISON:  No.

10     PRESIDING COMMISSIONER BIGGERS:  Okay.  And that's

11  what's in the transcript, and then did it come back the

12  finding that they couldn't find the rest of the DNA.

13  Presiding Commissioner Welch --

14     INMATE MORRISON:  That's what is in there.

15     PRESIDING COMMISSIONER BIGGERS:  Hold on.  "So now

16  you say you didn't commit the crime; however -- now you

17  say I did commit the crime.  I did commit the crime.

18  Okay.  What happened?  Well, when I was trying to get the

19  DNA because I didn't rape the woman.  I was there at the

20  crime.  I did the crime.  I just as guilty as they are.

21  And then that's when you said before you wasn't at the

22  crime scene, and now you say are, but you didn't commit

23  the rape.  No, I did not.  Okay.  What were your

24  participation" -- again, I'm going down the transcript

25  here.  I'm on Page 15.  "I kidnapped here and she

26  sodomized and oral copulated me.  Is that correct?

27     INMATE MORRISON:  Exactly.

16

1      **PRESIDING COMMISSIONER BIGGERS:** Okay. And then

2  Commissioner Welch asks you if you sodomized her, and you

3  said no, you did not.

4      **INMATE MORRISON:** Exactly.

5      **PRESIDING COMMISSIONER BIGGERS:** Okay. I'm going to

6  ask you again why did you kidnap the woman?

7      **INMATE MORRISON:** Dumb.

8      **PRESIDING COMMISSIONER BIGGERS:** Well, I know that.

9      **INMATE MORRISON:** Dumb.

10     **PRESIDING COMMISSIONER BIGGERS:** It's got to be

11  dumb.

12     **INMATE MORRISON:** There wasn't no reason why I

13  kidnapped her. I didn't know her. There wasn't no

14  reason why.

15     **PRESIDING COMMISSIONER BIGGERS:** You were with three

16  other crime partners?

17     **INMATE MORRISON:** Yes, I was.

18     **PRESIDING COMMISSIONER BIGGERS:** Okay. And how long

19  had you known these guys?

20     **INMATE MORRISON:** One for two years, and one for six

21  months, and I went to school with one of them.

22     **PRESIDING COMMISSIONER BIGGERS:** Okay. And you all

23  were just joyriding around and you decided you were going

24  to do something to this person?

25     **INMATE MORRISON:** No, we decided that we was going

26  to rob somebody.

27     **PRESIDING COMMISSIONER BIGGERS:** Okay.

17

1    INMATE MORRISON:  And it turned into something else.

2    PRESIDING COMMISSIONER BIGGERS:  So you were

3  planning a robbery.  How did you pick these people out?

4    INMATE MORRISON:  At gas station.

5    PRESIDING COMMISSIONER BIGGERS:  Okay.  Was the

6  woman appealing to you or something, or the guy that she

7  was with look like he couldn't defend himself or

8  something?

9    INMATE MORRISON:  No, I don't remember seeing

10  nothing like that.

11    PRESIDING COMMISSIONER BIGGERS:  Well, why did you

12  all just pick them out?  Were they the only ones at the

13  gas station?

14    INMATE MORRISON:  They was the only one at the gas

15  station.

16    PRESIDING COMMISSIONER BIGGERS:  Okay.  When you saw

17  that this thing was getting out of hand, why didn't you

18  just say hey, guys this isn't what I signed up to do?

19    INMATE MORRISON:  That did happen, but it didn't

20  happen until I got to the fields.

21    PRESIDING COMMISSIONER BIGGERS:  But you -- when did

22  you sodomize her and when did you force her to orally

23  copulate you?

24    INMATE MORRISON:  I didn't -- did not sodomize her

25  period.

26    PRESIDING COMMISSIONER BIGGERS:  When did you ask

27  her -- when you force her to --

18

1        INMATE MORRISON:  Orally copulate.

2        PRESIDING COMMISSIONER BIGGERS:  -- orally copulate

3    you?

4        INMATE MORRISON:  During the drive from Upland to

5    San Bernardino.

6        PRESIDING COMMISSIONER BIGGERS:  Okay.  Well, then

7    you said on your way to the fields, right?

8        INMATE MORRISON:  Right.

9        PRESIDING COMMISSIONER BIGGERS:  Okay.  So the point

10   I'm trying to get at is why didn't you stop prior to that

11   time?

12       INMATE MORRISON:  I don't know why I didn't stop.

13       PRESIDING COMMISSIONER BIGGERS:  Okay.  After you

14   got her in the car you saw what you saw that they had

15   forced them into the car?

16       INMATE MORRISON:  Exactly.

17       PRESIDING COMMISSIONER BIGGERS:  It had gone beyond

18   robbery at that time?

19       INMATE MORRISON:  Yes, it did.

20       PRESIDING COMMISSIONER BIGGERS:  Why didn't you stop

21   once you asked them for their money or whatever instead

22   of just putting them in the car?

23       INMATE MORRISON:  I don't know why.

24       PRESIDING COMMISSIONER BIGGERS:  You don't know why.

25   Okay.  How do you feel about the victim at this point?

26       INMATE MORRISON:  Terrible.

27       PRESIDING COMMISSIONER BIGGERS:  Okay.  What do you

19

1    think she's going through?

2        INMATE MORRISON:  A lot of emotions, lot of

3    emotions.  I been raped since I've been locked up, so I

4    know what she's going through.

5        PRESIDING COMMISSIONER BIGGERS:  Oh, you have been

6    raped?

7        INMATE MORRISON:  Yes, I have.  Yes, I have.

8        PRESIDING COMMISSIONER BIGGERS:  Okay.  And did you

9    report it?

10       INMATE MORRISON:  No, I did not.

11       PRESIDING COMMISSIONER BIGGERS:  Why not?

12       INMATE MORRISON:  I reported it to the psych.  When

13   I seen the psych, I brought it to the psych's attention.

14   But I was molested when I was small, too so I know what

15   she went through.

16       PRESIDING COMMISSIONER BIGGERS:  You were molested

17   when you were small?

18       INMATE MORRISON:  Right.

19       PRESIDING COMMISSIONER BIGGERS:  And yet you allowed

20   yourself to get involved with people that did it to

21   somebody else?

22       INMATE MORRISON:  Yes, I did.  Yes, I did.

23       PRESIDING COMMISSIONER BIGGERS:  Now, when you said

24   dumb, that's not dumb, that's stupid.

25       INMATE MORRISON:  Yeah.  I agree with you.  But that

26   wasn't what I was thinking when that was going on.

27       PRESIDING COMMISSIONER BIGGERS:  What were you

20

1    thinking, sir?

2         INMATE MORRISON:  I was just -- I was just with

3    them.  I was just with the guys.

4         PRESIDING COMMISSIONER BIGGERS:  How old were you

5    when this happened?

6         INMATE MORRISON:  17 years old.

7         PRESIDING COMMISSIONER BIGGERS:  How old was the

8    oldest individual that was your crime partner?

9         INMATE MORRISON:  I believe 22 or 23.

10        PRESIDING COMMISSIONER BIGGERS:  Okay.  And how long

11   had you known the 22 year-old?

12        INMATE MORRISON:  I think a year.

13        PRESIDING COMMISSIONER BIGGERS:  A year?

14        INMATE MORRISON:  Yeah.

15        PRESIDING COMMISSIONER BIGGERS:  You were running

16   with him for a year?

17        INMATE MORRISON:  Not running with him.

18        PRESIDING COMMISSIONER BIGGERS:  Just associating

19   with him?

20        INMATE MORRISON:  Yes.

21        PRESIDING COMMISSIONER BIGGERS:  Were you the

22   youngest?

23        INMATE MORRISON:  No, I wasn't the youngest.

24        PRESIDING COMMISSIONER BIGGERS:  Who was the

25   youngest?

26        INMATE MORRISON:  The guy that took a deal.

27        PRESIDING COMMISSIONER BIGGERS:  And how old was he?

21

1         INMATE MORRISON:  I believe 15.

2         PRESIDING COMMISSIONER BIGGERS:  15?

3         INMATE MORRISON:  Yes.

4         PRESIDING COMMISSIONER BIGGERS:  So you had a 15

5    year-old, a 17 year-old, and a 22 year-old, and how old

6    was the fourth guy?

7         INMATE MORRISON:  21 or 22.

8         PRESIDING COMMISSIONER BIGGERS:  22?

9         INMATE MORRISON:  Yeah.

10        PRESIDING COMMISSIONER BIGGERS:  You ever thought

11   you may of been being used?  You were driving the car,

12   were you not?

13        INMATE MORRISON:  No, I was on the passenger side.

14        PRESIDING COMMISSIONER BIGGERS:  On the passenger

15   side?

16        INMATE MORRISON:  Right.

17        PRESIDING COMMISSIONER BIGGERS:  Now, I understand

18   that one of the victims were in one car, and then the

19   other victim was in another car?

20        INMATE MORRISON:  Exactly.

21        PRESIDING COMMISSIONER BIGGERS:  Is that right?

22        INMATE MORRISON:  Right.

23        PRESIDING COMMISSIONER BIGGERS:  Okay.  When you

24   were on the passenger side and they were driving around

25   with them, what were you doing to the victim that was in

26   the car with you?

27        INMATE MORRISON:  I was getting orally copulated.

22

1    PRESIDING COMMISSIONER BIGGERS:  Did you have a gun?

2    INMATE MORRISON:  Yes, I did.

3    PRESIDING COMMISSIONER BIGGERS:  Okay.  And you

4    pointed a gun at her?

5    INMATE MORRISON:  Yes, I did.

6    PRESIDING COMMISSIONER BIGGERS:  Okay.  Where did

7    you get the gun?

8    INMATE MORRISON:  From the 22 year-old.

9    PRESIDING COMMISSIONER BIGGERS:  From the 22 year-

10   old?

11   INMATE MORRISON:  Yeah.

12   PRESIDING COMMISSIONER BIGGERS:  Okay.  When you

13   held the gun on her, did you hold it to her head?

14   INMATE MORRISON:  I don't recall.

15   PRESIDING COMMISSIONER BIGGERS:  You don't recall?

16   INMATE MORRISON:  No.

17   PRESIDING COMMISSIONER BIGGERS:  All right.  Well,

18   again, they found you guilty of all these charges, and

19   you got two life terms.  I'm not going go in there and

20   try to retry the case.  I do want to know though when you

21   said this you had been molested before, do you recall,

22   and it's in the probation officer's report, that in May

23   1977 you had two counts of indecent exposure?

24   INMATE MORRISON:  Yes, I do.

25   PRESIDING COMMISSIONER BIGGERS:  Okay.  Tell me

26   about that, and they were settled out of court.  Tell me

27   what happened there.

23

1        INMATE MORRISON:  I was using a restroom and a guy

2   came outside his house or house and he seen me, and he

3   called the police on me.

4        PRESIDING COMMISSIONER BIGGERS:  Twice?

5        INMATE MORRISON:  This only happened one time.

6        PRESIDING COMMISSIONER BIGGERS:  Well, we have two

7   counts.

8        INMATE MORRISON:  No, just one time that I know of.

9        PRESIDING COMMISSIONER BIGGERS:  Well, it says here

10   it was settled out of court.  What happened?

11        INMATE MORRISON:  What happened to the case?

12        PRESIDING COMMISSIONER BIGGERS:  Yes.

13        INMATE MORRISON:  They put me on -- I believe, they

14   put me on probation.

15        PRESIDING COMMISSIONER BIGGERS:  Well, they did

16   that, but they said that -- again, committing property

17   offense in May 1977 and graduated to two counts of

18   indecent exposure, which were settled out of court.  They

19   had to go to court --

20        INMATE MORRISON:  It only happened one time.

21        PRESIDING COMMISSIONER BIGGERS:  So there was two

22   counts for that one exposure?  Is that --

23        INMATE MORRISON:  I only been arrested one time for

24   that.

25        PRESIDING COMMISSIONER BIGGERS:  Okay.  And then it

26   says -- we'll talk about your priors in a minute because

27   I also want to know why it was -- when you were on

24

1    probation that you didn't comply with your probation.

2    Performance was poor to unsatisfactory according to your

3    probation officer.

4        INMATE MORRISON:  Yes.

5        PRESIDING COMMISSIONER BIGGERS:  Why was that?

6        INMATE MORRISON:  I was young.

7        PRESIDING COMMISSIONER BIGGERS:  Well, but what

8    could you say to make it -- two-part question.  One, what

9    can you tell this Panel today that if you are given a

10    date that one, you wouldn't go back out and get involved

11    in something like this and follow the rules that have

12    been set up for you when you didn't do it prior to, and

13    secondly, how would you react in a situation where you

14    see women?

15        INMATE MORRISON:  When I see women?

16        PRESIDING COMMISSIONER BIGGERS:  Yes, if you're out

17    there by yourself.

18        INMATE MORRISON:  I don't have -- I'm not a serial

19    rapist or nothing.

20        PRESIDING COMMISSIONER BIGGERS:  I didn't say

21    anything about being a serial rapist.

22        INMATE MORRISON:  Right.

23        PRESIDING COMMISSIONER BIGGERS:  How do you think

24    you would feel, because you have been incarcerated for a

25    long period of time?

26        INMATE MORRISON:  Yes, I have.

27        PRESIDING COMMISSIONER BIGGERS:  So how would you

25

1    respond to a situation where you see someone?

2         INMATE MORRISON:  It wouldn't bother me.  Women

3    wouldn't make me want to go after no women or nothing

4    like that, if that's what you're trying --

5         PRESIDING COMMISSIONER BIGGERS:  I'm trying to find

6    out what you were thinking when you went out there to the

7    service station, you robbed the person, you put her in

8    the car before you drove off, put a gun to her head and

9    told her to orally copulate you.  You think you're still

10   capable of doing that?

11        INMATE MORRISON:  Oh, no, no.

12        PRESIDING COMMISSIONER BIGGERS:  What has changed?

13        INMATE MORRISON:  I'm a changed person.  I'm a

14   changed person.

15        PRESIDING COMMISSIONER BIGGERS:  In what way, sir?

16        INMATE MORRISON:  I'm matured.  I was illiterate,

17   dumb.  I got my GED now.  I got my welding certificate.

18   I got stability in my life now.  I was dumb.  I don't

19   even blame them guys no more because I had the

20   opportunity to say no and I didn't, so I should of left,

21   and I did not leave.  I'm not the same person I was back

22   then.

23        PRESIDING COMMISSIONER BIGGERS:  Okay.  All right.

24   Like I said, I'm not here to retry your case, so I'm

25   going to move over to your social, but you did say you

26   have remorse for the victim?

27        INMATE MORRISON:  Very much.

26

1      PRESIDING COMMISSIONER BIGGERS:  And that's

2   primarily because you've been raped here, and you also

3   were molested as child?

4      INMATE MORRISON:  No, because it should of never

5   happened.

6      PRESIDING COMMISSIONER BIGGERS:  Okay.  Okay.  You

7   were raised primarily by your mother?

8      INMATE MORRISON:  Back and forth.

9      PRESIDING COMMISSIONER BIGGERS:  Okay.  How many

10  children were in the family, sir?

11     INMATE MORRISON:  Six.

12     PRESIDING COMMISSIONER BIGGERS:  Six.  How many

13  boys?  How many girls?

14     INMATE MORRISON:  Two boys.

15     PRESIDING COMMISSIONER BIGGERS:  And four girls?

16     INMATE MORRISON:  Yes, sir.

17     PRESIDING COMMISSIONER BIGGERS:  Were any of them

18  involved with the law?

19     INMATE MORRISON:  No.

20     PRESIDING COMMISSIONER BIGGERS:  You're the only

21  one?

22     INMATE MORRISON:  My brother -- my brother is.

23     PRESIDING COMMISSIONER BIGGERS:  What did he do?

24     INMATE MORRISON:  He burglarized a house.

25     PRESIDING COMMISSIONER BIGGERS:  Burglarized a

26  house?

27     INMATE MORRISON:  Yes.

27

1          PRESIDING COMMISSIONER BIGGERS:  Did he go the YA?

2          INMATE MORRISON:  He's locked upright now.

3          PRESIDING COMMISSIONER BIGGERS:  In YA or --

4          INMATE MORRISON:  No, no, he's in prison somewhere.

5          PRESIDING COMMISSIONER BIGGERS:  Okay.  So you don't

6   correspond with him?

7          INMATE MORRISON:  No, I do not.

8          PRESIDING COMMISSIONER BIGGERS:  Do you correspond

9   with the rest of your family?

10         INMATE MORRISON:  Yes, I do.

11         PRESIDING COMMISSIONER BIGGERS:  Okay.  Do they come

12  and see you?

13         INMATE MORRISON:  Yes, they do.

14         PRESIDING COMMISSIONER BIGGERS:  How often?

15         INMATE MORRISON:  Maybe every 90 days, once every 90

16  days.

17         PRESIDING COMMISSIONER BIGGERS:  Okay.  And I see

18  that you -- you moved between your mother and father's

19  house.  Was there a lot of discipline in the house?

20         INMATE MORRISON:  Yes, there was.

21         PRESIDING COMMISSIONER BIGGERS:  If there was a lot

22  of discipline, why would you get involved in something

23  like this?  And please don't say because I was dumb and

24  immature.

25         INMATE MORRISON:  I don't know.

26         PRESIDING COMMISSIONER BIGGERS:  You don't know.

27  Okay.  I see that you experimented with marijuana?

28

1          INMATE MORRISON:  Yes, I have.

2          PRESIDING COMMISSIONER BIGGERS:  And you had a heavy

3    -- substance abuse did not appear to be a factor.  Were

4    you drinking that day?

5          INMATE MORRISON:  Wasn't drinking.  Wasn't on drugs.

6          PRESIDING COMMISSIONER BIGGERS:  So you just went

7    along for a robbery because that's what you guys wanted

8    to do, and it ended up being all the other stuff?

9          INMATE MORRISON:  Yes, I guess that's a true

10   statement.

11         PRESIDING COMMISSIONER BIGGERS:  Okay.  On your

12   juvenile record you were first arrested at age 13 for

13   petty theft, and that was done twice wasn't it, 11/22/77

14   and 12/31/77 for petty theft?  You were placed on

15   probation both times.  Is that correct?

16         INMATE MORRISON:  Yes, sir.

17         PRESIDING COMMISSIONER BIGGERS:  So you were on

18   probation when this crime --

19         INMATE MORRISON:  No.

20         PRESIDING COMMISSIONER BIGGERS:  You were not on

21   probation when this crime --

22         INMATE MORRISON:  No.

23         PRESIDING COMMISSIONER BIGGERS:  -- took place?

24         INMATE MORRISON:  No.

25         PRESIDING COMMISSIONER BIGGERS:  How much probation

26   did they give you?

27         INMATE MORRISON:  I think they gave me a year.

29

1        PRESIDING COMMISSIONER BIGGERS:  A year?

2        INMATE MORRISON:  Yeah, but I'm not for sure though.

3        PRESIDING COMMISSIONER BIGGERS:  Okay.

4        INMATE MORRISON:  The crime took place in '81.

5        PRESIDING COMMISSIONER BIGGERS:  Right.  Yeah,

6    you're right.  But be that as it may, you were given the

7    opportunity to go straight?

8        INMATE MORRISON:  Straighten up, exactly.

9        PRESIDING COMMISSIONER BIGGERS:  But you elected not

10   to do that.  Is that correct?

11       INMATE MORRISON:  I guess you can say that's fair

12   statement.

13       PRESIDING COMMISSIONER BIGGERS:  Okay.  All right.

14   Is there anything that I left out in either your social

15   or your priors or in the commitment offense that you want

16   to discuss with this Panel?

17       INMATE MORRISON:  Other than I'm very remorseful for

18   the lady.

19       PRESIDING COMMISSIONER BIGGERS:  I understand that,

20   and we'll get into that a little later on.

21       INMATE MORRISON:  All right.

22       PRESIDING COMMISSIONER BIGGERS:  You'll get a chance

23   to make a statement prior to the end of the hearing.

24   Then at this point if Deputy Commissioner Morrison

25   doesn't have anything about the things I asked about, do

26   you want to talk about the crime?

27       DEPUTY COMMISSIONER MORRIS:  Let me ask you one

30

1  quick question here.  You have a prior robbery at a

2  service station?

3      INMATE MORRISON:  I don't know if it was at a --

4      DEPUTY COMMISSIONER MORRIS:  Prior offenses, it

5  seems to indicate that there was a prior robbery.  You

6  got away with it, it sounds like, avoided some officers

7  and possibly being shot?

8      PRESIDING COMMISSIONER BIGGERS:  I didn't see

9  that --

10     INMATE MORRISON:  No.

11     PRESIDING COMMISSIONER BIGGERS:  -- in the file.

12     INMATE MORRISON:  No, not me.  That's somebody else.

13  The only thing I have is the petty thefts.  That's the

14  only thing, and the indecent exposure.

15     DEPUTY COMMISSIONER MORRIS:  Okay.  '77 --

16     PRESIDING COMMISSIONER BIGGERS:  Where is that?

17     DEPUTY COMMISSIONER MORRIS:  -- against property,

18  formal probation following those two counts of indecent

19  exposure.  Okay.  Here is says probation for stealing a

20  purse from an elderly woman and committing a gas station

21  robbery on a dare.  At that time --

22     INMATE MORRISON:  I remember the purse -- snatching

23  the purse, but committing the robbery at a gas station,

24  no.

25     DEPUTY COMMISSIONER MORRIS:  No?

26     INMATE MORRISON:  No.

27     DEPUTY COMMISSIONER MORRIS:  There's another -- it

31

1    says, however, when you encountered suspicious officers

2    who then discovered a concealed weapon.

3         INMATE MORRISON:  That was two different -- two

4    different offenses.  When they caught me with a concealed

5    weapon, that had nothing to do with the robbery.

6         PRESIDING COMMISSIONER BIGGERS:  They didn't even

7    show that in the --

8         DEPUTY COMMISSIONER MORRIS:  Was your intent at that

9    time to rob that's why you had the gun at that time?

10        INMATE MORRISON:  Probably so.

11        DEPUTY COMMISSIONER MORRIS:  So you had a prior --

12   you intended to complete a robbery before.  That was

13   foiled, and then you had this indecent exposure.  You say

14   one instance of indecent exposure?

15        INMATE MORRISON:  Right.

16        DEPUTY COMMISSIONER MORRIS:  The file seems to

17   indicate maybe two, but you're saying it was one

18   instance?

19        INMATE MORRISON:  Yep.

20        DEPUTY COMMISSIONER MORRIS:  Okay.

21        INMATE MORRISON:  I mean, if they give two counts,

22   two counts on one.

23        DEPUTY COMMISSIONER MORRIS:  Okay.  I just wanted to

24   be clear about that.  Okay.  That's it.

25        PRESIDING COMMISSIONER BIGGERS:  Okay.  Then would

26   you please go into the post-conviction factors.

27        DEPUTY COMMISSIONER MORRIS:  Okay.  Mr. Morrison,

32

1    this is -- let's see what we have here.  This is

2    subsequent parole consideration hearing number two for

3    you?  You had number one in '04?

4        INMATE MORRISON:  Think it's more than two.  I think

5    this is the third time I've been --

6        DEPUTY COMMISSIONER MORRIS:  The first was an

7    initial.

8        INMATE MORRISON:  Right.

9        DEPUTY COMMISSIONER MORRIS:  The first was an

10   initial, and then you had a subsequent.

11       INMATE MORRISON:  Right.

12       DEPUTY COMMISSIONER MORRIS:  And this is subsequent

13   number two?

14       INMATE MORRISON:  Right.

15       DEPUTY COMMISSIONER MORRIS:  Okay.  And that

16   occurred on 8/2 of '04, and at that time you suffered a

17   two-year denial?

18       INMATE MORRISON:  Exactly.

19       DEPUTY COMMISSIONER MORRIS:  Okay.  And looks like

20   you've had a series of two-year denials going back to,

21   let's see '97?

22       INMATE MORRISON:  '97, exactly.

23       DEPUTY COMMISSIONER MORRIS:  I'm looking at a

24   classification score of 19 here, and that's as low as

25   your life crime will allow.  I also see a gang sheet, an

26   812.  The 812 is clear.  You came to prison at, what 18

27   years old?

33

1        INMATE MORRISON:  Excuse me, what did you say about

2    gang?  I didn't hear you.

3        DEPUTY COMMISSIONER MORRIS:  I'm looking at a gang

4    sheet.

5        INMATE MORRISON:  Oh, all right.

6        DEPUTY COMMISSIONER MORRIS:  And the 812 is clear.

7        INMATE MORRISON:  Oh, all right.

8        DEPUTY COMMISSIONER MORRIS:  Okay.  And you came to

9    prison at about 18?  How old were you when you got

10   prison?  You were 17 when the offense occurred.

11       INMATE MORRISON:  I did a 90-day observation.  I

12   came -- 18.

13       DEPUTY COMMISSIONER MORRIS:  18, okay.  And my

14   question is how did you avoid gang affiliation, gang

15   association, youngster 18 in prison?

16       INMATE MORRISON:  I've never been into gangs, never.

17   I've been stabbed in the back on the streets by some gang

18   members, so that never been me.

19       DEPUTY COMMISSIONER MORRIS:  Okay.

20       INMATE MORRISON:  Never.

21       DEPUTY COMMISSIONER MORRIS:  All right.  I'm also

22   looking at a -- I see that you got a GED in '96?

23       INMATE MORRISON:  Yes.

24       DEPUTY COMMISSIONER MORRIS:  Now, since '96 have you

25   taken any additional classes?

26       INMATE MORRISON:  I took a few bible classes, but as

27   far as -- what do you mean as far as college classes?

34

1      DEPUTY COMMISSIONER MORRIS:  Collegiate classes,

2   right.

3      INMATE MORRISON:  No.

4      DEPUTY COMMISSIONER MORRIS:  No correspondence

5   courses, college classes at all?

6      INMATE MORRISON:  No, I just got over here in

7   October.  I was over there in the other yard, and we was

8   locked down all the time.

9      DEPUTY COMMISSIONER MORRIS:  That's okay.  You've

10  been in prison it looks like 22 years?

11     INMATE MORRISON:  25.

12     DEPUTY COMMISSIONER MORRIS:  25, okay, long time.

13  It looks to me that you were received in '83?

14     INMATE MORRISON:  Yeah, well I did two in the

15  county.

16     DEPUTY COMMISSIONER MORRIS:  Okay.

17     INMATE MORRISON:  Right.

18     DEPUTY COMMISSIONER MORRIS:  Okay.  You came to

19  prison in '83, so that looks like about 23 years in

20  prison.

21     INMATE MORRISON:  All right.

22     DEPUTY COMMISSIONER MORRIS:  And I'm looking at that

23  GED in '96, and so my natural question would be the GED

24  is just simply not enough.  Have you done anything with

25  it, or have you even thought about doing anymore?

26     INMATE MORRISON:  Anymore classes?

27     DEPUTY COMMISSIONER MORRIS:  Uh-huh.

35

1        INMATE MORRISON:  Yes, I signed up for some classes

2    already.

3        DEPUTY COMMISSIONER MORRIS:  Okay.

4        INMATE MORRISON:  I signed up for college course

5    classes.

6        DEPUTY COMMISSIONER MORRIS:  Okay.

7        INMATE MORRISON:  And some more bible study classes.

8        DEPUTY COMMISSIONER MORRIS:  Okay.  I'm looking at

9    vocational programming.  What I see is one vocation

10   completed, that's the vocational welding?

11       INMATE MORRISON:  Exactly.

12       DEPUTY COMMISSIONER MORRIS:  Okay.  And when did you

13   start that?

14       INMATE MORRISON:  Vocational welding?

15       DEPUTY COMMISSIONER MORRIS:  When did you start that

16   class?  You graduated -- or you completed that program in

17   '02, so you've been to a couple hearings --

18       INMATE MORRISON:  Yeah.

19       DEPUTY COMMISSIONER MORRIS:  -- by then?

20       INMATE MORRISON:  '02.

21       DEPUTY COMMISSIONER MORRIS:  So when did you take --

22   when did you start it?

23       INMATE MORRISON:  When did I start it, I think

24   either 2000 or 2001.

25       DEPUTY COMMISSIONER MORRIS:  Okay.  So it took a

26   couple years to get through?

27       INMATE MORRISON:  Yeah.

36

1       DEPUTY COMMISSIONER MORRIS:  That's about right.

2       INMATE MORRISON:  Yeah.

3       DEPUTY COMMISSIONER MORRIS:  And my question would

4  be why did it take you so long to finally decide you want

5  to program vocationally?  It took you like three years.

6       INMATE MORRISON:  Like I said, I didn't want no

7  other trade.  That's the only trade I wanted because my

8  step dad that works in Douglas Aircraft, he can give me a

9  good job.

10      DEPUTY COMMISSIONER MORRIS:  Yeah.

11      INMATE MORRISON:  I didn't want no other trade.

12      DEPUTY COMMISSIONER MORRIS:  Okay.

13      INMATE MORRISON:  Didn't nothing interest me but

14  welding.  That's all I wanted to do.

15      DEPUTY COMMISSIONER MORRIS:  Okay.  You went through

16  several documentation hearings, and they talked to you

17  about completing vocational programmings and doing the

18  kind of things that would make you marketable at this

19  kind of a hearing, that included having certificates of

20  completion.  You didn't believe that?

21      INMATE MORRISON:  Yes, I believed it.

22      DEPUTY COMMISSIONER MORRIS:  Okay.

23      INMATE MORRISON:  Yes, I believed it.

24      DEPUTY COMMISSIONER MORRIS:  All right.  So 20 years

25  or so --

26      INMATE MORRISON:  I took anger -- I finished anger

27  management.

37

1        DEPUTY COMMISSIONER MORRIS:  That's a whole
2   different topic.
3        INMATE MORRISON:  Whole different topic.
4        DEPUTY COMMISSIONER MORRIS:  We'll get to that in a
5   minute.  So at any rate you finished one program in the
6   23 years.  Let me chat with you about disciplinaries
7   quickly here.  I see that your last disciplinary was
8   2/27/04, stealing State food, but what I see is that --
9   well, you were just a serious institution management
10  problem for a lot of years, right up until the last 115,
11  2004.  I'm talking about from '84 to 2004, 20 years?
12       INMATE MORRISON:  Yes, I was.
13       DEPUTY COMMISSIONER MORRIS:  What's going on?  Tell
14  me about that.  What were you thinking?
15       INMATE MORRISON:  Bozo.  Just a bozo.
16       DEPUTY COMMISSIONER MORRIS:  And I ask you that
17  because you were talking about your level of maturity --
18       INMATE MORRISON:  Right.
19       DEPUTY COMMISSIONER MORRIS:  -- and some of the
20  growth and development.  And I'm looking at madness,
21  assaultive, aggressive, disobeying orders, sexual
22  behavior, inmate alcohol, threatening staff.  Okay.  And
23  on the heels of that, immediately on the heels of all of
24  that, I see the 17 disciplinaries over your life of
25  incarceration, since the last hearing -- well, you
26  haven't had any since the last hearing.  The last 115 you
27  got was just before the last hearing?

38

1        INMATE MORRISON:  Right.

2        DEPUTY COMMISSIONER MORRIS:  About six months, but

3   I'm also looking at a laundry list of negative chronos.

4   More negative chronos than 115s.  Any one could of easily

5   been a full blown 115.  Staff -- looks like they just got

6   tired of writing, gave you, what, 21 negative chronos.

7   The last one is dated 12/17 of '94, delaying count.

8   Okay.  Anything you want to tell me about that behavior?

9   Where are you today?

10       INMATE MORRISON:  As far as the behavior?

11       DEPUTY COMMISSIONER MORRIS:  Uh-huh.

12       INMATE MORRISON:  I done clean my act up.  I'm

13  clean.

14       DEPUTY COMMISSIONER MORRIS:  Okay.  Well, you're

15  clean since 2004?

16       INMATE MORRISON:  I'm clean.

17       DEPUTY COMMISSIONER MORRIS:  All right.  So it looks

18  like you got two years and about five months working --

19       INMATE MORRISON:  Yeah.

20       DEPUTY COMMISSIONER MORRIS:  -- of 23 years.  Okay.

21  I would ask you about your work record, but it looks like

22  with all this you probably haven't had a lot of

23  opportunities to do any institution work, or have you?

24  Tell me about that.

25       INMATE MORRISON:  As far as working --

26       DEPUTY COMMISSIONER MORRIS:  Yeah.

27       INMATE MORRISON:  -- in the institution?

39

1        DEPUTY COMMISSIONER MORRIS:  Working at a job for

2   the institution.

3        INMATE MORRISON:  I was working in the culinary over

4   here in north over here.

5        DEPUTY COMMISSIONER MORRIS:  Culinary?

6        INMATE MORRISON:  Yeah.

7        DEPUTY COMMISSIONER MORRIS:  Is that where you're

8   working now?

9        INMATE MORRISON:  No, I don't have a job now.

10       DEPUTY COMMISSIONER MORRIS:  How long did you work

11  culinary in north?

12       INMATE MORRISON:  I believe two or three years.

13       DEPUTY COMMISSIONER MORRIS:  Any work prior to that?

14       INMATE MORRISON:  No, I think I was in the Porter

15  position.

16       DEPUTY COMMISSIONER MORRIS:  Porter?

17       INMATE MORRISON:  Yeah.

18       DEPUTY COMMISSIONER MORRIS:  Okay.  I did not look

19  at the work chronos, and they should be right here.

20       ATTORNEY CHRISTENSEN:  He has -- his most recent one

21  is on 12/9 of '04.  That's a laudatory chrono from the

22  culinary.

23       DEPUTY COMMISSIONER MORRIS:  Okay.  I see cook, '98,

24  Centinela, food service; Centinela, reheating food.  Then

25  you got into a prevoc for a minute.  Then what else?

26  Then you got into welding, welding shop, welding shop,

27  evening meals, cook.  Largely cook duties, that kind of

40

1     thing?

2          INMATE MORRISON:  Yes.

3          DEPUTY COMMISSIONER MORRIS:  Okay.  Let me just see

4     what the reports say.  I didn't really pay attention to

5     that.  What kind of grades did you get?  I'm looking at a

6     lot of satisfactory markings, satisfactory, satisfactory,

7     above average, some satisfactory, mostly satisfactory

8     with some above average.  Is that you?  You need to

9     answer for me.

10         INMATE MORRISON:  Yes.

11         DEPUTY COMMISSIONER MORRIS:  Okay.  Self-help,

12    listening to your testimony, you talked about some of the

13    things you've been involved in.  I heard some talk about

14    marijuana.  How about alcohol, involved in alcohol use?

15         INMATE MORRISON:  No more.

16         DEPUTY COMMISSIONER MORRIS:  Any other drug use?

17         INMATE MORRISON:  No.

18         DEPUTY COMMISSIONER MORRIS:  Did you consider

19    yourself an alcoholic, drug abuser?

20         INMATE MORRISON:  No, sir.

21         DEPUTY COMMISSIONER MORRIS:  Okay.  You were pretty

22    young when you came to prison, how often were you using

23    marijuana?

24         INMATE MORRISON:  I believe I used it twice.

25         DEPUTY COMMISSIONER MORRIS:  Were you under the

26    influence at the time of the life crime?

27         INMATE MORRISON:  No, I was not.

41

1    DEPUTY COMMISSIONER MORRIS:  The car didn't belong

2    to you, is that what you said?  Who did the car belonged

3    to that was involved, the Mustang?

4    INMATE MORRISON:  Oh, I don't know who the -- I

5    don't know where that Mustang --

6    DEPUTY COMMISSIONER MORRIS:  You didn't own a car?

7    INMATE MORRISON:  No.

8    DEPUTY COMMISSIONER MORRIS:  Okay.

9    INMATE MORRISON:  I owned a car, but it wasn't there

10    though.  It wasn't in the crime.

11    DEPUTY COMMISSIONER MORRIS:  Okay.  I see that you

12    participated in AA, it looks like about going back to '96

13    or so.  When did you participate in AA or NA last?

14    INMATE MORRISON:  I was over in north, I believe,

15    about two and a half years ago, but we stay on lockdown

16    over there so there was no attending.  I signed up over

17    here since I've been -- I got here in October and --

18    DEPUTY COMMISSIONER MORRIS:  Participation in NA/AA

19    is not restricted to just going to a group now.  You can

20    do some other things.  Have you ever heard of independent

21    study?

22    INMATE MORRISON:  Yes, I have.

23    DEPUTY COMMISSIONER MORRIS:  Okay.

24    INMATE MORRISON:  Yes, I have.

25    DEPUTY COMMISSIONER MORRIS:  So when did you attend

26    last, you said about a couple years ago?

27    INMATE MORRISON:  It had to be over two years.

42

1    **DEPUTY COMMISSIONER MORRIS:** And how long did you

2    participate?

3    **INMATE MORRISON:** Every time they had it when we

4    wasn't on lockdown. We stay on lockdown over there.

5    **DEPUTY COMMISSIONER MORRIS:** And you've had prior

6    hearings where they talked about participation in NA and

7    AA?

8    **INMATE MORRISON:** Yes, I have. I'm on the waiting

9    list right now for AA.

10    **DEPUTY COMMISSIONER MORRIS:** You don't have to wait.

11    **INMATE MORRISON:** Yeah, I know. That's what my

12    lawyer was telling me.

13    **DEPUTY COMMISSIONER MORRIS:** Okay.

14    **INMATE MORRISON:** That I can get my books. That I

15    don't have to wait, and I can get the books and start

16    studying myself.

17    **DEPUTY COMMISSIONER MORRIS:** You have several

18    hundreds of thousands dollars -- of dollars spent on

19    every yard. You got a computer system and paging system

20    on the yard, right? You got a library there?

21    **INMATE MORRISON:** Yeah, we got a library.

22    **DEPUTY COMMISSIONER MORRIS:** You have a paging

23    system there and there's a librarian there.

24    **INMATE MORRISON:** Yeah.

25    **DEPUTY COMMISSIONER MORRIS:** So you can draw that

26    information. If you get that information, you can study.

27    I'm just sharing that information with you. You know, in

43

1   the event that you're not successful today, maybe that

2   will help you.  I don't see -- I don't see any other AA.

3   I saw the 26-week course you took in '96, and that's all

4   I see.

5       INMATE MORRISON:  Well, I didn't complete it.

6       DEPUTY COMMISSIONER MORRIS:  Okay.

7       INMATE MORRISON:  You don't get no chronos until you

8   complete it.

9       DEPUTY COMMISSIONER MORRIS:  You don't complete AA.

10  It's ongoing.

11      INMATE MORRISON:  Yeah, I know.  I'm just saying as

12  far as your records, for your records you're not going to

13  get anything saying that I was there.

14      DEPUTY COMMISSIONER MORRIS:  You're going to get

15  something every quarter if you participate.

16      INMATE MORRISON:  Wasn't there every quarter.

17  That's what I keep telling you.

18      DEPUTY COMMISSIONER MORRIS:  All right.  You weren't

19  there every quarter?

20      INMATE MORRISON:  No.

21      DEPUTY COMMISSIONER MORRIS:  So what I'm telling you

22  is you need to consider -- maybe you ought to consider

23  participating.

24      INMATE MORRISON:  Okay.

25      DEPUTY COMMISSIONER MORRIS:  So you can accrue, so

26  you can earn some favorable chronos regarding that.

27  Okay?

44

1    INMATE MORRISON:  All right.

2    DEPUTY COMMISSIONER MORRIS:  All right.  So you

3  haven't done much there.  Laudatories, I don't see any

4  laudatories.  Anybody have any good thing to say about

5  you?  Anybody ever give you a at-a-boy chrono?

6    ATTORNEY CHRISTENSEN:  He has some --

7    INMATE MORRISON:  I got laudatory chronos.

8    ATTORNEY CHRISTENSEN:  -- that we submitted.

9    DEPUTY COMMISSIONER MORRIS:  Okay.  What do you got

10  since 2004?  I don't see anything.  I'm looking right at

11  it right here.  What is this?  This is a --

12    PRESIDING COMMISSIONER BIGGERS:  2003, assist an

13  inmate in distress.

14    DEPUTY COMMISSIONER MORRIS:  Okay, that was 2003.

15  Anything since your last hearing, since 2004?

16    INMATE MORRISON:  I should of had another chrono in

17  there, a working chrono come from the free cook.

18    ATTORNEY CHRISTENSEN:  Only the culinary.

19    DEPUTY COMMISSIONER MORRIS:  I see a laudatory.  I

20  take it back, culinary, cook crew, January of '04.

21    INMATE MORRISON:  Okay.

22    DEPUTY COMMISSIONER MORRIS:  January 18th of '04.

23  Okay.  My bad, I miss that one, 1/18 of '04, culinary.

24  Anything else?  Anything else I missed?  I don't see

25  anymore.  I'm down to '02 now.  That was up at that time

26  top here.  Okay.  Got it.  Okay.  There's a psych report

27  here, Mr. Morrison, and there's a late edition here.

45

1    Let's see.  There's an addendum dated July '06.  Let's

2    see what I have here -- July '06.  This psychological

3    report is authored by Macomber?

4        INMATE MORRISON:  Yes.

5        DEPUTY COMMISSIONER MORRIS:  And I'm looking at Page

6    Two, current diagnostic impressions, and he's -- he's

7    made some determinations about you and under various

8    axis.  Under Axis I:  He describes you as having Alcohol

9    Abuse in Institutional Remission.  There's Cannabis use

10   in Institutional Remission.  And I thought I saw some

11   115s that talked about alcohol use in the institution.  I

12   did.  Here's alcohol use, 2001 and 2002.  That's very

13   recent alcohol use in my mind.  You were a wine maker?

14   You were the wine maker, sir?

15       INMATE MORRISON:  Yes, I did.

16       DEPUTY COMMISSIONER MORRIS:  Okay.  Under Axis II:

17   I see -- he describes you as Antisocial Personality

18   Disorder Improving.  Under Axis III:  He says that there

19   are No Physical Disorders.  Axis IV:  Talks about the

20   Life Term, which includes the Life Crime.  Under Axis V:

21   There is a Global Assessment Functioning Score of 85,

22   which is a pretty good score.  Under Section 14,

23   assessment of dangerousness, he has -- talks about

24   potential for dangerous behavior while in the

25   institution.  He says that Mr. Morrison has a significant

26   history of disciplinaries in the institution; however,

27   there is no evidence of violence in these disciplinaries.

46

1   However, I would argue that the kind of disciplinaries

2   you have certainly are prime movers for violence in the

3   institution, especially when we have inmates getting

4   drunk and becoming a major institution management

5   problem, as well as there's that marijuana possession,

6   the alcohol use, possession of altered television.

7   That's kind of stuff that drives violence in the

8   institution. Who did the television belong to?

9           INMATE MORRISON:  Mine.

10          DEPUTY COMMISSIONER MORRIS:  Yours?

11          INMATE MORRISON:  Yeah.

12          DEPUTY COMMISSIONER MORRIS:  Not to another inmate?

13          INMATE MORRISON:  No.

14          DEPUTY COMMISSIONER MORRIS:  Not strong-armed from

15  someone?

16          INMATE MORRISON:  No.

17          DEPUTY COMMISSIONER MORRIS:  Okay.  Disobeying

18  direct orders, disobeying orders, all of that,

19  threatening staff, all of that drives violence in the

20  institution, so I'm not quite clear where the

21  psychologist is with respect to his description of your

22  disciplinary history.  He says that you have not been in

23  possession of weapons.

24          INMATE MORRISON:  No.

25          DEPUTY COMMISSIONER MORRIS:  He also goes on to say

26  that in comparison to other inmates potential for

27  dangerous behavior appears to be below average.  Okay.

47

1    Paragraph B, he talks about your potential for dangerous

2    behavior in the community. He talks about the fact that

3    this occurred over 25 years ago. You were 17 years of

4    age. The psychologist says -- states here that you've

5    grown up, matured and stabilized. You're now active in

6    the Chapel ministering to others. I didn't see any of

7    that under self-help. Have you been participating in --

8       INMATE MORRISON: Yeah.

9       DEPUTY COMMISSIONER MORRIS: -- ministries?

10      INMATE MORRISON: I think she has it over there, the

11   chrono.

12      DEPUTY COMMISSIONER MORRIS: Okay.

13      INMATE MORRISON: There's another one.

14      DEPUTY COMMISSIONER MORRIS: Psychologist continues

15   by saying there's evidence that your life has changed,

16   talks about the Level of Service Inventory Test that was

17   administered. You obtained a score of 6.5 cumulative

18   frequency for community offenders. This score means that

19   if 100 men were released on parole that you would be

20   expected to be better than 93.6 percent of them. This is

21   a low risk level. That you do not appear to pose any

22   more risk to society than the average citizen in the

23   community. The psychologist says in his mind there are

24   no significant risk factors. Under Section 15, clinical

25   observations, comments, recommendations, the psychologist

26   states that there are no mental or emotional problems in

27   this case that would interfere with routine parole

48

1    planning.  Mr. Morrison does have vocational skills that

2    he has acquired in the institution, talks about the job

3    offer from the stepfather.  He closes out his comments by

4    saying that -- the last sentence that the prognosis at

5    this point in time for successful adjustment in the

6    community appears to be good.

7        ATTORNEY CHRISTENSEN:  Commissioner --

8        DEPUTY COMMISSIONER MORRIS:  Those are comments --

9        ATTORNEY CHRISTENSEN:  -- if we can go back.

10       DEPUTY COMMISSIONER MORRIS:  Those are comments as

11   made by Macomber.  Let me just ask you now, do you have

12   some additional comments regarding some of that?

13       ATTORNEY CHRISTENSEN:  Just to go back one second to

14   the self-help part.  I believe that I gave you a chrono

15   for his participation in the Chapel.

16       INMATE MORRISON:  Yeah.

17       ATTORNEY CHRISTENSEN:  Is that what the chrono said?

18   Is that it?

19       DEPUTY COMMISSIONER MORRIS:  Okay.  I do see the

20   chrono that you brought.  I didn't see that earlier.

21       ATTORNEY CHRISTENSEN:  Oh, I want to make sure he

22   gets credit.

23       DEPUTY COMMISSIONER MORRIS:  Okay.  For the record,

24   let's memorialize it right now.

25       ATTORNEY CHRISTENSEN:  Thank you.

26       DEPUTY COMMISSIONER MORRIS:  I'm looking at a chrono

27   dated June 6, 2006, that you brought in.  It talks about

49

1   your participation in the Protestant Chapel program for

2   the past five years.  Okay.  However, I cannot include

3   this in the C file, so I'm going to give it right back to

4   you, but for purposes of this hearing it has been

5   considered, and I'm going the indicate that.

6        PRESIDING COMMISSIONER BIGGERS:  Okay.  Also I have

7   a chrono here, I don't know if you have that.  That was

8   about inmate was crushed under a cold cart with a large

9   amount of food, and Inmate Morrison assisted in the

10  lifting of the cold cart.

11       DEPUTY COMMISSIONER MORRIS:  I don't have any of

12  that either.  This is a laudatory chrono.  You brought

13  this in today as well?

14       INMATE MORRISON:  Yes, I did.

15       ATTORNEY CHRISTENSEN:  Yes.

16       DEPUTY COMMISSIONER MORRIS:  Okay.  And it looks

17  official enough.  The chrono is authored by Correctional

18  Officer Goodlet (phonetic).  Okay.  It looks like three

19  chronos of the same issue, November 19.  "Had the

20  opportunity to witness the excellent response of Inmate

21  Morrison when an inmate was crushed under a cold cart

22  with a large amount of food in it.  Inmate Morrison

23  assisted in lifting the cold cart off the individual and

24  proceeded to notify staff that there was a man down in

25  the back dock area.  Morrison continued providing ice to

26  this individual's possible neck injury.  Inmate

27  Morrison's nurturing attitude displays that his

50

1    rehabilitation has proved effective for him.  Okay.

2        **ATTORNEY CHRISTENSEN:**  Thank you.

3        **DEPUTY COMMISSIONER MORRIS:**  For the record, that

4    laudatory --

5        **ATTORNEY CHRISTENSEN:**  Interestingly enough that's

6    the second chrono that he's had for helping to save

7    another inmate from serious injury and/or death.  The one

8    prior to -- was it '03?

9        **INMATE MORRISON:**  '03.

10       **ATTORNEY CHRISTENSEN:**  Uh-huh.

11       **DEPUTY COMMISSIONER MORRIS:**  And saw that one.

12       **ATTORNEY CHRISTENSEN:**  What happened with that one?

13       **INMATE MORRISON:**  Having hard problems with

14    breathing -- when an inmate had a hard problems with

15    breathing.

16       **DEPUTY COMMISSIONER MORRIS:**  And you made contact

17    with staff and got medical over there, and the guy was in

18    surgery the next day I believe, is what the chrono said.

19       **INMATE MORRISON:**  Yeah.

20       **DEPUTY COMMISSIONER MORRIS:**  That was prior to the

21    last hearing?

22       **INMATE MORRISON:**  Right.

23       **DEPUTY COMMISSIONER MORRIS:**  Okay.  I'm going to

24    give this back to you as well.  That's another at-a-boy

25    that needs to be processed.  Chances are it's probably

26    laying in a record somewhere and just hasn't been filed.

27    There's probably a backlog of filing.

51

1          INMATE MORRISON:  I believe it's in there because

2    when I had my Olson review, I think I seen it in there.

3          DEPUTY COMMISSIONER MORRIS:  All right.

4          INMATE MORRISON:  I think the only one that wasn't

5    in there was the one that was on the paper because my

6    counselor just wrote that up and misplaced it.

7          DEPUTY COMMISSIONER MORRIS:  Well, it's there now.

8          INMATE MORRISON:  Okay.

9          DEPUTY COMMISSIONER MORRIS:  I'm going to include

10   it.  Okay.  All right.  Anything else regarding post-

11   conviction factors, Counsel?

12         ATTORNEY CHRISTENSEN:  No.

13         DEPUTY COMMISSIONER MORRIS:  All right.  Absent

14   additional testimony specific to post-conviction, I yield

15   to the Chair.

16         PRESIDING COMMISSIONER BIGGERS:  Okay.  One last

17   question before I go into your parole plans, when did you

18   -- can you give me a timeframe, and I may of missed this,

19   but I lost it in my train of thought, did you finally

20   come to the realization that you were going to come clean

21   and say that you were there at the crime?

22         INMATE MORRISON:  My dad passed in 2002.

23         PRESIDING COMMISSIONER BIGGERS:  2002?

24         INMATE MORRISON:  Yeah.

25         PRESIDING COMMISSIONER BIGGERS:  Okay.

26         INMATE MORRISON:  I had a big problem with my dad

27   knowing that I had any type of part with it.  So when my

52

1   dad passed before -- I didn't even know he was going to

2   say he did investigations, and I came out before he did -

3   - before he said anything.  He said we already

4   investigated and we already know it isn't right.  I said

5   well, I'm telling you know.  Where before -- I didn't

6   even know that was going happen.

7       PRESIDING COMMISSIONER BIGGERS:  Before who did an

8   investigation?

9       INMATE MORRISON:  Before Welch.

10      PRESIDING COMMISSIONER BIGGERS:  Commissioner Welch

11  did his investigation?

12      INMATE MORRISON:  Right.

13      PRESIDING COMMISSIONER BIGGERS:  All right.  I'm

14  going to move into your parole plans right now.  You said

15  that you will be residing with your mother Cassie Nixon

16  (phonetic) --

17      INMATE MORRISON:  Yes.

18      PRESIDING COMMISSIONER BIGGERS:  -- at 1031 East

19  126th Street in LA?

20      INMATE MORRISON:  Yes.

21      PRESIDING COMMISSIONER BIGGERS:  Okay.  I don't see

22  -- do you have a letter from her?

23      INMATE MORRISON:  It should be right there too.

24      PRESIDING COMMISSIONER BIGGERS:  Okay.  What are you

25  going to do for employment?

26      INMATE MORRISON:  I'm planning on welding for

27  employment.

53

1      PRESIDING COMMISSIONER BIGGERS:  I see here, and I'm

2  going to read the letters in just a minute --

3      INMATE MORRISON:  All right.

4      PRESIDING COMMISSIONER BIGGERS:  -- but I saw in

5  here where Britney Cavanaugh (phonetic), who is she?

6      INMATE MORRISON:  Who.

7      PRESIDING COMMISSIONER BIGGERS:  Britney Cavanaugh?

8      INMATE MORRISON:  That's my niece.

9      PRESIDING COMMISSIONER BIGGERS:  She said her mother

10  owns her own business.  She will employ my uncle upon his

11  release.  What kind of job was it going to be?

12      INMATE MORRISON:  Mother do real estate.

13      PRESIDING COMMISSIONER BIGGERS:  Real estate.  And

14  how can she employ you?  What do you have to offer her in

15  way of real estate?

16      INMATE MORRISON:  It's my sister.

17      PRESIDING COMMISSIONER BIGGERS:  I understand that.

18      INMATE MORRISON:  Right.

19      PRESIDING COMMISSIONER BIGGERS:  I'm telling you

20  what skills --

21      INMATE MORRISON:  What type of skills do I have in

22  real estate?

23      PRESIDING COMMISSIONER BIGGERS:  Yes.

24      INMATE MORRISON:  None.

25      PRESIDING COMMISSIONER BIGGERS:  How can she give

26  you a job?

27      INMATE MORRISON:  I don't know, she says she can

54

1    help me out. I don't know.

2         PRESIDING COMMISSIONER BIGGERS: Okay.

3         INMATE MORRISON: I would have to learn about real

4    estate before I can get into real estate.

5         PRESIDING COMMISSIONER BIGGERS: So you don't have

6    any employment plans at this point?

7         INMATE MORRISON: No, nothing.

8         PRESIDING COMMISSIONER BIGGERS: Okay.

9         INMATE MORRISON: No.

10        PRESIDING COMMISSIONER BIGGERS: All right. But you

11   do have a marketable skill, you know, you got that

12   welding as a marketable skill.

13        INMATE MORRISON: Right.

14        PRESIDING COMMISSIONER BIGGERS: All right. At this

15   point I'm going to go into your support letters. The

16   first one is from Britney Cavanaugh. She says she's 17

17   years old and currently a senior in high school, and she

18   plans to go high school and become a English professor

19   when she graduates. She's concerned about you. "The

20   man's only crime was being in the wrong place at the

21   wrong time, and that's why I'm writing to you because

22   three more generations have rolled around." She has a

23   four-month old daughter?

24        INMATE MORRISON: Yes.

25        PRESIDING COMMISSIONER BIGGERS: Okay. And she

26   indicated that you made bad choices while as a youngster

27   and it shouldn't be cause him to spend an excessive

55

1.   amount of time or die in prison. He's done 25 years.

2    Did you let them know the problems that you've been doing

3    in the institution?

4        INMATE MORRISON: My mom know, yes.

5        PRESIDING COMMISSIONER BIGGERS: She know?

6        INMATE MORRISON: Yes.

7        PRESIDING COMMISSIONER BIGGERS: Okay. What does

8    she think about that?

9        INMATE MORRISON: She thinking I need to straighten

10   it up.

11       PRESIDING COMMISSIONER BIGGERS: Yeah, because if

12   you don't, you know, you won't get a date.

13       INMATE MORRISON: Yeah.

14       PRESIDING COMMISSIONER BIGGERS: Okay. This is --

15   who is David Wright (phonetic)?

16       INMATE MORRISON: That's my nephew.

17       PRESIDING COMMISSIONER BIGGERS: Nephew. It says,

18   "I'm writing to speak on behalf of my uncle. I believe

19   that he did not believe to be punished for this much

20   time. Personally, I've never had the chance to meet him.

21   I'd deeply appreciate if you'd give my uncle parole. I'm

22   a 15 year-old boy who is doing research on my family tree

23   and needs to talk to you. Let him go on parole." And

24   that letter was dated March 18th, 2006. And this next

25   one is from Tammy Johnson (phonetic). There is no date

26   on it, but Ms. Johnson says, "I am the sister of Anthony

27   Morrison pleading with you and God regarding my brother

56

1    who spent the last 23 years in prison.  He has come

2    before the Board many years regarding his release and has

3    been continually denied."  Talk about you have lost two

4    sisters, one to a car accident and one to sickle cell?

5         INMATE MORRISON:  Yes.

6         PRESIDING COMMISSIONER BIGGERS:  And your father has

7    passed away from a major heart attack.  And that -- that

8    you are no longer -- "my brother has no longer a number

9    that is across his chest.  Justice can no longer be

10   served with his continued imprisonment.  He's not a

11   threat to society and he's a brother, nephew, son."  And

12   then she goes onto say that, "and to keep you in prison

13   is cruel."  And wants us to show some mercy.  You --

14   she's raising your niece, nephew and great niece because

15   the sister passed away and we need you there.  Say you

16   continued your education and work in trying to remain

17   positive, even though he's been in prison almost 25

18   years.  There's a letter dated November 3rd, 2005, from

19   your mother, and she says to us you're only a number but

20   to her you're her beloved son, my baby boy.  'He's been

21   in prison for over 25 years.  I really don't know my son

22   as I would like to know him.  He was taken away in his

23   teens.  We never had the time together.  We never watched

24   a movie together, played ball, etcetera.  He never played

25   basketball but he loved, never sat down to dinner."  And

26   she talks about the losses of your sisters.  She said

27   she'd love to have her son here, that you lost your dad,

57

1    and that there's never any justice -- if there be any --

2    I can't spell this word.  I know that it's praise and

3    things on things but something in there.  It's either E-

4    I-E-I-T-U-R-E, anyway.  "He has a home with me always.  I

5    have four bedrooms."  February the 1st, 2006, from

6    Kykesha, K-Y-K-E-S-H-A.

7        INMATE MORRISON:  Kykesha.

8        PRESIDING COMMISSIONER BIGGERS:  Jones.  What's

9    that, sir?

10       INMATE MORRISON:  Kykesha.

11       PRESIDING COMMISSIONER BIGGERS:  Kykesha?

12       INMATE MORRISON:  Yes.

13       PRESIDING COMMISSIONER BIGGERS:  And this is your

14   niece?

15       INMATE MORRISON:  Yes.

16       PRESIDING COMMISSIONER BIGGERS:  And she says she

17   truly believes if my uncle was guilty that even him

18   deserve a second stab at life because you only have one

19   to live.  It says he hasn't seen freedom in 20 years.

20   Okay.  I believe that's the last one.  Do you have any

21   others, sir?

22       INMATE MORRISON:  No.

23       PRESIDING COMMISSIONER BIGGERS:  Okay.  We send out

24   3042 responses, and again as I said earlier I do have a

25   letter from the victims that was sent through the office

26   of the District Attorney.  We have a District Attorney

27   here from San Bernardino County who will be speaking at a

58

1   later time.  At this point I'm going to ask the District

2   Attorney if she has any questions for the inmate.

3      **DEPUTY DISTRICT ATTORNEY DAWSON:**  Yes, I do.  You

4   first denied --

5      **PRESIDING COMMISSIONER BIGGERS:**  Go through the

6   Chair, please.

7      **DEPUTY DISTRICT ATTORNEY DAWSON:**  I'm sorry.  Sir, I

8   would like to find out after the oral copulation the

9   victim claims that you robbed her as well.  Do you admit

10  or deny that?  Is that true?

11      **PRESIDING COMMISSIONER BIGGERS:**  And you address --

12  she'll ask the question through us, and you can address

13  us.

14      **INMATE MORRISON:**  Yes.

15      **PRESIDING COMMISSIONER BIGGERS:**  All right.

16      **INMATE MORRISON:**  No, I didn't rob, no.

17      **DEPUTY DISTRICT ATTORNEY DAWSON:**  You admit that you

18  had the gun.  Did you ever strike the victim, the female

19  victim with the gun?

20      **INMATE MORRISON:**  No, ma'am.

21      **PRESIDING COMMISSIONER BIGGERS:**  To the Chair and

22  not directly to her.

23      **INMATE MORRISON:**  Sorry, excuse me.

24      **PRESIDING COMMISSIONER BIGGERS:**  No problem.

25      **DEPUTY DISTRICT ATTORNEY DAWSON:**  So if I understand

26  correctly you admit that you and the other three people

27  picked these people to rob, that you forced the female

59

1    victim to orally copulate you on the way to the field,

2    but as soon as the car got to the field, did you leave?

3        PRESIDING COMMISSIONER BIGGERS:  Okay.  You want us

4    to ask him the question?

5        DEPUTY DISTRICT ATTORNEY DAWSON:  Yes.

6        PRESIDING COMMISSIONER BIGGERS:  That she that --

7    let me see if I can paraphrase it.  That you want us to

8    believe that you had a gun, you forced the victim into

9    the car, and that you had her oral copulate while in the

10   car?

11       DEPUTY DISTRICT ATTORNEY DAWSON:  That all took

12   place -- did that all take place before they arrived at

13   the field?

14       PRESIDING COMMISSIONER BIGGERS:  Did all this take

15   place prior to arriving at that time field?

16       INMATE MORRISON:  Yes.

17       PRESIDING COMMISSIONER BIGGERS:  Yes.

18       DEPUTY DISTRICT ATTORNEY DAWSON:  Once everybody was

19   at the field, did the inmate leave before other people

20   got out of the vehicle?  How did that go down?

21       PRESIDING COMMISSIONER BIGGERS:  Go ahead answer

22   that.

23       INMATE MORRISON:  I left when we got to the field.

24   As far as anybody getting out of the car, I wasn't aware

25   of who was doing what.  I just left after we got to the

26   fields.

27       DEPUTY DISTRICT ATTORNEY DAWSON:  Okay.  Nothing

60

1   further.

2       PRESIDING COMMISSIONER BIGGERS:  When you left, who

3   was in the car with you when you left?

4       INMATE MORRISON:  I left on feet.

5       PRESIDING COMMISSIONER BIGGERS:  Oh, feet?

6       INMATE MORRISON:  Yeah.  I don't know who was in the

7   car.  I left on feet.

8       PRESIDING COMMISSIONER BIGGERS:  Okay.  All right.

9   I'm going to ask your attorney now, Ms. Christensen, do

10  you have any questions for your client?

11      ATTORNEY CHRISTENSEN:  I do.  What college classes

12  did you say that you signed up for?

13      INMATE MORRISON:  I signed up for -- I wanted to

14  take a class in mortician that is coming from the street.

15  I'm waiting for that to come back, do mortician for dead

16  people.

17      ATTORNEY CHRISTENSEN:  Oh, can you do that by

18  correspondence?

19      INMATE MORRISON:  Yes, I can.

20      ATTORNEY CHRISTENSEN:  How long a program is that?

21      INMATE MORRISON:  Two and a half years.

22      ATTORNEY CHRISTENSEN:  Okay.

23      INMATE MORRISON:  Mortician, two and a half years.

24      ATTORNEY CHRISTENSEN:  Yeah?

25      INMATE MORRISON:  Yeah.

26      ATTORNEY CHRISTENSEN:  And do you think that's what

27  you would prefer over --

61

1      **INMATE MORRISON:**  No, I rather weld, but I mean, I

2  know somebody who is that field and they make good money.

3      **ATTORNEY CHRISTENSEN:**  Okay.  How are you different

4  today, I think you're what about 42?

5      **INMATE MORRISON:**  42, exactly.

6      **ATTORNEY CHRISTENSEN:**  42, okay.  You were 17 when

7  this crime happened, and all these years have passed, how

8  are you different today?

9      **INMATE MORRISON:**  Well, for one I'm a Christian now,

10  and I don't think like I used to think.  I don't think --

11  crime is not an option for me, so I don't think like I

12  used to think.

13      **ATTORNEY CHRISTENSEN:**  When did this change occur?

14      **INMATE MORRISON:**  Well, it started occurring five

15  years ago, but as we know, every time when you're trying

16  to change it takes time to get into that mode of doing

17  what you're supposed to do is right.  You're not going to

18  change overnight, as far as Christianity go, you're not

19  going to change overnight, but it started five years ago.

20      **ATTORNEY CHRISTENSEN:**  Okay.  Thank you, Mr.

21  Morrison.  No further questions.

22      **PRESIDING COMMISSIONER BIGGERS:**  All right.  At this

23  point I'm going to ask the District Attorney to close,

24  please.

25      **DEPUTY DISTRICT ATTORNEY DAWSON:**  Yes.  I think the

26  victim's letter when she talks about what she went

27  through at the hands of this man, how he was an active

62

1    participant, how he was there, how he was the first one

2    to beat her with the -- in the reports, the first one to

3    beat her with the weapon, the first one to force her to

4    orally copulate, and proceeded to continue to assault her

5    while she was being assaulted by the other people. He is

6    behavior in prison, except for the last couple of years

7    has been, as pointed out, rocky and terrible at times.

8    He's an extreme danger. He is still young enough -- as

9    the victim points out, young enough to be a danger to

10   anyone on the streets. I understand, you know, he's

11   found God in the last year, he's cleaning up his act, but

12   let's also look back that I wasn't there, I wasn't there,

13   I wasn't there. And now, oh, I was there, but I couldn't

14   tell you I was there because my father was alive. Now,

15   I'm there, but I'm going to minimize everything I did

16   because I left before the really bad stuff started

17   happening. That is just, as the doctor said, that he --

18   again, this doctor finds that this person has -- he now

19   accepts responsibility for his role. That is a limited

20   acceptance at best. As the victim pointed out, strongly

21   opposed to this person getting a parole date. He's just

22   a danger.

23        **PRESIDING COMMISSIONER BIGGERS:** Okay. Thank you,

24   ma'am. Ms. Christensen.

25        **ATTORNEY CHRISTENSEN:** Many inmates do have problems

26   fully accepting responsibility for the crime. They'll

27   come in here and for many years they will deny it in its

63

1    totality. Then sometimes over a period of time you'll

2    see a metamorphosis take place, where slowly the inmate

3    over a period of time begins to think about it, is

4    involved in self-help, has different religious

5    experiences, whatever, but things happen within the

6    inmate to cause maturity and a change in the thought

7    process, and they will gradually begin to look at

8    themselves and look at their behavior and admit certain

9    things. The fact that he couldn't admit the crime

10    because his father was alive, out of respect for his

11    father, I can certainly understand where he would think

12    that at that time. But the fact now today that he has

13    admitted it and he does admit certain things that he has

14    not admitted before is not to be held against him, it's

15    to be encouraged. It's a process where it can take a

16    very long time for the inmate to fully come to grips with

17    what he has done. Now, there is definitely a change in

18    Mr. Morrison. He was only 17 years old when this

19    happened, and at the time he had only achieved an

20    educational level of up to the ninth grade out on the

21    street. Since coming to prison, I believe that all of

22    his period of incarceration has been very good and

23    positive, in that he has achieved a GED, he's signing up

24    to advance his education. Prior to prison, he didn't

25    have any job skills. Now, he has a welding certificate.

26    He has completed that vocation, and he also has work

27    history as well in the culinary and as a Porter. And

64

1    most notably, too, are the two laudatory chronos that he

2    has for saving inmate's lives, not once but twice.  He's

3    been in a position where he was actually able to alert

4    the guards to what was going on, and I don't come across

5    that very often, so he does the right thing in emergency

6    situations.  He's been very serious about his

7    programming, and this is something that has really turned

8    him around.  I also believe that his recent religious

9    experience also quite beneficial to him as well, but it's

10   not really all that recent because he's participated in

11   the Chapel program for about five years.  His parole

12   plans are good.  His family loves him.  He will live with

13   his mom in Los Angeles.  He has those marketable skills

14   for welding.  LA County is a huge county, all kinds of

15   work available for him.  So there's no reason to think

16   that he could not be successful in parole.  I think that

17   he has learned from all the disciplinaries and the effect

18   that that has had, that that is not a good thing, it's

19   not positive.  And over the last couple of years, about

20   two and a half years now, he has been disciplinary free.

21   So this is someone who has improved in their judgment and

22   has improved in their thinking.  He's changed.  He has

23   matured.  He's always been very remorseful for the

24   victim.  He himself knows what it feels like to be the

25   victim of a sexual assault, and I don't think that he

26   wants to inflict anymore pain on anyone else.  His family

27   is there to support him, and I think that what he has

65

1   accomplished here in prison would serve him well in being

2   able to comply with the rules and regulations on parole.

3   And he's asking for a chance today to show you that he

4   can achieve that goal of being a success and a productive

5   law-abiding member of society.

6        **PRESIDING COMMISSIONER BIGGERS:**  Thank you, ma'am.

7   Mr. Morrison, you now have the opportunity to tell this

8   Panel why you believe you're suitable for parole.

9        **INMATE MORRISON:**  Well, first thing I want to say is

10   if I had my choice I would want to apologize to the

11   victim because that should of never had happened.

12   However, I'm here to man up today, hold up my

13   responsibility, you know, I would never -- was never

14   trying to undermine the system.  The only thing I wanted

15   to do was let be known what I did and didn't do.  I came

16   -- like I said, I don't blame my crime mates for me being

17   here no more.  I was blaming them saying that they

18   influenced me.  Well, I had an opportunity to say no and

19   go my own way, and I didn't, so I don't blame them.  So

20   I'm standing up for what I have done today, and I did

21   last Board.  My statement won't change on what happened

22   because that's what happened, as far as my part in the

23   crime.  I have got my GED now.  I got my welding trade

24   now.  I got stability in my life now, and I just want to

25   go forward.  I want to go forward.  I need a chance to

26   show the Board and society that I am not a threat to

27   society and I can make it in society.  I don't have

1    anything else to say.

2         **PRESIDING COMMISSIONER BIGGERS:**  All right.   Thank

3    you.   There is a letter that we received from the victim,

4    Ms. Lisa Goble Bostrand, B-O-S-T-R-A-N-D, I believe

5    that's her married name.   And this letter is dated July

6    the 29th, 2006.   It says:

7              To the Parole Board considering the release of

8         Anthony Morrison.   As one of Anthony

9         Morrison's victims, I have been informed by

10        the District Attorney's office that I may

11        submit a statement to be considered at his

12        parole hearing.   My wish is that if Anthony

13        Morrison would not be made to serve his entire

14        100-year sentence that he at least will be

15        kept in prison until he is no longer

16        physically capable of hurting anyone.   As a 16

17        year-old Anthony Morrison used a gun to kidnap

18        my boyfriend and me.   He committed the first

19        sexual offense against me while we were still

20        in the car and continued to assault me even as

21        I was being raped and sodomized by the others.

22        He was not the most sadistic of my four

23        attackers, but he ran a close second, laughing

24        and taking immense pleasure from my pain and

25        terror, and he was 16.   I cannot imagine that

26        25 years in prison could or would have

27        softened or changed a cruel and twisted

67

1    personality.  As a man in his early 40s, he is

2    still physically capable of inflicting great

3    harm on some other innocent young person.

4    Please do not allow that possibility by

5    releasing him at this time.  It has not been

6    easy to keep the danger Anthony Morrison

7    inflicted on me from interfering with my life.

8    Therapists have said I can expect to have to

9    deal with flashbacks and emotional setbacks as

10   long as I live.  Even after this much time,

11   there is still triggers that will toss me back

12   into the San Bernardino fields, and I

13   experience again the fear, pain, loathing and

14   despair that I felt then at the hands of

15   Anthony Morrison and his cohorts.  It took a

16   dozen years before I stopped shaking

17   uncontrollably and getting sick to my stomach

18   when I unexpectedly came upon the sight of

19   Christmas lights on someone's house.

20   Receiving the DA's notification and drafting

21   this letter has reopened the trauma.  It has

22   robbed me of sleep with the return of old

23   nightmares, yet I could not let this hearing

24   go unremarked upon.  It is not right that if

25   by my silence some other young girl could be

26   condemned to the suffering I have endured in

27   Anthony Morrison's warped pleasure.

68

1     Therefore, I ask again, and for the final

2     time, please do not release Anthony Morrison

3     from prison until is of such age that he would

4     be physically impossible for him to hurt

5     anyone else.  Thank you for your time and

6     consideration.

7         That's Lisa Goble Bostrand.  Okay.  At that point we

8     will now go into deliberations.

9                     R E C E S S

10                    --oOo--

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

69

| | |
|---|---|
| 1 | CALIFORNIA BOARD OF PAROLE HEARINGS |
| 2 | D E C I S I O N |
| 3 | **DEPUTY COMMISSIONER MORRIS:**  We're on record. |
| 4 | **PRESIDING COMMISSIONER BIGGERS:**  Let the record show |
| 5 | that everyone who was in the room prior to us going into |
| 6 | deliberations is now back in the room.  In the matter of |
| 7 | Mr. Anthony Morrison, M-O-R-R-I-S-O-N, the Panel has -- |
| 8 | CDC number C-60307.  The Panel has reviewed all the |
| 9 | information received from the public and relied on the |
| 10 | following circumstances in concluding that the prisoner |
| 11 | is not suitable for parole and would pose an unreasonable |
| 12 | risk of danger to society or a threat to public safety if |
| 13 | released from prison.  The Panel looked at all the |
| 14 | offenses, Mr. Morrison, and we determined that those |
| 15 | offenses were all carried out in a calculated, cold, |
| 16 | cruel and callous manner, in that you and your |
| 17 | codefendants planned a robbery, went to the service |
| 18 | station where you came across Mr. Ronald Chappell, C-H-A- |
| 19 | P-P-E-L-L, and Lisa Goble, G-O-B-L-E.  You kidnapped |
| 20 | them, and at that point Ms. Goble was repeatedly raped, |
| 21 | sodomized, and made to orally copulate not only you but |
| 22 | your crime partners as well.  The victim was abused by |
| 23 | having to do all of this stuff, and it was done by |
| 24 | gunpoint.  The offenses -- all of the offenses were |
| 25 | carried out in a manner which demonstrates an |
| 26 | exceptionally callous disregard for human suffering.  Can |
| 27 | **ANTHONY MORRISON C-60307 DECISION PAGE 1 8/9/06** |

70

1   you imagine how that woman is traumatized at this point.

2   And I read in the file somewhere where she is having a

3   difficult time now even associating and being around

4   individuals that are of African American descent because

5   of what you and your codefendants did.  The motive for

6   the crime was very trivial, in that you intended to rob

7   them, and then you kidnapped them, and took them out --

8   took her out to a field by gun, even threatened to kill

9   them if she did not comply with the things that you all

10  wanted her to do.  She was pistol whipped.  One of your

11  crime partners indicated let's blow this bitch's head

12  off.  There was a threat that even further created human

13  suffering for her.  As I said earlier, the crime -- the

14  motive for the crime was very trivial.  You wanted to rob

15  them for money, you and your codefendants, and all this

16  other stuff took place is just beyond me.  This

17  information was taken from the probation officer's

18  report.  The Panel also noted that you had a petty theft

19  charge as well as a -- you were arrested for petty theft,

20  and you also had two counts of indecent exposure, and

21  also that you were a minor at the time of this instant

22  offense.  You were 17 years of age.  Your programming,

23  sir, to be honest with you, has been a disaster prior to

24  the last few years.  You were a management problem for 20

25  years in this institution.  You had 21 counseling

26  chronos, with the last one being in '94, but you had 17

27  **ANTHONY MORRISON C-60307 DECISION PAGE 2 8/9/06**

71

1    115s. Of those 17 115s, the last one was in 2004. But

2    since -- within the last five years you've had five 115s,

3    primarily for either stealing food or manufacturing

4    Pruno. And when you're stealing food like onions, it's

5    one of those -- you're still trying to make Pruno. It's

6    amazing to me that it took 20 years for the light to come

7    on, and we'll talk about that a little bit later on. You

8    do have a GED, but you have not done anything past that

9    GED to help you to beef up your educational -- help you

10   educationally. You have one vocation, which is welding,

11   and that is good, but you also should have, you know,

12   you've been in long enough where you try to get something

13   else vocationally. You made a statement that you didn't

14   want anything else, that's what you wanted to do. Well,

15   that's all well and good, but if you can't get a job

16   welding, it's always a good idea to have something to

17   fall back on. So I encourage you, sir, to look at

18   something else besides your welding so that you can have

19   at least two vocations when you leave here. We also

20   noticed that you, and we haven't been able to verify

21   that, that you have -- did complete a 26-week course in

22   NA and AA, and that was '96. We don't see much after

23   that fact. You haven't done very much in the way of

24   self-help, other than going to the Protestant Chapel

25   incident that happened five years ago. And I understand

26   that you've been in lock up, but you can read. You can

27   **ANTHONY MORRISON C-60307 DECISION PAGE 3 8/9/06**

72

1    read, and if you're in lock up, then get books and come

2    in -- when you come back for your hearing, bring in

3    reports of things that you've read.  Just don't sit in

4    there just because you're locked up and look at the wall

5    or look at television, read books and come to find out

6    what made you do what you had to do -- what you did to

7    this lady.  The psychological report from Dr. Macomber

8    that was dated July 20th, '06, was favorable, in that he

9    said the prognosis at this point in time for successful

10   adjustment in the community appears to be good.  Your

11   parole plans, you do have viable residential plans, but

12   you need to get some employment plans.  You're young

13   enough that you need to get some -- have a job or

14   something waiting for you.  When I asked you about the

15   job that you had here with your sister, you sort of

16   smiled and said, you know, my sister, she's my sister so

17   she's going to give me a job to work.  That's fine, but

18   the problem is you don't know anything about real estate.

19   Now, if she'd own a welding shop or something about

20   welding, that would of been a little bit different, but

21   for anyone to write a job and say they're going to give

22   you a job, this Panel, or any Panel, would like to know

23   what the job is, what are your qualifications, how much

24   are you going to make.  So even though -- are they going

25   pay you or not, or are they letting you just stay there

26   and just work to pay your room and board.  We also want

27   **ANTHONY MORRISON C-60307 DECISION PAGE 4 8/9/06**

73

1   to know that as well.  You do have a marketable skill,

2   that you are a welder.  3042 responses, we note the

3   District Attorney of San Bernardino County indicated an

4   opposition of finding of parole suitability as well as

5   the victim in her letter indicated that she felt that you

6   should not be paroled.  The other thing I wanted to point

7   out for you, sir, is that perhaps the lights have gone

8   on.  Hopefully, they have because maybe you're realizing

9   that the effects of those many years of serious

10   disciplinary reports in the past, that's five very

11   serious reports in the last five years, maybe you have

12   come to understand how that stuff has hurt you and that -

13   - and the other part of that whereas you were not taking

14   full responsibility for the crime in addition to that.

15   Now, you say you've come clean.  This may be a new start

16   for you, but man, you waited 20 years, 20 years before

17   the light went on to get started.  That's an awful long

18   time to waste.  I would also encourage you when you're

19   getting letters from your family -- you say you're

20   telling your mother all the stuff that you've done since

21   you've been in here, but you need to let her know -- let

22   other relatives know so when they write support letters

23   for you they don't criticize the system.  They should

24   criticize the person who is in here who is doing all the

25   stuff who is making it a management problem for the

26   system.  The system is not making you do the 115s, you

27   **ANTHONY MORRISON C-60307 DECISION PAGE 5 8/9/06**

74

1    are doing the 115s.  And what you're doing by not letting

2    the other families members know is that you're telling

3    them we're misusing you in here.  And you can smile, but

4    that's what's happening because every letter I read today

5    was all, you know, he served his time.  He's doing this -

6    - he's doing good stuff, and they never mentioned the bad

7    crap you're doing.

8         **INMATE MORRISON:**  Uh-huh.

9         **PRESIDING COMMISSIONER BIGGERS:**  So you need to let

10   them know as well, until I clean up my act I'm not going

11   to get out of the here.  The Panel also notes that your

12   gains are recent, and you must demonstrate an ability to

13   maintain these gains over an extended period of time.

14   Nevertheless, we want to commend you for your laudatory

15   chronos and for helping those two inmates that you did,

16   for your work in the culinary, and for getting your GED,

17   and also for your work in the Protestant Chapel.

18   However, these positive aspects of your behavior do not

19   outweigh the factors of unsuitability.  In a separate

20   decision, the Hearing Panel finds that it's not

21   reasonable to expect that parole would be granted at a

22   hearing in the following two years.  Specifically, the

23   crime itself that you and your cohorts committed on a 16

24   year-old girl and her boyfriend and forced her to do

25   numerous things, such as orally copulating, sodomizing

26   and raping her.  The offense was calculated.  There were

27   **ANTHONY MORRISON C-60307 DECISION PAGE 6 8/9/06**

75

1    multiple victims.  Her boyfriend was also a victim.  You

2    took her -- took them both to a field, held her at

3    gunpoint, and on the way out there you had her --

4        (Off the Record)

5        DEPUTY COMMISSIONER MORRIS:  Back on record.

6        PRESIDING COMMISSIONER BIGGERS:  All right.  The

7    offense was carried out in a manner which demonstrates

8    exceptionally callous disregard for human suffering.  The

9    torture that you all put those people through, especially

10   that young lady where four of you committing those acts

11   on an innocent 16 year-old girl, who was there with her

12   friend just to buy some gas.  And the traumatic

13   experience that you put him under to watch all that stuff

14   or be in the vicinity and couldn't do anything about it,

15   and then you just -- you all just left them there.  The

16   motive for the crime was inexplicable or just trivial, in

17   that it was a robbery and you all calculated -- was

18   planned to rob somebody, and they just happened to be the

19   first people there.  My cohort and I talked about it.  If

20   he could of given you five years, he would of done so

21   because you've had five -- 20 something -- well, 20 years

22   where you haven't programmed.  You haven't done anything

23   until the last five years.  I'm going to ask him if he

24   has any comments.  Deputy Commissioner, do you have any

25   comments?

26       DEPUTY COMMISSIONER MORRIS:  Just in closing, Mr.

27   ANTHONY MORRISON C-60307 DECISION PAGE 7 8/9/06

76

1    Morrison, it seems to me like you spend a lot of time,

2    and I don't intend to insult you, but it seems like to me

3    that you tried to be an institution thug, gunsel about 20

4    years.  It seems to me that within the last couple years

5    or so the light has come on and you're trying, at least

6    you're saying some things differently.  Maybe it's

7    because your father has now died that you can be honest

8    and forthright about what happened.  Maybe as a part of

9    that honesty you can also start to assess some of the

10    causative factors for your involvement in this life

11    crime.  My sense is that you're on your way, but you just

12    started.  You just started in --

13          PRESIDING COMMISSIONER BIGGERS:  2001.

14          DEPUTY COMMISSIONER MORRIS:  2001 is when you

15    started having some clean time.  So in my mind you've got

16    some work to do.  You've got some work to do.  I think

17    just turning 40 you're beginning to realize that prison

18    is more than just doing AM and PM, and if you ever expect

19    to get a parole date, you are going to bring to this

20    table more than just time.  That's all.

21    //

22    //

23    //

24    //

25    //

26    //

27    ANTHONY MORRISON C-60307 DECISION PAGE 8 8/9/06

77

1        PRESIDING COMMISSIONER BIGGERS:  Okay.  The Panel is

2   going to recommend that you remain disciplinary free --

3   become and remain disciplinary free, upgrade yourself

4   vocationally as well as educationally, participate in

5   self-help.  And sir, I wish you well.  The time is now

6   4:25.  That concludes the hearing.  Good luck to you,

7   sir.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   PAROLE DENIED TWO YEARS

24   THIS DECISION WILL BE FINAL ON:  DEC 0 7 2006 _____

25   YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26   DATE, THE DECISION IS MODIFIED.

27   ANTHONY MORRISON C-60307 DECISION PAGE 9 8/9/06

78

# CERTIFICATE AND

# DECLARATION OF TRANSCRIBER

I, STACY WEGNER, a duly designated transcriber, VINE, MCKINNON & HALL, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 77, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of ANTHONY MORRISON, CDC No. C-60307, on AUGUST 9, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated November 8, 2006, at Sacramento County, California.

STACY WEGNER
Transcriber
**VINE, MCKINNON & HALL**



EXHIBIT "B"

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

SAN BERNARDINO CIVIL DIVISION
303 W 3RD STREET
SAN BERNARDINO, CA  92415
------------------------------------------------------------------------
------------------------------------------------------------------------

                                        CASE NO: SWHSS700203

  ANTHONY MORRISON
  POB 689
  CDC#C-60307
  SOLEDAD CA 93960-0689




       I M P O R T A N T   C O R R E S P O N D E N C E

From the above entitled court, enclosed you will find:

       COPY OF ORDER DENYING WRIT




------------------------------------------------------------------------
------------------------------------------------------------------------
              CERTIFICATE OF SERVICE BY MAIL
I hereby declare that I am over the age of 18 years, a resident of San
Bernardino County, State of California, and not a party to nor
interested in the above-entitled case. I am a Deputy Court Executive
Officer of the said County and on the date shown below I served the
above named document by enclosing it in an envelope addressed to the
interested party, for collection and mailing this date, following
ordinary business practice.

Executed on 08/14/07 at San Bernardino, CA. By: THERESA HANDYSIDE

                                        *Theresa Handyside* (signature)


------------------------------------------------------------------------

       M A I L I N G   C O V E R   S H E E T

COUNTY OF SAN BERNARDINO SUPERIOR COURT
STATE OF CALIFORNIA
MINUTE ORDER

CASE NO:        SWHSS700203                    DATE:   08/13/07

CASE TITLE:    IN THE MATTER OF ANTHONY MORRISON

------------------------------------------------------------------
DEPT: S32 08/13/07 TIME:  8:30
Hearing Re: WRIT OF HABEAS CORPUS.
------------------------------------------------------------------

COMPLAINT TYPE: WHC

_____

JUDGE JOHN P WADE presiding.

CLERK THERESA HANDYSIDE

Not reported

-

APPEARANCES:

No appearance.

-

PROCEEDINGS:

THE COURT HAS READ AND CONSIDERED THE PETITION FOR WRIT OF HABEAS
CORPUS AND RULES AS FOLLOWS.

PETITION FOR WRIT OF HABEAS CORPUS of MORRISON Denied

PLEASE SEE WRITTEN RULING FOR ANY FINDINGS

Stage at Disposition: All other judgments before trial.

Case dispositioned by Judgment

Correspondence coversheet generated to mail COPY OF ORDER DENYING
WRIT to counsel of record.

Notice given by Courtroom Clerk.

1  SUPERIOR COURT OF CALIFORNIA
   COUNTY OF SAN BERNARDINO
2  Civil Division, Department S-32
   303 West Third Street
3  San Bernardino, California 92415

   **F I L E D**
   SUPERIOR COURT
   COUNTY OF SAN BERNARDINO
   SAN BERNARDINO DISTRICT

4  AUG 1 3 2007

   **COPY**

5

6  BY *Olivia McDonald*

7                                    DEPUTY

8

9        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10          IN AND FOR THE COUNTY OF SAN BERNARDINO

11                    SAN BERNARDINO DISTRICT

12

13  In re the Petition of          )    Case No. WHCSS-00203
                                   )
14        ANTHONY MORRISON,        )    ORDER DENYING PETITION
                                   )    FOR WRIT OF HABEAS CORPUS
15                                 )
    For Writ of Habeas Corpus.     )
16                                 )

17

18       The Petition of ANTHONY MORRISON for Writ of Habeas Corpus was filed in this

19  Court on July 12, 2007.

20       Therein, Petitioner contends that the decision to deny him parole on August 9, 2006,

21  was improper because:

22       1)  It was without sufficient supporting evidence.

23       2)  The denial of parole constitutes cruel and unusual punishment.

24       3)  Petitioner has been treated differently from other convicts in a similar situation.

25       4)  The Board did not consider evidence which supported Petitioner's eligibility for

26           parole.

27       5)  The denial decision was arbitrary and capricious.

28       6)  Petitioner's counsel was ineffective.

1    In support of the Petition is attached a transcript of the August 6, 2006 hearing for

2    parole consideration.  After review of that record the following is revealed:

3        1)  The Board considered the circumstances of the commitment crime.

4        On Christmas Day in 1981, at about 10:14 in the morning, Petitioner, in concert with

5    three others, kidnapped at gunpoint, a man and a woman.  The woman was repeatedly

6    raped, sodomized and otherwise sexually brutalized.  She was pistol-whipped and

7    threatened with being killed.

8        Petitioner admitted kidnapping the woman and ordering her to orally copulate his

9    cohorts, but denies any other involvement in the crime.  At an earlier hearing he

10   admitted sodomizing and forcing the woman to orally copulate him.

11       2)  The Board considered his prior criminal history.

12       As a juvenile he had some history, was placed on probation and failed that

13   probation.

14       3)  The Board considered Petitioner's social history.

15       4)  The Board considered post-conviction factors.

16   Petitioner has obtained a GED.  He completed a vocational class in welding.

17   He had serious disciplinary problems in prison until 2004, a period of 20 years.

18       5)  The Board considered Petitioner's psychological reports.

19   One report stated that Petitioner's potential for dangerous behavior was below

20   average.  The psychologist's prognosis for the Petitioner's successful adjustment in

21   the community was good.

22       6)  The Board considered Petitioner's parole plans.

23   Petitioner admitted to having no employment plans at the time of the hearing.

24   From the evidence considered, the Board reached the following conclusions:

25       1)  Petitioner would pose an unreasonable risk of danger to society or a threat to

26           public safety if released from prison.

27   After the court's review, we determined that there was ample evidence presented to

28   justify such a conclusion.  The Petitioner presents as an incredibly callous person who

1    has traumatized an innocent woman and now does not believe he should receive the

2    consequences for such a violent and heinous crime.

3        There is no evidence that his attorney was ineffective.

4

5        The Petition is denied.

6

7    Dated this _____ day of August, 2007.

8

9

10

                                        JOHN P. WADE

11                                      _____

12                                      JOHN P. WADE
                                        Judge of the Superior Court
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



EXHIBIT "C"

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PRISON TERMS

In the matter of the Life )
Term Parole Consideration )
Hearing of: )
)
ANTHONY MORRISON )
_____ )

CDC Number C-60307



CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

AUGUST 2, 2004

PANEL PRESENT:

BOOKER WELCH, Presiding Commissioner
JOHN WEAVER, Deputy Commissioner

OTHERS PRESENT:

ANTHONY MORRISON, Inmate
DAVID SPOWART, Attorney for Inmate
JON FERGUSON, Deputy District Attorney,
                        Via Videoconference

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____ No          See Review of Hearing
_____ Yes         Transcript Memorandum

**Debra M. Aubert, Capitol Electronic Reporting**

ii

## INDEX

Page

Proceedings.................................................. 1

Case Factors.................................................12

Pre-Commitment Factors.......................................21

Post-Commitment Factors......................................28

Parole Plans.................................................44

Closing Statements...........................................58

Recess.......................................................72

Decision.....................................................73

Adjournment..................................................83

Transcriber Certification....................................84

--oOo--

15

1       **PRESIDING COMMISSIONER WELCH:**  Okay.  What

2  were your participation at?

3       **INMATE MORRISON:**  As far as --

4       **PRESIDING COMMISSIONER WELCH:**  The crime

5  that occurred.

6       **INMATE MORRISON:**  I kidnapped her, and she

7  sodomized (inaudible) oral copulation.

8       **PRESIDING COMMISSIONER WELCH:**  You had her

9  -- She orally copulated you?

10       **INMATE MORRISON:**  Right, exactly.

11       **PRESIDING COMMISSIONER WELCH:**  And you

12  sodomized her?

13       **INMATE MORRISON:**  No, I did not.

14       **PRESIDING COMMISSIONER WELCH:**  Okay.  Why

15  did you kidnap her?

16       **INMATE MORRISON:**  No reason why.  No reason

17  why.

18       **PRESIDING COMMISSIONER WELCH:**  Let me tell

19  you what the investigation said, since you

20  requested it.  It says:

21       "This investigation was initiated on

22       January 2, 2002 pursuant to a

23       request from a Board of Prison Term

24       BPT Panel comprised of Booker Welch

25       and Deputy Commissioner Pam Ziegler.

26       The subject of the investigation is

27       Anthony Morrison, who was a prisoner

84

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, DEBRA M. AUBERT, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 83, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of ANTHONY MORRISON, CDC No. C-60307, on AUGUST 2, 2004, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated August 21, 2004 at Sacramento County, California.

Debra M. Aubert
Transcriber
**CAPITOL ELECTRONIC REPORTING**

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, __Anthony Morrison__ , declare:

I am over 18 years of age and I am party to this action.  I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California.  My prison address is:

Anthony Morrion , CDCR #: C-60307

CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: (YW-120-Up)
SOLEDAD, CA  93960-0689.

On _____, I served the attached:

PETITION FOR WRIT OF HABEAS CORPUS AND ATTACHED EXHIBITS.

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined.  The envelope was addressed as

follows:

SUPREME COURT OF CALIFORNIA
350 McAllister, Street.
San Francisco, California.
Zip. 94102-4797

ATTORNEY GENERAL OFFICE
P. O. Box 85266
San Diego, California.
Zip.  92186-5266

I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on __October 18, 2007__ .

Anthony Morrison
Declarant

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

FILING FEE PAID
Yes ____ No ____

IFP MOTION FILED
Yes ____ No ____

COPIES SENT TO ____

Court ____ Fee ____

**Anthony Morrison**

**Ben Curry**

FILED
JUN - 4 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED  Monterey
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**Anthony Morrison**
**PO Box 689**
**Soledad, CA 93960**
**C-60307**

ATTORNEYS (IF KNOWN)

**'08 CV 0999 WQH JMA**

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party).

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX
(For Diversity Cases Only)    FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

## 28 U.S.C. 2254

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  |  | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  |  | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment |  | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. |  | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ Security Act |  | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property |  | ☐ 550 Civil Rights |  |  |  |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    DEMAND $    Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):  JUDGE ____    Docket Number ____

DATE    6/4/2008

SIGNATURE OF ATTORNEY OF RECORD
R Morrison